UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*,<br><br>            Plaintiffs,<br><br>       -against-<br><br>THE REPUBLIC OF RWANDA, *et al.*,<br><br>            Defendants. | Civil Action No.: 22-00469 (RJL)<br><br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**MOTION OF DEFENDANT THE REPUBLIC OF RWANDA
TO DISMISS THE COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1), (2), and 12(b)(6) Defendant the Republic of Rwanda, by and through its undersigned counsel, hereby move this Court, before the Hon. Richard J. Leon, United States District Judge, to dismiss Plaintiffs' Complaint with prejudice.

Plaintiffs brought the present lawsuit against Rwanda, a sovereign nation, alleging a variety of claims that arise out of Rwandan law enforcement's alleged arrest, detention, prosecution, and conviction of Paul Rusesabagina for serious violations of Rwandan law. All of Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and suffer from various other fundamental jurisdictional infirmities which require the dismissal of those claims with prejudice as against Rwanda pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

A memorandum in support of the instant motion and a proposed order are filed herewith.

Dated: May 9, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendant the Republic of Rwanda*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
| --- | --- |
| PAUL RUSESABAGINA, *et al.*, | Civil Action No.: 22-00469 (RJL) |
| Plaintiffs, |  |
| -against- |  |
| THE REPUBLIC OF RWANDA, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. |  |

**DEFENDANT REPUBLIC OF RWANDA'S MEMORANDUM OF LAW AND POINTS
OF AUTHORITY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1),
12(b)(2), AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    A.    The Rwandan Genocide ................................................................ 2

    B.    The Rise of the FLN ...................................................................... 3

    C.    The Rwandan Government Investigates the FLN Attacks ............. 5

    D.    Paul Rusesabagina's Trial and Conviction .................................. 7

    E.    The Instant Lawsuit ...................................................................... 8

ARGUMENT ..................................................................................................... 8

    A.    The Complaint Must Be Dismissed Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction Over Defendant. ................................... 8

        1.    All of Plaintiffs' Claims Are Barred by the FSIA as to Rwanda. .............. 9

            a.    The Foreign Sovereign Immunities Act's Commercial Activity Exception Does Not Apply. ........................................... 11

            b.    The Non-Commercial Torts Exception to the FSIA Does Not Apply ............................................................................... 14

    B.    The Complaint Must be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction. ...................................... 21

    C.    The Complaint Must Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim. ............................................... 21

        1.    The Act of State Doctrine Bars Plaintiffs' Claims .................................. 22

        2.    The Plaintiffs Have Failed to State a Viable Fraud Claim .................... 23

        3.    The Plaintiffs Have Failed to State a Viable Civil Conspiracy Claim ....................................................... 24

        4.    The Plaintiffs Have Failed to State a Viable Loss of Consortium Claim ....................................................... 25

        5.    The Plaintiffs Have Failed to State a Viable False Imprisonment Claim ....................................................... 26

        6.    The Plaintiffs Have Failed to State a Viable Assault or Battery Claim ....................................................... 27

        7.    The Plaintiffs Have Failed to State a Viable Intentional Infliction of Emotional Distress or Solatium Claim. ................................ 27

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abedini v. Gov'v of Islamic Republic of Iran*,
   422 F. Supp. 3d 118 (D.D.C. 2019) ................................................................28

*Al-Tamimi v. Adelson*,
   916 F.3d 1 (D.C. Cir. 2019) ...........................................................................24

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
   425 U.S. 682 (1976) ......................................................................................22

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ...................................................................................9, 10

*Arteaga-Ruiz v. United States*,
   164 F. Supp. 3d 1198 (D. Idaho 2016) ..........................................................18

*Banco Nacional de Cuba v. Sabbatino*,
   376 U.S. 398 (1964) (White, J., dissenting) ...................................................22

*Barker v. Halliburton Co.*,
   645 F.3d 297 (5th Cir. 2011) ........................................................................25

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   794 F.3d 99 (D.C. Cir. 2015) .....................................................................9-10

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*,
   323 F.3d 1198 (9th Cir. 2003) ..................................................................19, 21

*Borochov v. Islamic Republic. of Iran*,
   No. 19-cv-02855, 2022 WL 656168 (D.D.C. Mar. 4, 2022), appeal filed, No.
   22-7058 (D.C. Cir. Apr. 29, 2022) ................................................................28

*Bozgoz v. James*,
   Civ. A. No. 19-0239, 2020 WL 4732085 (D.D.C. Aug. 14, 2020) .................29

*Braun v. Islamic Republic of Iran*,
   228 F. Supp. 3d 64 (D.D.C. 2017) ................................................................27

*Briscoe v. United States*,
   268 F. Supp. 3d 1 (D.D.C. 2017) ..................................................................26

*Broidy Cap. Mgmt. LLC v. Muzin*,
 No. 19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th
 789 (D.C. Cir. 2021) .......................................................................................................24

*Cooper v. District of Columbia*,
 548 F. Supp. 3d 170 (D.D.C. 2021) ...............................................................................26

*Daliberti v. Republic of Iraq*,
 97 F. Supp. 2d 38 (D.D.C. 2000) ....................................................................................22

*De Csepel v. Republic of Hungary*,
 714 F.3d 591 (D.C. Cir. 2013) .......................................................................................11

*DeWitt v. District of Columbia*,
 43 A.3d 291 (D.C. 2012) ................................................................................................26

**Doe v. Fed. Democratic Republic of Ethiopia*,
 189 F. Supp. 3d 6 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017) ...................................14

**Doe v. Fed. Democratic Republic of Ethiopia*,
 851 F.3d 7 (D.C. Cir. 2017) .........................................................................14, 15, 16, 17

*Doe v. Roman Cath. Diocese*,
 Civ. A. No. 20-1750, 2022 WL 203455 (D.D.C. Jan. 24, 2022) ...........................................23

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*,
 894 F.3d 339 (D.C. Cir. 2018) .........................................................................................9

*Essroc Cement Corp. v. CTI/D.C., Inc.*,
 740 F. Supp. 2d 131 (D.D.C. 2010) ................................................................................19

*Est. of Hirshfeld v. Islamic Republic of Iran*,
 330 F. Supp. 3d 107 (D.D.C. 2018) ................................................................................28

*Evans-Reid v. District of Columbia*,
 930 A.2d 930 (D.C. 2007) ..............................................................................................27

*Frese v. City Segway Tours of Wash., D.C., LLC*,
 249 F. Supp. 3d 230 (D.D.C. 2017) ...........................................................................23, 24

*Hargraves v. District of Columbia*,
 134 F. Supp. 3d 68 (D.D.C. 2015) ..................................................................................25

*Harris v. U.S. Dep't of Veterans Affs.*,
 776 F.3d 907 (D.C. Cir. 2015) .......................................................................................26

*Hartley v. Dombrowski*,
 744 F. Supp. 2d 328 (D.D.C. 2010) ................................................................................25

*Heath v. Alabama,*
   474 U.S. 82 (1985)..................................................................................................23

*Herbage v. Meese,*
   747 F. Supp. 60 (D.D.C. 1990) ..............................................................................22

**Hilsenrath v. Swiss Confederation,*
   No. C 07-02782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F.
   App'x 314 (9th Cir. 2010) .........................................................................13, 14, 18

*Jerez v. Republic of Cuba,*
   775 F.3d 419 (D.C. Cir. 2014) ................................................................................17

*Jesner v. Arab Bank, PLC,*
   ___ U.S. ___, 138 S. Ct. 1386 (2018)....................................................................10

**Khochinsky v. Republic of Poland,*
   1 F.4th 1 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022) ..........15, 19, 20, 21

**Lambros v. Federative Republic of Brazil,*
   No. 19-cv-1929, 2021 WL 1820206 (D.D.C. May 6, 2021), *appeal filed*, No.
   21-7121 (D.C. Cir. Oct. 28, 2021) .............................................................20, 21, 24

*Leffer v. Fed. Republic of Germany,*
   No. 19-cv-03529, 2021 WL 1773355 (D.D.C. Mar. 26, 2021) ...............................21

*Logan v. Providence Hosp., Inc.,*
   778 A.2d 275 (D.C. 2001) ......................................................................................25

*Long v. Sears Roebuck & Co.,*
   877 F. Supp. 8 (D.D.C. 1995) ................................................................................25

*MacArthur Area Citizens Ass'n v. Republic of Peru,*
   809 F.2d 918 (D.C. Cir.), *modified*, 823 F.2d 606 (D.C. Cir. 1987) ................14, 18

*Martinez v. United States,*
   587 F. Supp. 2d 245 (D.D.C. 2008)........................................................................18

*Masoud v. Suliman,*
   816 F. Supp. 2d 77 (D.D.C. 2011) ............................................................................8

*McCoy v. Interclaim Holdings Ltd.,*
   No. 03 CV 4819, 2005 WL 8156768 (E.D.N.Y. Feb. 25, 2005) , *R & R
   adopted*, No. 03 CV 4819, 2005 WL 8156769 (E.D.N.Y. Oct. 11, 2005) ...............1

*McCreary v. Heath,*
   No. Civ. A. 04–0623, 2005 WL 3276257 (D.D.C. Sept. 26, 2005)...................24-25

iv

*McKesson Corp. v. Islamic Republic of Iran,*
  672 F.3d 1066 (D.C. Cir. 2012) ....................................................................22

*Mensah-Yawson v. Raden,*
  170 F. Supp. 3d 222 (D.D.C. 2016) ..............................................................25

*Mohammad Hilmi Nassif & Partners v. Republic of Iraq,*
  No. 17-cv-02193, 2021 WL 6841848 (D.D.C. July 29, 2021) ....................9

*Mohammadi v. Islamic Republic of Iran,*
  782 F.3d 9 (D.C. Cir. 2015) ..........................................................................10

*Murphy v. Islamic Republic of Iran,*
  740 F. Supp. 2d 51 (D.D.C. 2010) ................................................................27

*Nnaka v. Fed. Republic of Nigeria,*
  238 F. Supp. 3d 17 (D.D.C. 2017), aff'd, 756 F. App'x 16 (D.C. Cir. 2019) ........................22

*OBB Personenverkehr AG v. Sachs,*
  577 U.S. 27 (2015) ........................................................................................11

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017), *rev'd on other grounds sub nom. Opati v.
  Republic of Sudan,* 140 S. Ct. 1601 (2020) .................................................9

*Owens v. Republic of Sudan,*
  924 F.3d 1256 (D.C. Cir. 2019) ....................................................................28

*Phoenix Consulting, Inc. v. Republic of Angola,*
  216 F.3d 36 (D.C. Cir. 2000) ....................................................................9, 10

*Pitt v. District of Columbia,*
  491 F.3d 494 (D.C. Cir. 2007) ................................................................20, 28

*Republic of Argentina v. Weltover, Inc.,*
  504 U.S. 607 (1992) ................................................................................12, 21

*Riggs Nat'l Corp. & Subsidiaries v. Comm'r,*
  163 F.3d 1363 (D.C. Cir. 1999) ....................................................................22

\*\*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993) ........................................................................1, 9, 11, 12

*Scales v. District of Columbia,*
  973 A.2d 722 (D.C. 2009) ............................................................................26

*Schermerhorn v. State of Israel,*
  876 F.3d 351 (D.C. Cir. 2017) ......................................................................10

*Slate v. Pub. Def. Serv.*,
   31 F. Supp. 3d 277 (D.D.C. 2014) .................................................................................1

*Smith v. Overseas Korean Cultural Heritage Found.*,
   279 F. Supp. 3d 293 (D.D.C. 2018) ...............................................................................8

*Smith v. United States*,
   121 F. Supp. 3d 112 (D.D.C. 2015), aff'd, 843 F.3d 509 (D.C. Cir. 2016)...........................27

*Taylor v. Kingdom of Sweden*,
   No. 18-cv-1133, 2019 WL 3536599 (D.D.C. Aug. 2, 2019) .................................................10

*Valambhia v. United Republic of Tanzania*,
   18-CV-370, 2019 WL 1440198 (D.D.C. Mar. 31, 2019), *aff'd*, 964 F.3d 1135
   (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 2512 (2021)..................................................... 11-12

*W. S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
   493 U.S. 400 (1990)...............................................................................................21, 22

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) ....................................................................................24

*World Wide Mins. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002) ....................................................................................22

*Youming Jin v. Ministry of State Sec.*,
   475 F. Supp. 2d 54 (D.D.C. 2007) .............................................................................. 13-14

*Zhi Chen v. District of Columbia*,
   808 F. Supp. 2d 252 (D.D.C. 2011) ...............................................................................27

**Statutes**

28 U.S.C. § 1330(b) .......................................................................................................21

28 U.S.C. § 1350 ...........................................................................................................10

28 U.S.C. § 1603(d) .......................................................................................................11

28 U.S.C. § 1604 ...........................................................................................................27

28 U.S.C. § 1605(a)(2)...........................................................................................9, 10, 11, 13

28 U.S.C. § 1605(a)(5)..............................................................................................9, 10, 14

28 U.S.C. § 1605(a)(5)(A) .............................................................................................14, 17

28 U.S.C. § 1605(a)(5)(B) ........................................................................................14, 19, 24

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................23

DOJ, Justice *Dep't Announces Indictment, Arrests of Three Rebel Group
    Members for Brutal Murders of Two American Tourists in Uganda*,
    https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm (last
    visited May 9, 2022) .............................................................................................3

H. Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States,* 28
    BRIT. Y. B. INT'L L. 220, 225 (1952) ................................................................12

United Nations Sec. Council, Forces Democratiques de Liberation Du Rwanda
    (FDLR)
    https://www.un.org/securitycouncil/sanctions/1533/materials/summaries/entit
    y/forces-democratiques-de-liberation-du-rwanda-%28fdlr%29 (last visited
    May 9, 2022) ..........................................................................................................4

https://www.youtube.com/watch?v=4ZegIcDyowo&ab_channel=RwandaArchive
    s (last accessed May 1, 2022) ...............................................................................5

Restatement (Second) of Torts § 15 (1965) ...............................................................27

Restatement (Second) of Torts § 46(2) .....................................................................28

Restatement (Second) of Torts § 46, cmt. d. .............................................................29

U.S. State Dep't, *Terrorist Exclusion List,* https://www.state.gov/terrorist-
    exclusion-list/ .........................................................................................................3

U.S. State Dep't, *Diplomacy in Action*, https://2009-
    2017.state.gov/j/ct/rls/crt/2006/82738.htm (last visited May 9, 2022) ...................3

Defendant, Republic of Rwanda ("Rwanda"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (D.E. 1, "Compl.") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby states as follows:

## <u>INTRODUCTION</u>

Plaintiffs brought the present lawsuit against Rwanda, a sovereign nation, alleging a variety of claims that arise out of Rwandan law enforcement's alleged arrest, detention, prosecution, and conviction of Paul Rusesabagina, who is a dual citizen of Belgium and Rwanda, for serious violations of Rwandan law. All of Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and suffer from various other fundamental jurisdictional infirmities which require the dismissal of those claims with prejudice as against Rwanda pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

Rwanda's motion is based only on those factual allegations contained in the Complaint, the truth of which Rwanda does not concede but recognizes that the Court must accept as true solely for the purposes of assessing whether the Complaint is legally insufficient (*Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993)); documents to which the Complaint expressly refers but does not attach; public records of the United States Justice and State Departments; and records of Rwandan criminal court proceedings, which are incorporated by reference in the Complaint. The Court may consider all of these materials on a motion to dismiss. *Slate v. Pub. Def. Serv.*, 31 F. Supp. 3d 277, 288-89 (D.D.C. 2014); *McCoy v. Interclaim Holdings Ltd*., No. 03 CV 4819, 2005 WL 8156768, at *7 (E.D.N.Y. Feb. 25, 2005), *R & R adopted*, No. 03 CV 4819, 2005 WL 8156769 (E.D.N.Y. Oct. 11, 2005) (taking judicial notice of Canadian court proceeding where cited by plaintiff in complaint). Here, the Complaint expressly references the warrant issued for Paul Rusesabagina's arrest (Compl. ¶ 146) and repeatedly refers to and characterizes Rwandan

1

law enforcement and court proceedings that are central to all of Plaintiffs' claims but does not attach any of the relevant documents reflecting those proceedings. Compl. ¶¶ 7, 17, 50, 69, 79, 86, 173, 181, 194-97, 228-230, 237. Accordingly, attached hereto as Exhibit ("Exh.") A is a copy of the Indictment filed by the National Public Prosecution Authority of the Republic of Rwanda against, *inter alios*, Paul Rusesabagina who is a dual citizen of Rwanda and Belgium. Exh. A at 6 (¶ 1). Attached hereto as Exhibit B is a copy of the International Arrest Warrant issued for Paul Rusesabagina's extradition and arrest. Attached hereto as Exhibit C is a copy of the Judgment issued by the High Court, Chamber for International and Cross-Border Crimes, Sitting in Kigali, Rwanda, on September 20, 2021, pursuant to which Paul Rusesabagina was convicted of serious violations of the Penal Code of Rwanda.

## STATEMENT OF FACTS

### A.  The Rwandan Genocide

From 1990 to 1994, Rwanda underwent a deeply violent and traumatic period of internal conflict. Beginning in 1990, the ruling Rwandan Government, through its armed forces (the "Armed Forces") and government-organized civilian militias (the "Militias"), began to target and kill members of the minority Tutsi ethnic group. These Militias include the notorious Interahamwe and Impuzamugambi Militias. Compl. ¶¶ 4, 87; Exh. A at 24 (¶ 36, n.24).

In 1994, using extremist propaganda and hate speech, the ruling Government of Rwanda dramatically accelerated these targeted killings by directing the Armed Forces and the Militias to systematically massacre nearly one million Tutsi men, women, and children. These killings resulted in what is now recognized as the Genocide against the Tutsi, which was only stopped when the Rwandan Patriotic Army ("RPA") defeated the Armed Forces and Militias and drove

them out of Rwanda and into Zaire (now the Democratic Republic of Congo) and other neighboring countries. Compl. ¶¶ 4, 87; Exh. A at 24 (¶¶ 36-37).[1]

### B.    The Rise of the FLN

Although the RPA succeeded in forcing the Armed Forces and the Militias out of Rwanda, the former members of the Armed Forces and Militias eventually coalesced and evolved into a new organization: the Army for the Liberation of Rwanda ("ALIR"), whose stated objective is the violent overthrow of the Rwandan Government. ALIR committed numerous and well-documented atrocities in neighboring nations, including equipping and training child soldiers to carry out terror attacks in Rwanda and murdering American tourists in Bwindi Impenetrable National Park, Uganda. As a result, ALIR was designated a terrorist organization by the United States Government. Exh. A at 24-27 (¶¶ 36-43).[2]

Following its designation as a terrorist organization, ALIR evolved into and changed its name to the Democratic Forces for the Liberation of Rwanda ("FDLR") and continued to commit atrocities, including the systematic rape and murder of hundreds of people in the Eastern Democratic Republic of Congo, as well as launch attacks in Rwanda. In 2012, the UN Security Council formally sanctioned the FDLR and added it to the UN Security Council Consolidated

---

[1] DOJ, Justice *Dep't Announces Indictment, Arrests of Three Rebel Group Members for Brutal Murders of Two American Tourists in Uganda*, https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm (last visited May 9, 2022).

[2] U.S. State Dep't, *Terrorist Exclusion List*, https://www.state.gov/terrorist-exclusion-list/. (last visited May 9, 2022) (ALIR listed as terrorist organization); https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm (last visited May 9, 2022); U.S. State Dep't, *Diplomacy in Action*, https://2009-2017.state.gov/j/ct/rls/crt/2006/82738.htm (last visited May 9, 2022).

List.[3] Following this designation, members of the FDLR and a political organization called the Rwandan Movement for Democratic Change ("MRCD"), of which Paul Rusesabagina was a founder and President, formed the National Liberation Forces ("FLN" *a.k.a.* "NLF"), an armed group that continues to advocate for the violent overthrow of the Rwandan Government. The FLN (as well as its predecessor organizations) utilize operatives around the world to raise funds and garner political support for the violent overthrow of the Rwandan Government. Compl. ¶¶ 78, 134, 146, 171; Exh. A at 25-28 (¶¶ 37-43, 47-51), 34-36 (¶¶ 74-83), 39 (¶ 96), 42-43 (¶¶ 109-110); Exh. C at 24-25 (¶¶ 1-5), 52-53 (¶¶ 75-78), 56-58 (¶¶ 91-94), 69 (¶ 127).

In 2018, the FLN launched a series of attacks in Rwanda's southern province in the districts of Nyaruguru and Nyamagabe, in which at least nine people were killed. Exh. A at 36 (¶ 83), 42-44 (¶¶ 109-115), 76 (¶¶ 230-231), 111 (¶ 399); Exh. C at 25 (¶¶ 4-5), 39 (¶¶ 40-41).

Following the 2018 attacks, and while President of the MRCD-FLN, Plaintiff Paul Rusesabagina publicly acknowledged the FLN's responsibility for those attacks and declared his full support for the FLN's continued military efforts to overthrow the Rwandan Government. In a widely publicized speech, Rusesabagina praised the FLN's military efforts, stating:

> [S]ince the beginning of July 2018, the NLF launched a military struggle to liberate the Rwandan people . . . . [I]t is imperative that in 2019 we speed up the liberation struggle, Rwandan people can no longer stand the cruelty and all kind of ill-treatment directed to us by RPF regime. The time has come for us to use any means possible to bring about change in Rwanda. As all political means have been tried and failed it is time to attempt our last resort. Hence, I plead my unreserved support that our youth, the National Liberation Forces, NLF launches against the Kagame army in order to free the Rwandan people. As Rwandans, it is important to understand that this is the only way to bring about change in the whole country. For this fact, I call upon all Rwandans, all political and civil society organizations to support these young women and young men who took a lead in this struggle and to mobilize.

---

[3] United Nations Sec. Council, *Forces Democratiques de Liberation Du Rwanda (FDLR)* https://www.un.org/securitycouncil/sanctions/1533/materials/summaries/entity/forces-democratiques-de-liberation-du-rwanda-%28fdlr%29 (last visited May 9, 2022).

Exh. A at 50 (¶ 143); Exh. C at 25-26 (¶¶ 3-7).[4]

### C.    The Rwandan Government Investigates the FLN Attacks

On November 9, 2018, and in connection with its investigation of the 2018 attacks, the Prosecutor General of Rwanda issued an International Arrest Warrant (the "Warrant"), to which the Complaint refers but does not attach, to the Kingdom of Belgium for the arrest and extradition of Plaintiff Paul Rusesabagina, a Belgian national. Compl. ¶ 146; Exh. B at. 1

The Warrant charged Paul Rusesabagina with 13 separate counts in violation of the Rwandan Penal Code, including complicity in a terrorist act, terrorism under the command of a terrorist group, terrorism, committing terrorism for political purposes, and membership in a terrorist organization. Compl. ¶ 146; Exh. B at 4-9.

The Warrant was supported by specific factual allegations that Paul Rusesabagina was a founder of both the MRCD and FLN and that during 2018, under Rusesabagina's leadership and direction, fighters affiliated with those organizations carried out multiple terror attacks in Rwanda, including the shooting and killing of three people in Nyabimata Village, one of whom was a prominent member of the local government. Exh. B at 9-10 (¶¶ 1-3, 5-10), 12-13 (¶¶ 13-20); Compl. ¶¶ 78, 134, 146, 171. The Warrant also charged that Rusesabagina had coordinated efforts to provide the FLN with resources, including weapons, with which to carry out these attacks. Exh. B at 13 (¶¶ 18-20).

According to the Complaint, on February 27, 2020, as part of its investigation of the 2018 FLN terror attacks, Rwandan law enforcement arrested a certain Constantin Niyomwungere in Kigali, Rwanda, where he was interviewed by Michel Mbazabagabo, an investigator for the Rwandan Investigative Bureau ("RIB"). The RIB informed Niyomwungere that he was

---

[4] https://www.youtube.com/watch?v=4ZegIcDyowo&ab_channel=RwandaArchives (last accessed May 1, 2022).

suspected of collaborating "with people who are in a terrorist organization, FLN, whose objective is to destabilize the security of Rwanda." The Complaint alleges that during the interview, the RIB informed Niyomwungere that it sought information on Paul Rusesabagina and his involvement with the FLN. Compl. ¶¶ 134-136.

According to the Complaint, Niyomwungere allegedly agreed to cooperate with the RIB and informed it that he had been in regular contact with Paul Rusesabagina and that Rusesabagina was considering traveling to the neighboring country of Burundi as part of a speaking tour. While in Kigali, Rwanda, the RIB and Niyomwungere allegedly agreed to convince Paul Rusesabagina to travel from Texas to Burundi in order to bring about Rusesabagina's eventual arrest in Rwanda. Niyomwungere was released from RIB custody as part of this agreement. *Id*. at ¶¶ 134-135.

The Complaint alleges that during 2020, and following Niyomwungere's arrest and release, he and Rusesabagina spoke via WhatsApp phone calls and texts and Rusesabagina agreed to travel to Burundi and speak at various local churches about his personal experiences during the 1994 Rwandan Genocide. Compl. ¶¶ 126-130. The Complaint does not allege that Niyomwungere was in the United States at the time any of his communications with Rusesabagina occurred. Niyomwungere and Rusesabagina allegedly agreed that Rusesabagina would travel to Burundi from August 26, 2020 to September 2, 2020. The two men agreed to meet in Dubai, United Arab Emirates, and then travel to Burundi on a private plane. Compl. ¶¶ 126-130, 138-139.

According to the Complaint, on August 26, 2020, Paul Rusesabagina flew from San Antonio, Texas, to Chicago, Illinois, and from Chicago to Dubai, where he met Niyomwungere. *Id*. ¶ 139. When he arrived in Dubai, Rusesabagina called his family to let them know he had

arrived safely. *Id*. In Dubai, "Rusesabagina 'was not detained and no legal measures were taken in his regard . . . . He was not obstructed in any way.'" *Id*. ¶ 148. Rusesabagina and Niyomwungere then boarded a chartered private jet, which Niyomwungere told Rusesabagina that he had chartered to fly from Dubai to Bujumbura, Burundi. In fact, according to the Complaint, Niyomwungere and the RIB had allegedly chartered the plane to fly from Dubai to Kigali. *Id*. ¶¶ 139, 163.

The Complaint states that on August 28, 2020, the plane landed in Kigali, Rwanda, where Rusesabagina was arrested by the RIB pursuant to the Warrant and the RIB's criminal investigative authority, which the Complaint expressly recognizes. *Id*. ¶¶ 28, 144-146.

### D.      Paul Rusesabagina's Trial and Conviction

According to the Complaint, on September 14, 2020, Rusesabagina appeared before the Kicukiro Primary Court in Rwanda where he was formally charged with criminal violations of Rwandan law. *Id*. ¶ 173.

On November 16, 2020, the National Public Prosecution Authority of Rwanda filed an indictment commencing a criminal prosecution in the High Court, Specialized Chamber for International and Cross-Border Crimes, Sitting in Kigali (the "High Court") formally charging Paul Rusesabagina with nine crimes: including formation of an illegal armed group, membership of a terrorist group, financing terrorism, murder as an act of terrorism, abduction as an act of terrorism, armed robbery as an act of terrorism, attempted murder as an act of terrorism, and assault and battery as an act of terrorism. Exh. A at 10.

At his trial, Rusesabagina was represented by counsel, Gatera Gashabana, whom his family had privately retained. Compl. ¶ 177; Exh. C at 6 (¶ 3), 50 (¶ 68). Prior to a hearing on the merits in Rusesabagina's trial, the High Court denied Rusesabagina's request to annul his pretrial detention on the grounds he was being unlawfully detained as a result of a kidnapping. The High

Court concluded that Rusesabagina's request had "no validity" and that there was no evidence of any kidnapping since no force had been used to cause Rusesabagina to travel to Rwanda. Exh. C at 27 (¶ 12).

On September 9, 2021, the High Court found Paul Rusesabagina guilty of the crimes of membership in a terrorist organization, committing and participating in acts of terrorism and not guilty of the crime of forming an illegal armed group. The High Court found that Rusesabagina had provided funds to FLN operatives and sentenced Rusesabagina to 25 years' incarceration. Compl. ¶¶ 228, 237; Exh. C at 64-71 (¶¶ 111-132), 245 (¶¶ 673-675).

### E.     The Instant Lawsuit

On March 1, 2022, Plaintiffs filed the Complaint, pursuant to which they seek monetary damages as a result of Rwanda's allegedly unlawful kidnapping, arrest, detention, and prosecution of Paul Rusesabagina. The Complaint alleges that Rwandan law enforcement arrested Rusesabagina as part of a government planned operation to apprehend him on suspicion of committing violations of the Rwandan law, prosecuted and convicted him of committing those crimes, and detained Rusesabagina in connection with those crimes both before and after his conviction. Compl. ¶¶ 7, 134, 146, 173, 201, 215, 228, 237.

### <u>ARGUMENT</u>

### A.     The Complaint Must Be Dismissed Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction Over Defendant.

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed for lack of subject matter jurisdiction. *Smith v. Overseas Korean Cultural Heritage Found*., 279 F. Supp. 3d 293, 296 (D.D.C. 2018); *Masoud v. Suliman*, 816 F. Supp. 2d 77, 79 (D.D.C. 2011). The Foreign Sovereign Immunities Act ("FSIA"), which Plaintiffs admit applies to Rwanda here (Compl. ¶ 30), "provides the sole basis for obtaining jurisdiction over a foreign state in the courts

of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) *quoting Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339, 344 (D.C. Cir. 2018). "Under the FSIA, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Mohammad Hilmi Nassif & Partners v. Republic of Iraq,* No. 17-cv-02193, 2021 WL 6841848, at *5 (D.D.C. July 29, 2021) (internal quotations and citation omitted). Under this framework, foreign states, such as Rwanda, are entitled to a presumption of immunity and the "plaintiff bears an initial burden of production to show an exception to immunity . . . applies." *Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017), *rev'd on other grounds sub nom. Opati v. Republic of Sudan,* 140 S. Ct. 1601 (2020). The foreign sovereign then may "challenge either the legal sufficiency or the factual underpinning of an exception [to sovereign immunity]." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000). In resolving a facial attack, "the district court should take the plaintiff's . . . allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Id*.

### 1.    All of Plaintiffs' Claims Are Barred by the FSIA as to Rwanda.

The FSIA carves out specific, narrow exceptions to sovereign immunity, including cases that involve commercial activity in the United States (28 U.S.C. § 1605(a)(2)) and money damages for personal injury, death, or damage to or loss of property that occurs in the United States (28 U.S.C. § 1605(a)(5)). The jurisdictional immunity granted to foreign states is absolute and unqualified; if none of the specific exceptions in §§ 1605-1607 applies, there is no subject matter jurisdiction. *Amerada Hess*, 488 U.S. at 434-39; *Belize Soc. Dev. Ltd. v. Gov't of Belize*,

794 F.3d 99, 101 (D.C. Cir. 2015). A court is to "make FSIA immunity determinations on a claim-by-claim basis." *Simon*, 812 F.3d at 141, *rev'd on other grounds by Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021) (citations omitted); *see also Schermerhorn v. State of Israel*, 876 F.3d 351, 353 (D.C. Cir. 2017) ("[u]nder the FSIA, foreign sovereigns enjoy absolute immunity from suit unless the case falls within one of several specified exceptions").

Here, Plaintiffs invoke only Sections 1605(a)(2) and 1605(a)(5) as bases for exercising subject matter jurisdiction over Rwanda. Compl. ¶¶ 9, 11-12. However, Plaintiffs' claims against Rwanda for Fraud (Count I), Civil Conspiracy (Count II), Solatium (Count III), False Imprisonment (Count IV), Assault (Count V), Battery (Count VI), Intentional Infliction of Emotional Distress (Count VII), and Loss of Consortium (Count VIII), do not fall within the ambit of either of these exceptions and thus the Complaint must be dismissed based upon the sovereign immunity afforded to Rwanda.[5] Plaintiffs' allegations are so facially defective that the Court may resolve the jurisdictional issues presented here solely on the basis of the allegations in the Complaint. *Phoenix Consulting Inc.*, 216 F.3d at 40; *Taylor v. Kingdom of Sweden*, No. 18-cv-1133, 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019). Indeed, even if the Court were to accept all of Plaintiffs' allegations as true, the Complaint fails to establish the applicability of either of their proffered exceptions to Rwanda's sovereign immunity.

---

[5] Plaintiffs allege claims under the Alien Tort Claims Act (28 U.S.C. § 1350) (Counts X and XI) and the Torture Victim Protection Act (28 U.S.C. § 1350, Statutory Note) (Count IX) against defendants other than Rwanda. Compl. ¶¶ 14-15, 235-276. As such, these claims are not applicable to Rwanda. In any event, Rwanda is immune from these claims. The Alien Tort Claims Act "does not confer any waiver of sovereign immunity" and only "affords jurisdiction for suits against private defendants, not against foreign sovereigns. The FSIA provides the 'sole basis for obtaining jurisdiction over a foreign state.'" *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015), quoting *Amerada Hess*, 488 U.S. at 439. Similarly, the Torture Victim Protection Act only supports claims brought against individuals, and not foreign states. *Jesner v. Arab Bank, PLC*, ___ U.S. ___, 138 S. Ct. 1386, 1404 (2018) ("The key feature of the TVPA for this case is that it limits liability to 'individuals,' which, the Court has held, unambiguously limits liability to natural persons.").

a.    **The Foreign Sovereign Immunities Act's Commercial Activity Exception Does Not Apply.**

Plaintiffs allege that the commercial activity exception (28 U.S.C. § 1605(a)(2)) to the FSIA applies to their claims and that Rwanda is "not immune from the fraud and the breach of contract committed by its agents against Mr. Rusesabagina, all of which began with the offer of employment to him in the United States, under 28 U.S.C. § 1605(a)(2)." Compl. ¶ 11. But any argument that the commercial activity exception applies here is explicitly contradicted by the Complaint's own allegations, which demonstrate that the exception is inapplicable.

In order for the commercial activity exception in § 1605(a)(2) to apply, claims against a foreign state must be based upon (1) a commercial activity carried on in the United States by the foreign state; (2) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) an act outside the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

In determining whether claims against a foreign state fall under any of the three prongs of the commercial activity exception, a court must determine whether the action is "based upon" particular commercial activity that constitutes the "gravamen of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34-35 (2015). In making that determination, the Court must "zero[] in on the core of [Plaintiffs'] suit." *Id*. The character of the conduct and activities that form the gravamen of the suit is defined by its nature, not its purpose. 28 U.S.C. § 1603(d) (defining "commercial activity"); *Nelson*, 507 U.S. at 356 (citing 28 U.S.C. § 1603(d)); *De Csepel v. Republic of Hungary*, 714 F.3d 591, 599 (D.C. Cir. 2013) ("[W]e assess '[t]he commercial character of an activity . . . by reference to the nature of the . . . particular transaction or act, rather than by reference to its purpose'") (quoting 28 U.S.C. § 1603(d)); *Valambhia v. United*

11

*Republic of Tanzania,* 18-CV-370, 2019 WL 1440198, at *3 (D.D.C. Mar. 31, 2019) (explaining that "based upon" means "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case"), *aff'd*, 964 F.3d 1135 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 2512 (2021). The Supreme Court has thus established that "a state engages in commercial activity" only in those circumstances where it "exercises. . . . powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (internal quotation marks omitted) (quoting *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614 (1992)).

Zeroing in on the core of Plaintiffs' suit here, the gravamen of the Complaint does not allege any conduct or activity that falls within the commercial activity exception. Instead, all of Plaintiffs' allegations, claims, and prayers for relief are focused on the conduct of Rwandan law enforcement agents, prosecutors, and judges in connection with the government's efforts to arrest, detain, prosecute, and convict Plaintiff Paul Rusesabagina. Compl. ¶¶ 201, 205, 215, 219, 223, 228, 233, 237. None of this alleged conduct constitutes commercial activity and is all indisputably sovereign in nature.

> "Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce. 'Such acts as legislation, or the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own name. They can be performed only by the state acting as such.'"

*Nelson*, 507 U.S. at 362 (quoting H. Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*, 28 BRIT. Y. B. INT'L L. 220, 225 (1952)). For that reason, the United States Supreme Court has made clear that the alleged "abuse of the power of its police" by a foreign sovereign must be "understood for purposes of the restrictive theory [of sovereign immunity] as peculiarly sovereign in nature." *Id*. at 361. Here, "[r]ather than alleging activities that have indicia of commerce within the meaning of FSIA, the plaintiffs allege acts akin to abuses of state

power." *Youming Jin v. Ministry of State Sec.,* 475 F. Supp. 2d 54, 65 (D.D.C. 2007). In short, Plaintiffs' reliance upon the commercial activity exception is foreclosed by the fact that the gravamen of the Complaint concerns Rwanda's sovereign law enforcement actions that fall outside the exception's ambit. *Sachs*, 577 U.S. at 33 (exception does not apply if gravamen of complaint is not commercial activity); *Hilsenrath v. Swiss Confederation*, No. C 07-02782, 2007 WL 3119833, at *4 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F. App'x 314 (9th Cir. 2010) ("The Swiss Defendants did not act as private players in the market. Rather, they exercised powers peculiar to sovereigns-they investigated Mr. Hilsenrath's criminal activities in Switzerland and other countries, [and] issued a warrant for his arrest.").

Moreover, Plaintiffs' sole factual allegation of commercial activity supporting the application of Section 1605(a)(2) is contradicted by the Complaint's other allegations. Plaintiffs' allege that Constantin Niyomwungere, acting on behalf of the RIB, allegedly offered Paul Rusesabagina an employment opportunity in Burundi while Rusesabagina was living in Texas. Compl. ¶¶ 126-130, 133-136. But the Complaint then alleges that this offer was not in fact an offer of employment from the RIB, but rather one from a private citizen, who in turn was working with the RIB to entice Rusesabagina back to Rwanda where he could be arrested pursuant to the Warrant and prosecuted. *Id.* As such, the Complaint's own allegations demonstrate that this conduct was not commercial in nature but was instead inherently that of a sovereign actor seeking to arrest and prosecute a wanted suspect. Accordingly, Section 1605(a)(2) does not confer subject matter jurisdiction on the Court.

> **b.      The Non-Commercial Torts Exception to the FSIA Does Not Apply.**

Plaintiffs also assert that their claims fall within the "non-commercial tort exception" in Section 1605(a)(5) to the FSIA. Compl. ¶ 12. That exception potentially applies in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5). To be actionable under this exception every element of a tort including both injury and "the act precipitating that injury . . . must occur in the United States." *Doe v. Fed. Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 19 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017).

Moreover, even if Plaintiffs' claims fit within the non-commercial torts exception, Section 1605(a)(5)(A) excludes from subject matter jurisdiction any claim based upon the "exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." *Id.* Analogizing to the Federal Tort Claims Act, the United States Court of Appeals for the District of Columbia Circuit has held that the non-commercial torts exception "should be narrowly construed" and as such "acts or omissions of a fundamentally governmental nature," including law enforcement functions, are discretionary functions for purposes of subsection A." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir.), *modified*, 823 F.2d 606 (D.C. Cir. 1987) (citation omitted); *see Hilsenrath*, 2007 WL 3119833, at *5.

Finally, Section 1605(a)(5)(B) further excludes from the non-commercial tort exception "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B);

*Khochinsky v. Republic of Poland*, 1 F.4th 1, 11 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022).

Here, the non-commercial tort exception to the FSIA does not apply to any of Plaintiffs' claims because (i) none of the alleged tortious conduct occurred in the United States, (ii) the claims against Rwanda seek damages for discretionary law enforcement conduct, and (iii) all of the claims arise out of Rwanda's alleged misrepresentation, deceit, malicious prosecution, or abuse of process.

**(i)     None of the Tortious Conduct Plaintiffs Allege Occurred in the United States.**

Tortious conduct must occur in the United States for it to be actionable under the non-commercial tort exception to the FSIA. *Doe*, 851 F.3d at 10. Here, all of the tortious conduct alleged by Plaintiffs occurred outside of the United States. As a result, the non-commercial tort exception is inapplicable to Plaintiffs' claims.

First, Counts I and II of the Complaint are barred because they are based on precisely the type of "transnational" conduct that the United States Court of Appeals for the District of Columbia Circuit has held does not occur entirely within the United States and is therefore not actionable under the non-commercial tort exception of the FSIA. In *Doe*, 851 F.3d at 10, plaintiff sought damages for spyware that had infected his computer in America, which he alleged was emailed to him by representatives of the Ethiopian government. *Id*. The Court of Appeals held that Ethiopia's conduct was not actionable under the non-commercial torts exception because the alleged spyware infection "began outside the United States," any alleged tortious intent occurred abroad, and the complaint did not contain any allegations that Ethiopia or any of its agents had acted from within the United States to infect Doe's computer. *Id*. The same is true here. The Complaint alleges that Niyomwungere and the RIB conspired in Kigali to fraudulently induce

15

Paul Rusesabagina to leave the United States and travel to Burundi. Compl. ¶¶ 133-136. The Complaint does not allege that Niyomwungere was in the United States at the time he made the alleged misrepresentations to Rusesabagina, and it admits that Niyomwungere acted on behalf of the RIB and that his misrepresentations were part of a broader RIB investigation conceived of and planned outside the United States to arrest Rusesabagina in Rwanda. *Id*. ¶¶ 28, 126-145. Therefore, any tortious conduct as well as tortious intent "plainly lay abroad" and Counts I and II must be dismissed on this basis. *Doe*, 851 F.3d at 10.

Similarly, Counts IV, V and VI for false imprisonment, assault, and battery, respectively, are likewise barred because the tortious conduct alleged in those counts occurred entirely outside the United States. Plaintiff Paul Rusesabagina alleges that Rwanda, through its agents and employees, kidnapped him in Dubai (Compl. ¶¶ 8, 258, 273), "arbitrarily detained, restrained, and/or falsely imprisoned Plaintiff Paul Rusesabagina within Rwanda without his consent" and "acted intentionally to cause harmful and offensive contact to" (*Id*. ¶ 218), and in fact "did cause harmful and offensive contact to Plaintiff." *Id*. ¶ 223. However, the Complaint admits that any imprisonment occurred in Rwanda, not the United States, and that any harmful contact occurred only after he had traveled to Dubai, where he was allegedly kidnapped. *Id*. ¶¶ 8, 258, 273. Accordingly, Plaintiffs' claims for false imprisonment, assault, and battery against Rwanda must be dismissed.

As with the other claims against the Government, Counts III, VII, and VIII must also be dismissed because all of the alleged tortious conduct occurred outside of the United States. Counts III, VII, and VIII allege that Plaintiffs have suffered emotional harm in the United States based on allegations that Rwanda: "kidnapped, attacked, tortured, and slandered Paul Rusesabagina, subjected him to an internationally-covered sham trial, convicted him of false

charges, and sentenced him to life in prison for these false charges" (Compl. ¶ 228); caused Plaintiffs to fear that "their father has been tortured and that he will be murdered" in Rwanda where he is imprisoned (*Id*. ¶ 212); and caused Paul Rusesabagina's wife, Taciana Mukangamije, to suffer "loss of consortium, loss of society, affection, assistance, and conjugal fellowship" as a result of Paul Rusesabagina's detention in Rwanda. *Id*. ¶¶ 233-234.[6] But to be actionable under the non-commercial tort claims exception of the FSIA, "'the entire tort'—including not only the injury but also the act precipitating that injury—must occur in the United States." *Doe*, 851 F.3d at 10 (quoting *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (citation omitted). Here, Plaintiffs' emotional harm and loss of consortium was caused by alleged tortious conduct that occurred entirely outside of the United States, namely, an alleged kidnapping in Dubai followed by an allegedly unlawful trial, detention and mistreatment of their father and husband in Rwanda. Compl. ¶¶ 8, 228, 237. None of this conduct occurred in the United States.

> **(ii)    Section 28 U.S.C. § 1605(a)(5)(A) Bars All of Plaintiffs' Claims.**

The FSIA's "non-commercial tort exception" also fails to establish subject matter jurisdiction over Rwanda because all of the claims against Rwanda seek damages for Rwanda's discretionary law enforcement conduct, specifically Paul Rusesabagina's arrest, detention, prosecution and conviction. Section 28 U.S.C. §1605(a)(5)(A), provides that the FSIA does not confer jurisdiction for "a claim based upon the exercise or performance or the failure to exercise

---

[6] Plaintiffs also allege that a member of the Rwandan Government harassed certain Plaintiffs on the internet. Compl. ¶¶ 115-119, 198-199. These allegations cannot possibly support Plaintiffs' claims for Solatium of Loss of Consortium because those claims necessarily arise from Plaintiff Paul Rusesabagina's arrest and detention in Rwanda. *Id*. ¶¶ 210-213, 231-234. Furthermore, the alleged online harassment cannot serve as the foundation for a claim of intentional infliction of emotional distress against Rwanda because Plaintiffs do not allege that the harassment occurred entirely within the United States. *Id*. ¶¶ 115-119, 198-199. Finally, as discussed below, Plaintiffs' allegations of online harassment are insufficient to state a claim for intentional infliction of emotional distress. *Infra* at C.7.

or perform a discretionary function regardless of whether the discretion be abused." *Id*. Analogizing to the Federal Tort Claims Act, which closely parallels the language in the FSIA, the United States Court of Appeals for the D.C. Circuit has held that "the [non-commercial tort] exception should be narrowly construed so as not to encompass the farthest reaches of common law. . . . Accordingly, 'acts or omissions of a fundamentally governmental nature' are discretionary functions for purposes of subsection A." *MacArthur Area Citizens Ass'n*, 809 F.2d at 921 (internal citations omitted). The decision "to allocate limited governmental resources to investigate a reported crime, like the decision to allocate limited resources to prosecute a crime, is a discretionary function." *Martinez v. United States*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008); *Hilsenrath*, 2007 WL 3119833, at *5 (Swiss government's issuance of warrant and freezing of plaintiffs' assets during criminal investigation fell within discretionary function exception; Swiss officials "had discretion in deciding whether they would conduct the investigation and whether or not to effect the freeze"); *see, e.g., Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho 2016) (decisions on how to investigate, who to investigate, and how to present evidence are considered discretionary conduct).

Here, all of Plaintiffs' claims against Rwanda are based on discretionary acts of law enforcement personnel. Counts I and II are based on alleged misrepresentations made as part of an RIB conceived and executed law enforcement operation, conducted pursuant to the RIB's authorized investigative powers (Compl. ¶ 28), to entice Rusesabagina, a wanted criminal suspect, to travel to Rwanda so that he could be arrested and prosecuted. Compl. ¶¶ 126-136, 146. Counts IV, V and VI are based on allegations that Rusesabagina was subjected to unlawful physical contact and bodily detention during his arrest and imprisonment both before and after his prosecution. Compl. ¶¶ 8, 165, 215, 219, 223. Finally, Counts III, VII, and VIII allege that

Plaintiffs have suffered emotional harm in the United States based on allegations that Rwanda: "subjected Paul Rusesabagina to an internationally-covered sham trial, convicted him of false charges, and sentenced him to life in prison for these false charges." Compl. ¶¶ 228, 237. The Complaint therefore admits that all of the conduct on which Plaintiffs' claims are based is discretionary law enforcement activity, which is not actionable under the FSIA's non-commercial tort exception.

### (iii)    Section 28 U.S.C. § 1605(a)(5)(B) Bars All of Plaintiffs' Claims.

Finally, Plaintiffs' claims are barred because they arise out of conduct that is specifically excluded from the non-commercial tort exception under Section 1605(a)(5)(B), which precludes claims against a sovereign state that arise out of misrepresentation, deceit, abuse of process or malicious prosecution. 28 U.S.C. § 1605(a)(5)(B). When determining whether a claim is barred under that subsection, a court "look[s] beyond [the complaint's] characterization to the conduct on which the claim is based." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003). If the conduct on which a plaintiff's claim is based derives from allegations of misrepresentation, deceit, abuse of process or malicious prosecution, it is barred under 28 U.S.C. § 1605(a)(5)(B). *Khochinsky*, 1 F.4th at 11; *Blaxland*, 323 F.3d at 1203 (allegations of intentional infliction of emotional distress barred where they derived from abuse of process).

Counts I and II are barred because they arise out of Rwanda's alleged deceit and misrepresentations. Count I alleges a claim for fraud, which necessarily requires Plaintiffs to plead, *inter alia*, that Rwanda made a misrepresentation. *Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F. Supp. 2d 131, 145 (D.D.C. 2010) (listing elements of fraud). Count II alleges that Rwanda was part of a conspiracy to commit fraud and "deceitfully" (Compl. ¶ 272) "solicit the services

of Paul Rusesabagina by falsely offering him employment in Burundi, while actually intending to lure him from Texas to allow him to be kidnapped." Compl. ¶¶ 201, 205. Both Counts I and II arise directly out of alleged deceit and misrepresentations by Rwanda and its agents and employees and are therefore expressly barred. *See Lambros v. Federative Republic of Brazil*, No. 19-cv-1929, 2021 WL 1820206, at *4 (D.D.C. May 6, 2021), *appeal filed*, No. 21-7121 (D.C. Cir. Oct. 28, 2021).

Moreover, all counts of the Complaint are independently barred because they fundamentally arise out of Rwanda's alleged abuse of process and malicious prosecution of Paul Rusesabagina. An "abuse of process" is defined as the "wrongful use of legal process" including misuse of legal procedures to detain someone, *Khochinsky*, 1 F.4th at 11, while "malicious prosecution" concerns a prosecution supported by malicious intent by the defendant and a lack of probable cause for the underlying suit. *Pitt v. District of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007).

Here, Plaintiffs allegations in support of their claims demonstrate that the predicate conduct for these torts is Rwanda's alleged abuse of its legal process and malicious prosecution of Paul Rusesabagina. Plaintiffs allege that: they have suffered emotional and physical harm and loss of consortium because the RIB unlawfully exercised its recognized investigative authority and arrested Paul Rusesabagina, subjected him to an "internationally-covered sham trial, convicted him of false charges, and sentenced him to life in prison for these false charges" (Compl. ¶¶ 3, 28, 228, 237); they live in fear that "their father has been tortured and that he will be murdered" in Rwanda where he is "illegally" imprisoned following his conviction (*Id.* ¶¶ 191, 201, 212, 215); and all of Rwanda's conduct has occurred "under the color of law" (*Id.* ¶ 3). These allegations demonstrate that all of Plaintiffs' claims derive from Rwanda's alleged abuse

of the legal process to arrest, prosecute and imprison Paul Rusesabagina. As a result, Plaintiffs'
claims are excluded from the non-commercial tort claims exception and do not confer subject
matter jurisdiction on the Court. *Khochinsky*, 1 F.4th at 11 (affirming dismissal of claim for First
Amendment retaliation where claim arose out of allegedly unlawful extradition); *Blaxland*, 323
F.3d at 1203 (false imprisonment, emotional distress and loss of consortium claims barred, where
they arouse out of abuse of process); *Leffer v. Fed. Republic of Germany*, No. 19-cv-03529, 2021
WL 1773355, at *2 (D.D.C. Mar. 26, 2021) (dismissing claims where they amounted to claims
for abuse of process and malicious prosecution); *Lambros*, 2021 WL 1820206, at *4 (dismissing
claims of fraud, misrepresentation, false arrest and false imprisonment that arose out of allegedly
unlawful extradition).

### B.      The Complaint Must be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction.

Under the FSIA, personal jurisdiction over a sovereign state depends on the presence of
an applicable exception to sovereign immunity. 28 U.S.C. § 1330(b); *Weltover, Inc.,* 504 U.S. at
611. Here, as explained above, no exception to Rwanda's sovereign immunity applies in this
case. Accordingly, there is no personal jurisdiction over Rwanda.

### C.      The Complaint Must Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim.

Even if this Court concludes it may exercise subject matter jurisdiction over Rwanda, the
Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6). As a threshold
matter, ruling on Plaintiff's claims would require this Court "to declare invalid the official act[s]
of [Rwanda] performed within [its] own territory." *W. S. Kirkpatrick & Co. v. Env't Tectonics
Corp., Int'l*, 493 U.S. 400, 405 (1990). The claims are thus barred by the act of state doctrine,
under which courts in the United States must "refrain from deciding a case when the outcome

turns upon the legality or illegality … of official action by a foreign sovereign performed within its own territory." *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 55 (D.D.C. 2000) (quoting *Riggs Nat'l Corp. & Subsidiaries v. Comm'r*, 163 F.3d 1363, 1367 (D.C. Cir. 1999)); *World Wide Mins. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165 (D.C. Cir. 2002) (quoting *W. S. Kirkpatrick & Co*, 493 U.S. at 405, 409) (the act of state doctrine "serves as 'a rule of decision . . . ,' which requires that 'in the process of deciding [a case], the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid'"). Furthermore, even if the act of state doctrine did not apply, the Complaint fails to state any viable causes of action.

### 1.    The Act of State Doctrine Bars Plaintiffs' Claims

Plaintiffs claim that the Rwandan law enforcement officials, prosecutors, and courts illegally arrested, imprisoned, and mistreated Paul Rusesabagina. *See, e.g.*, Compl. ¶¶ 3, 228, 237. These are all undeniably acts of state. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 706 (1976) (acts of state are "done . . . in the exercise of [g]overnmental authority"); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 445 n.3 (1964) (White, J., dissenting), superseded by statute (an act of state is "any governmental act in which the sovereign's interest qua sovereign is involved. The expression 'act of State' usually denotes an executive or administrative exercise of sovereign power by an independent State or potentate, or by its or his duly authorized agents or officers") (internal quotation marks omitted); *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012) (an act of state is "conduct that is by nature distinctly sovereign").

Specifically, the acts of law enforcement authorities within their country's own territory are acts of state on which a court in the United States will not sit in judgment. *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 32 (D.D.C. 2017) (criminal investigation is act of state), aff'd, 756 F. App'x 16 (D.C. Cir. 2019); *Herbage v. Meese*, 747 F. Supp. 60, 67 (D.D.C. 1990)

(claims that British law enforcement officials illegally arrested and detained plaintiff were based upon public acts of the government committed within its own territory which were barred by the act of state doctrine); cf. *Heath v. Alabama*, 474 U.S. 82, 93 (1985) ("Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code.").

In order to adjudicate Plaintiffs' claims, this Court would need to determine whether Rwanda's official actions that form the basis for the Complaint—allegedly arresting, imprisoning, prosecuting, and convicting Plaintiff Paul Rusesabagina, all of which indisputably are official, law enforcement acts that took place outside of the United States and in Rwanda— were invalid. Indeed, Plaintiffs fundamentally claim that Rwanda has unlawfully arrested, detained and prosecuted Paul Rusesabagina and asserts causes of action which would require this court to find that Rwanda's official conduct was unlawful. Compl. ¶¶ 3, 215, 219, 223, 228, 237. Such an adjudication is prohibited under the act of state doctrine, and accordingly, Plaintiff's Complaint must be dismissed for failure to state a claim.

### 2.    The Plaintiffs Have Failed to State a Viable Fraud Claim.

"The essential elements of a common law fraud claim are: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) action taken in reliance upon the representation." *Doe v. Roman Cath. Diocese*, Civ. A. No. 20-1750, 2022 WL 203455, at *20 (D.D.C. Jan. 24, 2022) (citing *Frese v. City Segway Tours of Wash., D.C., LLC*, 249 F. Supp. 3d 230, 236 (D.D.C. 2017)). Federal Rule of Civil Procedure 9 imposes heightened pleading standards for fraud claims. Fed. R. Civ. P. 9(b). "To satisfy this [heightened] pleading standard in a fraud claim, a plaintiff must identify 'who precisely was involved in the fraudulent activity,' the 'time, place, and content of the false misrepresentations,' the 'fact misrepresented,' and 'what was retained or given up as a

23

consequence of the fraud.'" *Frese*, 249 F. Supp. 3d at 236–37 (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256-59 (D.C. Cir. 2004)).

Plaintiffs allege that "[d]efendants made false statements during phone calls with Paul Rusesabagina describing non-existent speaking opportunities with false promises of pay and employment in Burundi." Compl. ¶ 201. Despite alleging multiple statements by multiple defendants, Plaintiffs identify only one individual, Constantin Niyomwungere, who made one alleged misrepresentation, which the Complaint does not allege occurred in the United States. As discussed above, this sole representation on which Plaintiffs rely for their fraud claim is not actionable since there is no allegation that it occurred in the United States and it is barred by 28 U.S.C. § 1605(a)(5)(B); *Lambros*, 2021 WL 1820206, at *4. Plaintiffs' remaining conclusory allegations that other unspecified defendants made unspecified misrepresentations to Paul Rusesabagina at unspecified times fail to meet Federal Rules of Civil Procedure 9(b)'s heightened pleading requirements for fraud claims.

### 3.   The Plaintiffs Have Failed to State a Viable Civil Conspiracy Claim.

To state a claim for civil conspiracy, Plaintiffs must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) which overt act was done pursuant to and in furtherance of the common scheme." *Al-Tamimi v. Adelson*, 916 F.3d 1, 9 (D.C. Cir. 2019) (citation omitted). Thus, a pleading for civil conspiracy will be deficient without an allegation that there was "a wrongful act done in furtherance of the common design." *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *20 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021). Here, the only agreement the Complaint alleges is the agreement to commit fraud between Niyomwungere and the RIB, which is not actionable. "Plaintiff's bare assertions of the

existence of an agreement among the [other] conspirators cannot sustain a conspiracy claim."
*Mensah-Yawson v. Raden*, 170 F. Supp. 3d 222, 230 (D.D.C. 2016) (citing *McCreary v. Heath*,
No. Civ. A. 04–0623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005)). Furthermore,
Rwanda's sovereign exercise of its police powers is not "unlawful" or an otherwise "wrongful
act" sufficient to support a civil conspiracy claim. *Hargraves v. District of Columbia*, 134 F.
Supp. 3d 68, 98 (D.D.C. 2015) (civil conspiracy claim failed where police officer's underlying
conduct was not tortious). Accordingly, the Plaintiffs' civil conspiracy claim fails and must be
dismissed as a matter of law.

### 4.    The Plaintiffs Have Failed to State a Viable Loss of Consortium Claim.

For loss of consortium, the District of Columbia applies the law of the state where the
marriage is domiciled. *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 339 (D.D.C. 2010) (citing
*Long v. Sears Roebuck & Co*., 877 F. Supp. 8, 13 (D.D.C. 1995)); *see also Logan v. Providence
Hosp., Inc*., 778 A.2d 275, 280 (D.C. 2001) (observing that courts need not decide all issues
under a single jurisdiction's law). Under Texas law, a loss of consortium claim is derivative of
the tortfeasor's liability to the physically injured spouse; thus, when a wife asserts a loss of
consortium claim, she must establish that the tortfeasor was liable for the tort claim of the
physically injured husband. *Barker v. Halliburton Co*., 645 F.3d 297, 299 (5th Cir. 2011);
Compl. ¶¶ 6, 231-34. Further, the loss of consortium claim must derive from a successful tort
claim. *Barker*, 645 F.3d at 300.

Plaintiff Taciana Mukangamije's claim for loss of consortium fails as a matter of law.
Under Texas law, a loss of consortium claim is derivative and not its own cause of action, and
must be tied to a successful tort claim. As addressed above in discussing the FSIA's tort
exception, the various tort claims brought against Rwanda cannot proceed, as Rwanda is immune

and no exception to the FSIA applies. Thus, without a successful tort claim, the loss of consortium claim likewise fails and must be dismissed.

> **5.    The Plaintiffs Have Failed to State a Viable False Imprisonment Claim.**

To state a claim for false imprisonment, a plaintiff must plead facts to establish: "(1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *Cooper v. District of Columbia*, 548 F. Supp. 3d 170, 183 (D.D.C. 2021) (quoting *Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 911–12 (D.C. Cir. 2015)). Probable cause is an affirmative defense to a claim of false arrest or imprisonment. *Id.* (citing *Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009)); *see also Briscoe v. United States*, 268 F. Supp. 3d 1, 17 (D.D.C. 2017) ("Generally, a detention's lawfulness depends on whether it was supported by probable cause. . . . Similarly, a valid indictment 'conclusively determines the existence of probable cause.'") (citation omitted); *Harris*, 776 F.3d at 912 ("The existence of probable cause for arrest defeats claims for false arrest and imprisonment."); *DeWitt v. District of Columbia*, 43 A.3d 291, 295 (D.C. 2012), ("[I]t is a familiar principle that probable cause for an arrest and detention constitutes a valid defense to a claim of false ... imprisonment.").

Plaintiffs fail to allege facts in support of the unlawfulness of Plaintiff Paul Rusesabagina's arrest and detention. The Complaint does not allege a lack of probable cause for his arrest or that he was imprisoned without process of law. To the contrary: Plaintiffs allege that he was arrested pursuant to a warrant, prosecuted, convicted of crimes under Rwandan law, and subsequently sentenced to a term of imprisonment. Compl. ¶¶ 144-146, 228, 237. As reflected in the Warrant, Plaintiff Paul Rusesabagina's association and support of terrorist organizations

created probable cause to effect an arrest. Exh. B at 4-10. Accordingly, Plaintiff Paul Rusesabagina has failed to state a claim for false imprisonment.

### 6. The Plaintiffs Have Failed to State a Viable Assault or Battery Claim.

"'An assault is an intentional act and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim,' while '[a] battery is an intentional act that causes a harmful or offensive bodily contact.'" *Zhi Chen v. District of Columbia*, 808 F. Supp. 2d 252, 258 (D.D.C. 2011) (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007)). In suits under the FSIA, district courts look to Restatements, among other sources, to find and apply what are generally considered to be the well-established standards of state common law. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 73 (D.D.C. 2010). "Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness." Restatement (Second) of Torts § 15 (1965).

As addressed above, foreign governments are immunized from lawsuits brought against them in the United States unless an exception under the FSIA applies. 28 U.S.C. § 1604; *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017). Here, as any physical harm or apprehension cannot be said to have taken place within the United States, Plaintiffs' claims for assault and battery necessarily fail as a matter of law and must be dismissed.

### 7. The Plaintiffs Have Failed to State a Viable Intentional Infliction of Emotional Distress or Solatium Claim.

To adequately plead a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege sufficient facts to show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016) (citation omitted). Solatium is "'the mental anguish, bereavement, and grief'

27

experienced by those with a close relationship to the victim." *Borochov v. Islamic Republic. of Iran*, No. 19-cv-02855, 2022 WL 656168, at *11 (D.D.C. Mar. 4, 2022), *appeal filed*, No. 22-7058 (D.C. Cir. Apr. 29, 2022) (quoting *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018)). "Under the FSIA, a solatium claim is indistinguishable from an intentional infliction of emotional distress (IIED) claim." *Id.* (internal quotation marks omitted) *Id.* Courts apply the Restatement (Second) of Torts to these claims. *Id.* (citing *Abedini v. Gov'v of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 133 (D.D.C. 2019)). The Restatement permits recovery by (1) members of the victim's immediate family (2) who were present at the time of the conduct. Restatement (Second) of Torts § 46(2); *Borochov*, 2022 WL 656168, at *11; *Est. of Hirshfeld*, 330 F. Supp. 3d at 141. In other words, a family member can only recover for IIED or solatium if they were "'present' when the extreme or outrageous conduct took place." *Pitt*, 491 F.3d at 507; *see Owens v. Republic of Sudan*, 924 F.3d 1256, 1259 (D.C. Cir. 2019). In *Pitt*, the Court of Appeals for the District of Columbia Circuit explained that, "[i]n common parlance, the word 'present' connotes physical proximity… [i.e.] 'being in one place and not elsewhere; being within reach, sight or call or within contemplated limits; being in view or at hand'"). *Pitt*, 491 F.3d at 507.

Here, the Plaintiffs have not alleged that they were present with Paul Rusesabagina when Rwanda's alleged conduct took place. As such, Plaintiffs' claims for Solatium and IIED fail as a matter of law. Furthermore, although Plaintiffs also allege that they have been the target of "a barrage of taunts and insults via Twitter" by an alleged Rwandan Government spokesperson, Yolande Makolo, the Complaint does not allege that she was located in the United States at the time she made her alleged comments or even explain the substance of those comments. Compl. ¶¶ 198-199. Liability for IIED "'clearly does not extend to mere insults, indignities, threats,

annoyances, petty oppressions, or other trivialities;' it is imposed only when the conduct goes 'beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Bozgoz v. James*, Civ. A. No. 19-0239, 2020 WL 4732085, at *15 (D.D.C. Aug. 14, 2020) (quoting Restatement (Second) of Torts § 46, cmt. d (Am. Law Inst. 1975)). As such, these conclusory allegations of "taunts and insults" cannot amount to the "extreme and outrageous" conduct required to support a claim for intentional infliction of emotional distress. And, while the Complaint alleges that Ms. Makolo's comments "encourage" others to threaten Plaintiffs online (Compl. ¶ 199), the Complaint simply does not allege that any employee, agent or representative of Rwanda has threatened Plaintiffs with any harm or actually encouraged any such threats. Accordingly, the Plaintiffs' claim for intentional infliction of emotional distress based on allegations of online harassment is insufficient as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant the Republic of Rwanda's Motion and Dismiss the Complaint with prejudice for lack of jurisdiction and for failure to state any viable claim for relief.


Dated: May 9, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
*Attorneys for Defendant the Republic of Rwanda*
