UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF RWANDA, *et al.*,<br><br>Defendants. | Civil Action No.: 22-00469 (RJL)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION OF DEFENDANT THE REPUBLIC OF RWANDA
TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1), (2), and 12(b)(6) Defendant the Republic of Rwanda, by and through its undersigned counsel, hereby move this Court, before the Hon. Richard J. Leon, United States District Judge, to dismiss Plaintiffs' Amended Complaint with prejudice.

Plaintiffs brought the present lawsuit against Rwanda, a sovereign nation, alleging a variety of claims that arise out of Rwandan law enforcement's alleged arrest, detention, prosecution, and conviction of Paul Rusesabagina for serious violations of Rwandan law. All of Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and suffer from various other fundamental infirmities which require the dismissal of those claims with prejudice as against Rwanda pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

A memorandum in support of the instant motion and a proposed order are filed herewith.

Dated: June 14, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendant the Republic of Rwanda*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*,<br><br>        Plaintiffs,<br><br>    -against-<br><br>THE REPUBLIC OF RWANDA, *et al.*,<br><br>        Defendants. | Civil Action No.: 22-00469 (RJL)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT REPUBLIC OF RWANDA'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    A.    The Genocide Against the Tutsi ..................................................... 2

    B.    The Rise of the FLN ....................................................................... 3

    C.    The Rwandan Government Investigates the FLN Attacks ............... 5

    D.    Paul Rusesabagina's Trial and Conviction .................................... 8

    E.    The Instant Lawsuit...................................................................... 10

ARGUMENT ..................................................................................................... 10

    A.    The Amended Complaint Must Be Dismissed Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction Over Defendant Rwanda ......................................................................................... 10

        1.    All of Plaintiffs' Claims Are Barred by the FSIA as to Rwanda............ 11

            a.    The Foreign Sovereign Immunities Act's Commercial Activity Exception Does Not Apply ........................................... 13

            b.    The Non-Commercial Torts Exception to the FSIA Does Not Apply........................................................................ 16

                (i)    The Tortious Conduct Plaintiffs Allege Did Not Occur Entirely within the United States ......................... 17

                (ii)    Section 28 U.S.C. § 1605(a)(5)(A) Bars All of Plaintiffs' Claims. ................................................. 21

                (iii)    Section 28 U.S.C. § 1605(a)(5)(B) Bars All of Plaintiffs' Claims. ................................................. 23

    B.    The Amended Complaint Must be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction.................................................. 25

    C.    The Act of State Doctrine Bars Plaintiffs' Claims................................. 25

    D.    The Amended Complaint Must Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim.................................................................. 28

        1.    The Plaintiffs Have Failed to State a Viable Fraud Claim...................... 29

        2.    The Plaintiffs Have Failed to State a Viable Civil Conspiracy Claim................................................................................................ 30

        3.    The Plaintiffs Have Failed to State a Viable Loss of Consortium Claim................................................................................................ 31

        4.    The Plaintiffs Have Failed to State a Viable False Imprisonment Claim................................................................................................ 31

# TABLE OF CONTENTS
(continued)

**Page**

5.   The Plaintiffs Have Failed to State a Viable Assault or Battery Claim ................................................................................... 32

6.   The Plaintiffs Have Failed to State a Viable Intentional Infliction of Emotional Distress or Solatium Claim ................................ 33

7.   The Plaintiffs Have Failed to State a Claim for Intrusion Upon Seclusion or Violations of the Wiretap Act ............................... 35

CONCLUSION ................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abedini v. Gov'v of Islamic Republic of Iran*,
    422 F. Supp. 3d 118 (D.D.C. 2019) ......................................................................34

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019) ..............................................................................30

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
    425 U.S. 682 (1976) ..........................................................................................26

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ....................................................................................11, 12

*Arteaga-Ruiz v. United States*,
    164 F. Supp. 3d 1198 (D. Idaho 2016) .............................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................29

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964) (White, J., dissenting) .....................................................26

*Barker v. Halliburton Co.*,
    645 F.3d 297 (5th Cir. 2011) ...........................................................................31

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
    794 F.3d 99 (D.C. Cir. 2015) ...........................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................29

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*,
    323 F.3d 1198 (9th Cir. 2003) ....................................................................23, 24

*Borochov v. Islamic Republic. of Iran*,
    No. 19-cv-02855, 2022 WL 656168 (D.D.C. Mar. 4, 2022), *appeal filed*, No.
    22-7058 (D.C. Cir. Apr. 29, 2022) ..............................................................33, 34

*Bozgoz v. James*,
    Civ. A. No. 19-0239, 2020 WL 4732085 (D.D.C. Aug. 14, 2020) .........................34

*Braun v. Islamic Republic of Iran*,
    228 F. Supp. 3d 64 (D.D.C. 2017) ........................................................................... 33

*Briscoe v. United States*,
    268 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................. 32

*Broidy Cap. Mgmt. LLC v. Muzin*,
    No. 19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th
    789 (D.C. Cir. 2021) ................................................................................................ 30

*Cooper v. District of Columbia*,
    548 F. Supp. 3d 170 (D.D.C. 2021) ......................................................................... 32

*Daliberti v. Republic of Iraq*,
    97 F. Supp. 2d 38 (D.D.C. 2000) ............................................................................. 25

*De Csepel v. Republic of Hungary*,
    714 F.3d 591 (D.C. Cir. 2013) ................................................................................ 14

**Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019) ............................................................... 16, 36

*DePippo v. Chertoff*,
    453 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................... 36

***Doe v. Fed. Democratic Republic of Ethiopia*,
    189 F. Supp. 3d 6 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017) ..................... 16

***Doe v. Fed. Democratic Republic of Ethiopia*,
    851 F.3d 7 (D.C. Cir. 2017) .................................................... 17, 18, 19, 20, 36

*Doe v. Roman Cath. Diocese*,
    Civ. A. No. 20-1750, 2022 WL 203455 (D.D.C. Jan. 24, 2022) ............................ 29

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*,
    894 F.3d 339 (D.C. Cir. 2018) ................................................................................ 11

*Essroc Cement Corp. v. CTI/D.C., Inc.*,
    740 F. Supp. 2d 131 (D.D.C. 2010) ......................................................................... 23

*Est. of Hirshfeld v. Islamic Republic of Iran*,
    330 F. Supp. 3d 107 (D.D.C. 2018) .................................................................. 33, 34

*Evans-Reid v. District of Columbia*,
    930 A.2d 930 (D.C. 2007) ....................................................................................... 33

*Frese v. City Segway Tours of Wash., D.C., LLC*,
    249 F. Supp. 3d 230 (D.D.C. 2017) ......................................................................... 29

*Hargraves v. District of Columbia*,
   134 F. Supp. 3d 68 (D.D.C. 2015) ....................................................................31

*Harris v. U.S. Dep't of Veterans Affs.*,
   776 F.3d 907 (D.C. Cir. 2015) .......................................................................32

*Hartley v. Dombrowski*,
   744 F. Supp. 2d 328 (D.D.C. 2010) ...............................................................31

*Heath v. Alabama*,
   474 U.S. 82 (1985)..........................................................................................26

*Herbage v. Meese*,
   747 F. Supp. 60 (D.D.C. 1990) ......................................................................26

**Hilsenrath v. Swiss Confederation*,
   No. C 07-02782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F.
   App'x 314 (9th Cir. 2010) ....................................................................15, 17, 21

*Jerez v. Republic of Cuba*,
   775 F.3d 419 (D.C. Cir. 2014) .......................................................................21

*Jesner v. Arab Bank, PLC*,
   ___ U.S. ___, 138 S. Ct. 1386 (2018)............................................................12

*Kennedy v. Berkel & Co. Contractors*,
   No. 17-CV-1248 (DLF), 2020 WL 4903896 (D.D.C. Aug. 20, 2020) ...................35

***Khochinsky v. Republic of Poland*,
   1 F.4th 1 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022) ..................17, 23, 24

***Lambros v. Federative Republic of Brazil*,
   No. 19-cv-1929, 2021 WL 1820206 (D.D.C. May 6, 2021), *appeal filed*, No.
   21-7121 (D.C. Cir. Oct. 28, 2021) ............................................................23, 25, 30

*Leffer v. Fed. Republic of Germany*,
   No. 19-cv-03529, 2021 WL 1773355 (D.D.C. Mar. 26, 2021) ..........................24

*Long v. Sears Roebuck & Co.*,
   877 F. Supp. 8 (D.D.C. 1995).........................................................................31

*MacArthur Area Citizens Ass'n v. Republic of Peru*,
   809 F.2d 918 (D.C. Cir.), *modified*, 823 F.2d 606 (D.C. Cir. 1987) ...............17, 21

*Martinez v. United States*,
   587 F. Supp. 2d 245 (D.D.C. 2008).................................................................21

*Masoud v. Suliman,*
  816 F. Supp. 2d 77 (D.D.C. 2011) ......................................................................11

*McCoy v. Interclaim Holdings Ltd.,*
  No. 03 CV 4819, 2005 WL 8156768 (E.D.N.Y. Feb. 25, 2005), *R & R adopted*, No. 03 CV 4819, 2005 WL 8156769 (E.D.N.Y. Oct. 11, 2005) ..............................2

*McCreary v. Heath,*
  No. Civ. A. 04–0623, 2005 WL 3276257 (D.D.C. Sept. 26, 2005).........................................30

*McKesson Corp. v. Islamic Republic of Iran,*
  672 F.3d 1066 (D.C. Cir. 2012) .....................................................................26

*Mensah-Yawson v. Raden,*
  170 F. Supp. 3d 222 (D.D.C. 2016) ...............................................................30

*Mohammad Hilmi Nassif & Partners v. Republic of Iraq,*
  No. 17-cv-02193, 2021 WL 6841848 (D.D.C. July 29, 2021) ..............................11

*Mohammadi v. Islamic Republic of Iran,*
  782 F.3d 9 (D.C. Cir. 2015)............................................................................12

*Murphy v. Islamic Republic of Iran,*
  740 F. Supp. 2d 51 (D.D.C. 2010) .................................................................33

*Nnaka v. Fed. Republic of Nigeria,*
  238 F. Supp. 3d 17 (D.D.C. 2017), aff'd, 756 F. App'x 16 (D.C. Cir. 2019) .......................26

*OBB Personenverkehr AG v. Sachs,*
  577 U.S. 27 (2015)...............................................................................13, 15

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017), *rev'd on other grounds sub nom. Opati v. Republic of Sudan,* 140 S. Ct. 1601 (2020)...............................................................11

*Owens v. Republic of Sudan,*
  924 F.3d 1256 (D.C. Cir. 2019) .....................................................................34

*Phoenix Consulting, Inc. v. Republic of Angola,*
  216 F.3d 36 (D.C. Cir. 2000) .....................................................................11, 13

*Pitt v. District of Columbia,*
  491 F.3d 494 (D.C. Cir. 2007) .....................................................................24, 34

*Republic of Argentina v. Weltover, Inc.,*
  504 U.S. 607 (1992)...............................................................................14, 25

*Riggs Nat'l Corp. & Subsidiaries v. Comm'r*,
  163 F.3d 1363 (D.C. Cir. 1999) ......................................................................25, 26

**Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ..................................................................................1, 11, 14, 15

*Scales v. District of Columbia*,
  973 A.2d 722 (D.C. 2009) ....................................................................................32

*Schermerhorn v. State of Israel*,
  876 F.3d 351 (D.C. Cir. 2017) ............................................................................12

*Shive-Ayala v. Pacelle*,
  Civ. No. 21-704 (RJL), 2022 WL 782412 (D.D.C. Mar. 15, 2022) ...........28, 29, 38

*Slate v. Pub. Def. Serv.*,
  31 F. Supp. 3d 277 (D.D.C. 2014) ........................................................................2

*Smith v. Overseas Korean Cultural Heritage Found.*,
  279 F. Supp. 3d 293 (D.D.C. 2018) ....................................................................11

*Smith v. United States*,
  121 F. Supp. 3d 112 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016) ..........33

*Taylor v. Kingdom of Sweden*,
  No. 18-cv-1133, 2019 WL 3536599 (D.D.C. Aug. 2, 2019) .................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 109 (2d Cir. 2013) .................................................................................16

*Valenzuela v. Aquino*,
  853 S.W.2d 512 (Tex. 1993) .................................................................................35

*W. S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
  493 U.S. 400 (1990) ........................................................................25, 26, 27, 28

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
  389 F.3d 1251 (D.C. Cir. 2004) ..........................................................................29

*Wolf v. Regardie*,
  553 A.2d 1213 (D.C. 1989) .................................................................................37

*Wolfson v. Lewis*,
  924 F. Supp. 1413 (E.D. Pa. 1996) .....................................................................37

*World Wide Mins. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ..........................................................................25

*Youming Jin v. Ministry of State Sec.*,
  475 F. Supp. 2d 54 (D.D.C. 2007) ......................................................................15

*Zhi Chen v. District of Columbia*,
  808 F. Supp. 2d 252 (D.D.C. 2011) ....................................................................33

**Statutes**

18 U.S.C. § 2511(1)(c) ..........................................................................................35

18 U.S.C. § 2520(e) ...............................................................................................36

22 U.S.C. § 1741 ...........................................................................................9, 27, 28

22 U.S.C. § 1741(b) ...............................................................................................27

22 U.S.C. § 1741a(b)-(c) ........................................................................................28

28 U.S.C. § 1330(b) ...............................................................................................25

28 U.S.C. § 1350 ....................................................................................................12

28 U.S.C. § 1603(d) ...............................................................................................14

28 U.S.C. § 1604 ....................................................................................................33

28 U.S.C. § 1605(a)(2) .......................................................................................11, 13

28 U.S.C. § 1605(a)(5) .......................................................................................12, 16

28 U.S.C. § 1605(a)(5)(A) ..................................................................................16, 21

28 U.S.C. § 1605(a)(5)(B) ..................................................................................17, 23

**Other Authorities**

DOJ, Justice *Dep't Announces Indictment, Arrests of Three Rebel Group
  Members for Brutal Murders of Two American Tourists in Uganda*,
  https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm ....................3

Fed. R. Civ. P. 9(b) .................................................................................................29

H. Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*
  28 BRIT. Y. B. INT'L L. 220, 225 (1952) ............................................................14

https://www.americanbar.org/groups/human_rights/reports/background_briefing_
  rwanda_paul_rusesabagina/ (last accessed June 12, 2022) ......................................9

https://www.reuters.com/article/us-rwanda-politics-usa-idCAKCN2N51TS (last accessed June 14, 2022) ...................................................................................9, 10, 27

https://www.un.org/securitycouncil/sanctions/1533/materials/summaries/entity/forces-democratiques-de-liberation-du-rwanda-%28fdlr%29 (last visited May 9, 2022) ...........................................................................................................................4

https://www.youtube.com/watch?v=4ZegIcDyowo&ab_channel=RwandaArchives (last accessed June 14, 2022) .................................................................................5

Restatement (Second) of Torts § 15 (1965) ................................................................33

Restatement (Second) of Torts § 46(2) .......................................................................34

Restatement (Second) of Torts § 46, cmt. d ...............................................................34

Restatement (Second) of Torts § 652B, cmt. c ...........................................................37

U.S. State Dep't,
*Diplomacy in Action*, https://2009-2017.state.gov/j/ct/rls/crt/2006/82738.htm
(last visited May 9, 2022) ............................................................................................3

U.S. State Dep't, *Terrorist Exclusion List*, https://www.state.gov/terrorist-exclusion-list/ .................................................................................................................3

Defendant, Republic of Rwanda ("Rwanda"), by and through its undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Amended Complaint (D.E. 17, "Am. Compl.") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby states as follows:

## INTRODUCTION

Plaintiffs commenced the present lawsuit against Rwanda, a sovereign nation, by filing a complaint (D.E. 1, the "Original Complaint") alleging a variety of claims that arise out of Rwandan law enforcement's alleged investigation, arrest, detention, prosecution, and conviction of Paul Rusesabagina, who is a dual citizen of Belgium and Rwanda, for serious violations of Rwandan law. Rwanda moved to dismiss the Original Complaint. D.E. 13. Plaintiffs filed the Amended Complaint in response to Rwanda's motion and in an obvious attempt to correct the Original Complaint's fatal deficiencies. However, as the Amended Complaint's own allegations demonstrate, Plaintiffs' attempt to correct the Original Complaint is futile because all of Plaintiffs' claims against Rwanda are barred as a matter of law by the Foreign Sovereign Immunities Act ("FSIA") and suffer from various other fundamental infirmities which require the dismissal of those claims with prejudice as against Rwanda pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

Rwanda's motion is based only on those factual allegations contained in the Amended Complaint, the truth of which Rwanda does not concede but recognizes that the Court must accept as true solely for the purposes of assessing whether the Amended Complaint is legally insufficient (*Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993)); documents to which the Amended Complaint expressly refers but does not attach; public records of the United States Justice and State Departments; and records of Rwandan criminal court proceedings, which are

1

incorporated by reference in the Amended Complaint. The Court may consider all of these materials on a motion to dismiss. *Slate v. Pub. Def. Serv.*, 31 F. Supp. 3d 277, 288-89 (D.D.C. 2014); *McCoy v. Interclaim Holdings Ltd.*, No. 03 CV 4819, 2005 WL 8156768, at *7 (E.D.N.Y. Feb. 25, 2005), *R & R adopted*, No. 03 CV 4819, 2005 WL 8156769 (E.D.N.Y. Oct. 11, 2005) (taking judicial notice of Canadian court proceeding where cited by plaintiff in complaint). Here, the Amended Complaint expressly references the warrant issued for Paul Rusesabagina's arrest (Am. Compl. ¶ 155) and repeatedly refers to and characterizes Rwandan law enforcement and court proceedings that are central to all of Plaintiffs' claims but does not attach any of the relevant documents reflecting those proceedings. Am. Compl. ¶¶ 1, 7, 11-12, 21, 31-32, 83, 91, 140-143, 165, 182, 224, 228-29, 239, 252, 269-270. Accordingly, attached hereto as Exhibit ("Exh.") A is a copy of the Indictment filed by the National Public Prosecution Authority of the Republic of Rwanda against, *inter alios*, Paul Rusesabagina. Exh. A at 6 (¶ 1). Attached hereto as Exhibit B is a copy of the International Arrest Warrant issued for Paul Rusesabagina's extradition and arrest. Attached hereto as Exhibit C is a copy of the Judgment issued by the High Court, Chamber for International and Cross-Border Crimes, Sitting in Kigali, Rwanda, on September 20, 2021, pursuant to which Paul Rusesabagina was convicted of serious violations of the Penal Code of Rwanda.

## STATEMENT OF FACTS

### A.      The Genocide Against the Tutsi

From 1990 to 1994, Rwanda underwent a deeply violent and traumatic period of internal conflict. Beginning in 1990, the ruling Rwandan Government, through its armed forces (the "Armed Forces") and government-organized civilian militias (the "Militias"), began to target and kill members of the minority Tutsi ethnic group. These Militias include the notorious Interahamwe and Impuzamugambi Militias. Am. Compl. ¶¶ 8, 92, 132; Exh. A at 24 (¶ 36, n.24).

In 1994, using extremist propaganda and hate speech, the ruling Government of Rwanda dramatically accelerated these targeted killings by directing the Armed Forces and the Militias to systematically massacre nearly one million Tutsi men, women, and children. These killings resulted in what is now recognized as the Genocide against the Tutsi, which was only stopped when the Rwandan Patriotic Army ("RPA") defeated the Armed Forces and Militias and drove them out of Rwanda and into Zaire (now the Democratic Republic of Congo) and other neighboring countries. Am. Compl. ¶¶ 8, 92, 132; Exh. A at 24 (¶¶ 36-37).[1]

## B.     The Rise of the FLN

Although the RPA succeeded in forcing the Armed Forces and the Militias out of Rwanda, the former members of the Armed Forces and Militias eventually coalesced and evolved into a new organization: the Army for the Liberation of Rwanda ("ALIR"), whose stated objective is the violent overthrow of the Rwandan Government. ALIR committed numerous and well-documented atrocities in neighboring nations, including equipping and training child soldiers to carry out terror attacks in Rwanda and murdering American tourists in Bwindi Impenetrable National Park, Uganda. As a result, ALIR was designated a terrorist organization by the United States Government. Exh. A at 24-27 (¶¶ 36-43).[2]

Following its designation as a terrorist organization, ALIR evolved into and changed its name to the Democratic Forces for the Liberation of Rwanda ("FDLR") and continued to commit

---

[1] DOJ, Justice *Dep't Announces Indictment, Arrests of Three Rebel Group Members for Brutal Murders of Two American Tourists in Uganda*, https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm (last visited May 9, 2022).

[2] U.S. State Dep't, *Terrorist Exclusion List*, https://www.state.gov/terrorist-exclusion-list/. (last visited May 9, 2022) (ALIR listed as terrorist organization); https://www.justice.gov/archive/opa/pr/2003/March/03_crm_131.htm (last visited May 9, 2022); U.S. State Dep't, *Diplomacy in Action*, https://2009-2017.state.gov/j/ct/rls/crt/2006/82738.htm (last visited May 9, 2022).

atrocities, including the systematic rape and murder of hundreds of people in the Eastern Democratic Republic of Congo, as well as launch attacks in Rwanda. In 2012, the UN Security Council formally sanctioned the FDLR and added it to the UN Security Council Consolidated List.[3] Following this designation, members of the FDLR and a political organization called the Rwandan Movement for Democratic Change ("MRCD"), of which Paul Rusesabagina was a founder and President, formed the National Liberation Forces ("FLN" *a.k.a.* "NLF"), an armed group that continues to advocate for the violent overthrow of the Rwandan Government. The FLN (as well as its predecessor organizations) utilize operatives around the world to raise funds and garner political support for the violent overthrow of the Rwandan Government. Am. Compl. ¶¶ 82, 141, 155, 180; Exh. A at 25-28 (¶¶ 37-43, 47-51), 34-36 (¶¶ 74-83), 39 (¶ 96), 42-43 (¶¶ 109-110); Exh. C at 24-25 (¶¶ 1-5), 52-53 (¶¶ 75-78), 56-58 (¶¶ 91-94), 69 (¶ 127).

In 2018, the FLN launched a series of attacks in Rwanda's southern province in the districts of Nyaruguru and Nyamagabe, in which at least nine people were killed. Exh. A at 36 (¶ 83), 42-44 (¶¶ 109-115), 76 (¶¶ 230-231), 111 (¶ 399); Exh. C at 25 (¶¶ 4-5), 39 (¶¶ 40-41).

Following the 2018 attacks, and while President of the MRCD-FLN, Plaintiff Paul Rusesabagina publicly acknowledged the FLN's responsibility for those attacks and declared his full support for the FLN's continued military efforts to overthrow the Rwandan Government. In a widely publicized speech, Rusesabagina praised the FLN's military efforts, stating:

> [S]ince the beginning of July 2018, the NLF launched a military struggle to liberate the Rwandan people . . . . [I]t is imperative that in 2019 we speed up the liberation struggle, Rwandan people can no longer stand the cruelty and all kind of ill-treatment directed to us by RPF regime. The time has come for us to use any means possible to bring about change in Rwanda. As all political means have

---

[3] United Nations Sec. Council, *Forces Democratiques de Liberation Du Rwanda (FDLR)* https://www.un.org/securitycouncil/sanctions/1533/materials/summaries/entity/forces-democratiques-de-liberation-du-rwanda-%28fdlr%29 (last visited May 9, 2022).

been tried and failed it is time to attempt our last resort. Hence, I plead my unreserved support that our youth, the National Liberation Forces, NLF launches against the Kagame army in order to free the Rwandan people. As Rwandans, it is important to understand that this is the only way to bring about change in the whole country. For this fact, I call upon all Rwandans, all political and civil society organizations to support these young women and young men who took a lead in this struggle and to mobilize.

Exh. A at 50 (¶ 143); Exh. C at 25-26 (¶¶ 3-7).[4]

### C.      The Rwandan Government Investigates the FLN Attacks

On November 9, 2018, and in connection with its investigation of the 2018 attacks, the Prosecutor General of Rwanda issued an International Arrest Warrant (the "Warrant"), to which the Amended Complaint refers but does not attach, to the Kingdom of Belgium for the arrest and extradition of Plaintiff Paul Rusesabagina, a Belgian national. Am. Compl. ¶ 155; Exh. B at. 1

The Warrant charged Paul Rusesabagina with 13 separate counts in violation of the Rwandan Penal Code, including complicity in a terrorist act, terrorism under the command of a terrorist group, terrorism, committing terrorism for political purposes, and membership in a terrorist organization. Am. Compl. ¶ 155; Exh. B at 4-9.

The Warrant was supported by specific factual allegations that Paul Rusesabagina was a founder of both the MRCD and FLN and that during 2018, under Rusesabagina's leadership and direction, fighters affiliated with those organizations carried out multiple terror attacks in Rwanda, including the shooting and killing of three people in Nyabimata Village, one of whom was a prominent member of the local government. Exh. B at 9-10 (¶¶ 1-3, 5-10), 12-13 (¶¶ 13-20); Am. Compl. ¶¶ 141, 155, 180. The Warrant also charged that Rusesabagina had coordinated efforts to provide the FLN with resources, including weapons, with which to carry out these attacks. Exh. B at 13 (¶¶ 18-20).

---

[4] https://www.youtube.com/watch?v=4ZegIcDyowo&ab_channel=RwandaArchives (last accessed June 14, 2022).

According to the Amended Complaint, on February 27, 2020, as part of its investigation of the 2018 FLN terror attacks, Rwandan law enforcement arrested a certain Constantin Niyomwungere in Kigali, Rwanda, where he was interviewed by Michel Mbazabagabo, an investigator for the Rwandan Investigative Bureau ("RIB"). The RIB informed Niyomwungere that he was suspected of collaborating "with people who are in a terrorist organization, FLN, whose objective is to destabilize the security of Rwanda." The Amended Complaint alleges that during the interview, the RIB informed Niyomwungere that it sought information on Paul Rusesabagina and his involvement with the FLN. Am. Compl. ¶¶ 140-143.

According to the Amended Complaint, Niyomwungere allegedly agreed to cooperate with the RIB and informed it that he had been in regular contact with Paul Rusesabagina and that Rusesabagina was considering traveling to the neighboring country of Burundi as part of a speaking tour. While in Kigali, Rwanda, the RIB and Niyomwungere allegedly agreed to convince Paul Rusesabagina to travel from Texas to Burundi in order to bring about Rusesabagina's eventual arrest in Rwanda. Niyomwungere was released from RIB custody as part of this agreement. *Id*. ¶¶ 133-137, 142-143.

The Amended Complaint alleges that during 2020, and following Niyomwungere's arrest and release, he and Rusesabagina spoke via WhatsApp phone calls and texts and Rusesabagina agreed to travel to Burundi and speak at various local churches about his personal experiences during the 1994 Rwandan Genocide against the Tutsi. *Id*. The Amended Complaint does not allege that Niyomwungere was in the United States at the time any of his communications with Rusesabagina occurred. Niyomwungere and Rusesabagina allegedly agreed that Rusesabagina would travel to Burundi from August 26, 2020 to September 2, 2020. The two men agreed to

meet in Dubai, United Arab Emirates, and then travel to Burundi on a private plane. Am. Compl. ¶¶ 133-137, 140-145.

According to the Amended Complaint, the Government also allegedly "tracked and stalked" Paul Rusesabagina through agents operating in the United States "as part of the conspiracy to kidnap Paul Rusesabagina from the United States." Am. Compl. ¶ 260-261.

The Amended Complaint also alleges that the Government of Rwanda infected Plaintiffs Paul Rusesabagina and Carine Kanimba's cell phones with spyware in Belgium in 2018 and 2021, respectively. The spyware allegedly allowed the Government to read Paul Rusesabagina's WhatsApp communications while he was in the United States. Am. Compl. ¶¶ 102-103.

According to the Amended Complaint, employees of the Rwandan embassy in Washington, D.C., reviewed these allegedly intercepted communications at the direction of senior Rwandan Government officials in connection with coordinating an alleged "U.S. campaign of harassment, stalking, and tracking Mr. Rusesabagina." Am. Compl. ¶ 1, 85-86, 95, 105, 158-165.

According to the Amended Complaint, on August 26, 2020, Paul Rusesabagina flew from San Antonio, Texas, to Chicago, Illinois, and from Chicago to Dubai, where he met Niyomwungere. *Id*. ¶ 146. When he arrived in Dubai, Rusesabagina called his family to let them know he had arrived safely. *Id*. In Dubai, "Rusesabagina 'was not detained and no legal measures were taken in his regard . . . . He was not obstructed in any way.'" *Id*. ¶ 157. Rusesabagina and Niyomwungere then boarded a chartered private jet, which Niyomwungere told Rusesabagina that he had chartered to fly from Dubai to Bujumbura, Burundi. In fact, according to the Amended Complaint, Niyomwungere and the RIB had allegedly chartered the plane to fly from Dubai to Kigali. *Id*. ¶ 152.

7

The Amended Complaint states that on August 28, 2020, the plane landed in Kigali, Rwanda, where Rusesabagina was arrested by the RIB pursuant to the Warrant and the RIB's criminal investigative authority, which the Amended Complaint expressly recognizes. *Id*. ¶¶ 31-32, 146, 151, 155.

### D.      Paul Rusesabagina's Trial and Conviction

According to the Amended Complaint, on September 14, 2020, Rusesabagina appeared before the Kicukiro Primary Court in Rwanda where he was formally charged with criminal violations of Rwandan law. *Id*. ¶ 182.

On November 16, 2020, the National Public Prosecution Authority of Rwanda filed an indictment commencing a criminal prosecution in the High Court, Specialized Chamber for International and Cross-Border Crimes, Sitting in Kigali (the "High Court") formally charging Paul Rusesabagina with nine crimes: including formation of an illegal armed group, membership of a terrorist group, financing terrorism, murder as an act of terrorism, abduction as an act of terrorism, armed robbery as an act of terrorism, attempted murder as an act of terrorism, and assault and battery as an act of terrorism. Exh. A at 10.

At his trial, Rusesabagina was represented by counsel, Gatera Gashabana, whom his family had privately retained. Am. Compl. ¶ 186; Exh. C at 6 (¶ 3), 50 (¶ 68). Prior to a hearing on the merits in Rusesabagina's trial, the High Court denied Rusesabagina's request to annul his pretrial detention on the grounds he was being unlawfully detained as a result of a kidnapping. The High Court concluded that Rusesabagina's request had "no validity" and that there was no evidence of any kidnapping since no force had been used to cause Rusesabagina to travel to Rwanda. Exh. C at 27 (¶ 12).

During the trial, the High Court formally granted trial monitors access to the trial, in line with Rwanda's treaty obligations under the International Covenant on Civil and Political Rights (ICCPR) and the African Charter on Human and Peoples' Rights (African Charter).[5] Am. Compl. ¶¶ 205-206.

On September 9, 2021, the High Court found Paul Rusesabagina guilty of the crimes of membership in a terrorist organization, committing and participating in acts of terrorism and not guilty of the crime of forming an illegal armed group. The High Court found that Rusesabagina had provided funds to FLN operatives and sentenced him to 25 years' incarceration. Am. Compl. ¶¶ 1, 252, 270; Exh. C at 64-71 (¶¶ 111-132), 245 (¶¶ 673-675).

The Amended Complaint alleges that on May 6, 2022, the Department of State of the United States determined pursuant to 22 U.S.C. § 1741 that the government of Rwanda has "wrongfully detained U.S. Lawful Permanent Resident Paul Rusesabagina." Am. Compl. ¶¶ 2, 214.[6] As discussed below, the State Department did not conclude that Rwanda's detention of Paul Rusesabagina was unlawful and the matter has been assigned to a State Department official for diplomatic engagement pursuant to 22 U.S.C. § 1741. Am. Compl. ¶¶ 2, 214. The Amended Complaint does not allege that the State Department has determined that Paul Rusesabagina was kidnapped, mistreated while in Rwandan custody, or that he is actually innocent of the crimes for which he was convicted. *Id.* ¶¶ 211-214. Instead, the State Department's determination apparently took into account the "totality of the circumstances, notably the lack of fair trial guarantees during [Rusesabagina's] trial" and expressly "does not imply any position on

---

[5]  https://www.americanbar.org/groups/human_rights/reports/background_briefing_rwanda_paul_rusesabagina/ (last accessed June 12, 2022); Am. Compl. ¶¶ 205-206.
[6]  Plaintiffs quote from a purportedly official determination of the Department of State of the United States but do not attribute those quotations to any document or individual. *See, e.g.*, https://www.reuters.com/article/us-rwanda-politics-usa-idCAKCN2N51TS.

[Rusesabagina's] innocence or guilt."[7] Am. Comp. ¶ 214. The Amended Complaint also admits

that the State Department's criteria for reaching its conclusion included whether "United States

diplomatic engagement is likely necessary to secure the release of the detained individual." *Id*.

> ### E.     The Instant Lawsuit

On February 22, 2022, Plaintiffs filed the Original Complaint. The Original Complaint

alleges that Rwandan law enforcement investigated and arrested Rusesabagina as part of a

government planned operation to apprehend him on suspicion of committing violations of the

Rwandan law, prosecuted and convicted him of committing those crimes, and detained

Rusesabagina in connection with those crimes both before and after his conviction. Compl. ¶¶ 7,

134, 146, 173, 201, 215, 228, 237 (Feb. 22, 2022), D.E. 1.

On May 9, 2022, defendant the Government of Rwanda filed its Motion to Dismiss the

Original Complaint as against Rwanda. D.E. 13.

On May 31, 2022, Plaintiffs filed the Amended Complaint, which repeats the Original

Complaint's allegations that Rwandan law enforcement investigated and arrested Rusesabagina

as part of a government planned operation to apprehend him on suspicion of committing

violations of the Rwandan law, prosecuted and convicted him of committing those crimes, and

detained Rusesabagina in connection with those crimes. Am. Compl. ¶¶ 1, 7, 12, 21, 31-32, 91,

140-143, 165, 182, 224, 228-29, 239, 252, 269-270. Defendant Rwanda now moves to dismiss

the Amended Complaint in its entirety as against Rwanda.

## **ARGUMENT**

> ### A.     The Amended Complaint Must Be Dismissed Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction Over Defendant Rwanda.

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed for lack

---

[7] https://www.reuters.com/article/us-rwanda-politics-usa-idCAKCN2N51TS (last accessed June 14, 2022).

of subject matter jurisdiction. *Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 296 (D.D.C. 2018); *Masoud v. Suliman*, 816 F. Supp. 2d 77, 79 (D.D.C. 2011). The Foreign Sovereign Immunities Act ("FSIA"), which Plaintiffs admit applies to Rwanda here (Am. Compl. ¶¶ 12, 14-16, 34), "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) *quoting Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339, 344 (D.C. Cir. 2018). "Under the FSIA, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Mohammad Hilmi Nassif & Partners v. Republic of Iraq,* No. 17-cv-02193, 2021 WL 6841848, at *5 (D.D.C. July 29, 2021) (internal quotations and citation omitted). Under this framework, foreign states, such as Rwanda, are entitled to a presumption of immunity and the "plaintiff bears an initial burden of production to show an exception to immunity . . . applies." *Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017), *rev'd on other grounds sub nom. Opati v. Republic of Sudan,* 140 S. Ct. 1601 (2020). The foreign sovereign then may "challenge either the legal sufficiency or the factual underpinning of an exception [to sovereign immunity]." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000). In resolving a facial attack, "the district court should take the plaintiff's . . . allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Id.*

### 1.    All of Plaintiffs' Claims Are Barred by the FSIA as to Rwanda.

The FSIA carves out specific, narrow exceptions to sovereign immunity, including cases that involve commercial activity in the United States (28 U.S.C. § 1605(a)(2)) and money

damages for personal injury, death, or damage to or loss of property that occurs in the United States (28 U.S.C. § 1605(a)(5)). The jurisdictional immunity granted to foreign states is absolute and unqualified; if none of the specific exceptions in §§ 1605-1607 applies, there is no subject matter jurisdiction. *Amerada Hess*, 488 U.S. at 434-39; *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 101 (D.C. Cir. 2015). A court is to "make FSIA immunity determinations on a claim-by-claim basis." *Simon*, 812 F.3d at 141, *rev'd on other grounds by Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021) (citations omitted); *see also Schermerhorn v. State of Israel*, 876 F.3d 351, 353 (D.C. Cir. 2017).

Here, Plaintiffs invoke only Sections 1605(a)(2) and 1605(a)(5) as bases for exercising subject matter jurisdiction over Rwanda. Am. Compl. ¶¶ 15-16. However, Plaintiffs' claims against Rwanda for Fraud (Count I), Civil Conspiracy (Count II), Solatium (Count III), False Imprisonment (Count IV), Assault (Count V), Battery (Count VI), Intentional Infliction of Emotional Distress ("IIED") (Count VII), Loss of Consortium (Count VIII), Intrusion Upon Seclusion (Count IX) and Violations of the Wiretap Act (18 U.S.C. § 2520) (Count X) do not fall within the ambit of either of these exceptions and thus the Amended Complaint must be dismissed based upon the sovereign immunity afforded to Rwanda.[8] As with the Original Complaint, Plaintiffs' allegations in the Amended Complaint are so facially defective that the

---

[8] Plaintiffs allege claims under the Torture Victim Protection Act (28 U.S.C. § 1350, Statutory Note) (Count XI) and the Alien Tort Claims Act (28 U.S.C. § 1350) (Counts XII and XIII) against defendants other than Rwanda. Am. Compl. ¶¶ 269, 281, 297. As such, these claims are not applicable to Rwanda. In any event, Rwanda is immune from these claims. The Alien Tort Claims Act "does not confer any waiver of sovereign immunity" and only "affords jurisdiction for suits against private defendants, not against foreign sovereigns. The FSIA provides the 'sole basis for obtaining jurisdiction over a foreign state.'" *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015), quoting *Amerada Hess*, 488 U.S. at 439. Similarly, the Torture Victim Protection Act only supports claims brought against individuals, and not foreign states. *Jesner v. Arab Bank, PLC*, ___ U.S. ___, 138 S. Ct. 1386, 1404 (2018) ("The key feature of the TVPA for this case is that it limits liability to 'individuals,' which, the Court has held, unambiguously limits liability to natural persons.").

Court may resolve the jurisdictional issues presented here solely on the basis of the allegations in the Amended Complaint. *Phoenix Consulting Inc.*, 216 F.3d at 40; *Taylor v. Kingdom of Sweden*, No. 18-cv-1133, 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019). Indeed, even if the Court were to accept all of Plaintiffs' allegations as true, the Amended Complaint fails to establish the applicability of either of their proffered exceptions to Rwanda's sovereign immunity.

> ### a. The Foreign Sovereign Immunities Act's Commercial Activity Exception Does Not Apply.

Plaintiffs allege that the commercial activity exception (28 U.S.C. § 1605(a)(2)) to the FSIA applies to their claims and that Rwanda is "not immune for the fraud and breach of contract committed by its agents against Mr. Rusesabagina[,] all of which began with the offer of employment to him in the United States, under 28 U.S.C. § 1605(a)(2)." Am. Compl. ¶ 15. But any argument that the commercial activity exception applies here is explicitly contradicted by the Amended Complaint's own allegations, which demonstrate that the exception is inapplicable.

In order for the commercial activity exception in § 1605(a)(2) to apply, claims against a foreign state must be based upon (1) a commercial activity carried on in the United States by the foreign state; (2) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) an act outside the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

In determining whether claims against a foreign state fall under any of the three prongs of the commercial activity exception, a court must determine whether the action is "based upon" particular commercial activity that constitutes the "gravamen of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34-35 (2015). In making that determination, the Court must "zero[] in on the core of [Plaintiffs'] suit." *Id*. To be considered "commercial," an activity must be "the

type" of activity "by which a private party engages in" trade or commerce. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). The character of the conduct and activities that form the gravamen of the suit is defined by its nature, not its purpose. 28 U.S.C. § 1603(d) (defining "commercial activity"); *Nelson*, 507 U.S. at 356 (citing 28 U.S.C. § 1603(d)); *De Csepel v. Republic of Hungary*, 714 F.3d 591, 599 (D.C. Cir. 2013) ("[W]e assess '[t]he commercial character of an activity . . . by reference to the nature of the . . . particular transaction or act, rather than by reference to its purpose'") (quoting 28 U.S.C. § 1603(d)). The Supreme Court has thus established that "a state engages in commercial activity" only in those circumstances where it "exercises. . . . powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (internal quotation marks omitted) (quoting *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614 (1992)).

Zeroing in on the core of Plaintiffs' suit here, the gravamen of the Amended Complaint does not allege any conduct or activity that falls within the commercial activity exception. Instead, all of Plaintiffs' allegations, claims, and prayers for relief are focused on the conduct of Rwandan law enforcement agents, prosecutors, and judges, in connection with the government's efforts to harass, arrest, detain, prosecute, and convict Plaintiff Paul Rusesabagina. Am. Compl. ¶¶ 1, 7, 11-12, 21, 31-32, 83, 91, 140-143, 165, 182, 224, 228-229, 239, 252, 269-270. None of this alleged conduct constitutes commercial activity and is all indisputably sovereign in nature.

> "Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce. 'Such acts as legislation, or the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own name. They can be performed only by the state acting as such.'"

*Nelson*, 507 U.S. at 362 (quoting H. Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*, 28 BRIT. Y. B. INT'L L. 220, 225 (1952)). For that reason, the United States

Supreme Court has made clear that the alleged "abuse of the power of its police" by a foreign sovereign must be "understood for purposes of the restrictive theory [of sovereign immunity] as peculiarly sovereign in nature." *Id*. at 361. Here, "[r]ather than alleging activities that have indicia of commerce within the meaning of FSIA, the plaintiffs allege acts akin to abuses of state power." *Youming Jin v. Ministry of State Sec.,* 475 F. Supp. 2d 54, 65 (D.D.C. 2007). In short, Plaintiffs' reliance upon the commercial activity exception is foreclosed by the fact that the gravamen of the Amended Complaint concerns Rwanda's sovereign law enforcement actions that fall outside the exception's ambit. *Sachs*, 577 U.S. at 33 (exception does not apply if gravamen of complaint is not commercial activity); *Hilsenrath v. Swiss Confederation*, No. C 07-02782, 2007 WL 3119833, at *4 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F. App'x 314 (9th Cir. 2010) ("The Swiss Defendants did not act as private players in the market. Rather, they exercised powers peculiar to sovereigns-they investigated Mr. Hilsenrath's criminal activities in Switzerland and other countries, [and] issued a warrant for his arrest.").

Moreover, Plaintiffs' sole factual allegation of "commercial" activity supporting the application of Section 1605(a)(2) is contradicted by the Amended Complaint's other allegations. Plaintiffs' allege that Constantin Niyomwungere, acting on behalf of the RIB, allegedly offered Paul Rusesabagina an employment opportunity in Burundi while Rusesabagina was living in Texas. Am. Compl. ¶¶ 133-137, 140-143. But the Amended Complaint then alleges that this offer was not in fact an offer of employment from the RIB, but rather one from a private citizen, who in turn was working with the RIB to entice Rusesabagina back to Rwanda where he could be arrested pursuant to the Warrant and prosecuted. *Id*. As such, the Amended Complaint's own allegations demonstrate that this conduct was not commercial in nature but was instead

inherently that of a sovereign actor seeking to arrest and prosecute a wanted suspect. Accordingly, Section 1605(a)(2) does not confer subject matter jurisdiction on the Court.

> **b.     The Non-Commercial Torts Exception to the FSIA Does Not Apply.**

Plaintiffs also assert that their claims fall within the "non-commercial tort exception" in Section 1605(a)(5) to the FSIA. Am. Compl. ¶ 16. That exception potentially applies in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5). To be actionable under this exception every element of a tort including both injury and "the act precipitating that injury . . . must occur in the United States." *Doe v. Fed. Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 19 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017). Courts addressing this exception have repeatedly and clearly held that "entire tort" must occur in the United States. *Id*; *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 427 (S.D.N.Y. 2019); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115 (2d Cir. 2013) ("For this exception to apply, however, the 'entire tort' must be committed in the United States.").

Moreover, even if Plaintiffs' claims fit within the non-commercial torts exception, Section 1605(a)(5)(A) excludes from subject matter jurisdiction any claim based upon the "exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." *Id*. Analogizing to the Federal Tort Claims Act, the United States Court of Appeals for the District of Columbia Circuit has held that the non-commercial torts exception "should be narrowly construed" and as such "acts or omissions of a fundamentally governmental nature," including law enforcement functions, are discretionary

16

functions for purposes of subsection A." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir.), *modified*, 823 F.2d 606 (D.C. Cir. 1987) (citation omitted); *see Hilsenrath*, 2007 WL 3119833, at *5.

Finally, Section 1605(a)(5)(B) further excludes from the non-commercial tort exception "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B); *Khochinsky v. Republic of Poland*, 1 F.4th 1, 11 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022).

Here, the non-commercial tort exception to the FSIA does not apply to any of Plaintiffs' claims because (i) the alleged tortious conduct did not occur entirely within the United States, (ii) the claims against Rwanda seek damages for discretionary law enforcement conduct, and (iii) the claims arise out of Rwanda's alleged misrepresentation, deceit, malicious prosecution, or abuse of process.

### (i)   The Tortious Conduct Plaintiffs Allege Did Not Occur Entirely within the United States.

Tortious conduct must occur entirely in the United States for it to be actionable under the non-commercial tort exception to the FSIA. *Doe*, 851 F.3d at 10. Here, the tortious conduct alleged by Plaintiffs did not occur entirely within the United States. As a result, the non-commercial tort exception is inapplicable to Plaintiffs' claims.

First, Counts I and II of the Amended Complaint are barred because they are based on precisely the type of "transnational" conduct that the United States Court of Appeals for the District of Columbia Circuit has held does not occur entirely within the United States and is therefore not actionable under the non-commercial tort exception of the FSIA. In *Doe*, 851 F.3d at 10, plaintiff sought damages for spyware that had infected his computer in America, which he

alleged was emailed to him by representatives of the Ethiopian government. *Id*. The Court of Appeals held that Ethiopia's conduct was not actionable under the non-commercial torts exception because the alleged spyware infection "began outside the United States" and any alleged tortious intent "plainly lay abroad." *Id*. The same is true here. The Amended Complaint alleges that Niyomwungere and the RIB conspired in Kigali to fraudulently induce Paul Rusesabagina to leave the United States and travel to Burundi. Am. Compl. ¶¶ 133-136, 140-143. The Amended Complaint does not allege that Niyomwungere was in the United States at the time he made the alleged misrepresentations to Rusesabagina, and it admits that Niyomwungere acted on behalf of and in concert with the RIB and that Niyomwungere's misrepresentations were part of a broader RIB investigation conceived of, planned, and executed outside the United States to arrest Rusesabagina in Rwanda. *Id*. ¶¶ 1, 31-32, 133-137, 140-143, 159, 165, 172, 228.[9] Therefore, the tortious conduct alleged in support of Counts I and II did not occur entirely in the United States and the tortious intent "plainly lay abroad." *Doe*, 851 F.3d at 10. Counts I and II must be dismissed on this basis.

Similarly, Counts IX (Intrusion Upon Seclusion) and X (Violations of the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2520) of the Amended Complaint are also barred under the FSIA and *Doe* because the tortious conduct alleged did not occur entirely

---

[9] As argued more fully below (*infra* at D.2.), while the Amended Complaint alleges in conclusory fashion that other agents of the Government, including Michelle Martin and "members of the Rwandan diaspora" purportedly operating in the United States participated in the operation to entice Paul Rusesabagina to travel back to Rwanda, the Amended Complaint provides no specific allegations of how they participated or assisted the RIB other than engaging in lawful conduct. Am. Compl. ¶¶ 79-84, 119-126. Moreover, even if the Court accepts as true that these alleged agents participated in the purported conspiracy and were physically present in the United States, the Amended Complaint admits that portions of the RIB devised operation was planned and executed outside the United States. Thus, these threadbare allegations of conduct in the United States cannot possibly satisfy the FSIA requirement that the "entire tort" occur in the United States. *Doe*, 851 F.3d at 10 (dismissing complaint where "at least a portion of Ethiopia's alleged tort occurred abroad.")

within the United States. Counts IX and X allege that the Government "tracked and stalked Paul Rusesabagina and his family members while they resided in the United States through agents such as Michelle Martin or members of the Rwandan diaspora, coordinated through the Rwandan Embassy in Washington, D.C.," as well as through "eavesdropping by phone-hacking" and interception and dissemination of "Plaintiffs Paul Rusesabagina's and Carine Kanimba's wire, oral, and electronic communications." Am. Compl. ¶¶ 260-261, 265-266. However, the Amended Complaint admits that the purported harassment and surveillance of Paul Rusesabagina in the United States was allegedly ordered and supervised directly by senior Rwandan Government officials *in Rwanda*. Am. Compl. ¶¶ 1, 7, 11, 12, 19, 30-33, 85-89, 95, 159, 165, 228. In addition, the Amended Complaint admits that any alleged "phone-hacking" of Plaintiffs' devices "began outside the United States" in Belgium, where the devices were infected. Am. Compl. ¶¶ 102-103, 260; *Doe*, 851 F.3d at 10. Thus, as with Counts I and II, the Amended Complaint's own allegations leave no doubt that the alleged torts of Intrusion Upon Seclusion and Violations of the Electronic Communications Privacy Act did not occur entirely within the United States and are therefore barred by the FSIA.[10]

Counts IV, V, and VI for false imprisonment, assault, and battery, respectively, are likewise barred because the tortious conduct alleged in those counts occurred entirely outside the United States. Plaintiff Paul Rusesabagina alleges that Rwanda, through its agents and employees, kidnapped him in Dubai on August 26, 2020 (Am. Compl. ¶¶ 12, 166), "arbitrarily detained, restrained, and/or falsely imprisoned Plaintiff Paul Rusesabagina within Rwanda without his consent" (*Id.* ¶ 239) and "acted intentionally to cause harmful and offensive contact

---

[10] As argued more fully at section D.7., *infra*, none of the conduct of Michelle Martin and "members of the Rwandan diaspora"(Am. Compl. ¶ 109) alleged by Plaintiffs in support of their claim for Intrusion Upon Seclusion is even tortious and, as a result, Plaintiffs have failed to adequately plead that cause of action.

to" (*Id*. ¶ 242), and in fact "did cause harmful and offensive contact to Plaintiff." *Id*. ¶ 247.

However, the Amended Complaint admits that any imprisonment occurred in Rwanda, not the

United States, and that any harmful contact occurred only after he had traveled to Dubai, where

he was allegedly kidnapped. *Id*. ¶¶ 12, 151, 166. Accordingly, Plaintiffs' claims for false

imprisonment, assault, and battery against Rwanda must be dismissed.

As with the other claims against the Government, Counts III, VII, and VIII must also be

dismissed because the alleged torts did not occur entirely within the United States. Counts III,

VII, and VIII allege that Plaintiffs have suffered emotional harm in the United States based on

allegations that Rwanda: "kidnapped, attacked, tortured, and slandered Paul Rusesabagina,

subjected him to an internationally-covered sham trial, convicted him of false charges, and

sentenced him to life in prison for these false charges" (Am. Compl. ¶ 252); caused Plaintiffs to

fear that "their father has been tortured and that he will be murdered" in Rwanda where he is

imprisoned (*Id*. ¶¶ 236); and caused Paul Rusesabagina's wife, Taciana Mukangamije, to suffer

"loss of consortium, loss of society, affection, assistance, and conjugal fellowship" as a result of

Paul Rusesabagina's detention in Rwanda. *Id*. ¶¶ 257-258.[11] But to be actionable under the non-

commercial tort claims exception of the FSIA, "'the entire tort'—including not only the injury

but also the act precipitating that injury—must occur in the United States." *Doe*, 851 F.3d at 10

---

[11] Plaintiffs also allege that a member of the Rwandan Government harassed certain Plaintiffs on
the internet. Am. Compl. ¶¶ 121-126. These allegations cannot possibly support Plaintiffs'
claims for Solatium and Loss of Consortium because those claims necessarily arise from plaintiff
Paul Rusesabagina's arrest and detention in Rwanda. *Id*. ¶¶ 236, 252, 257. Furthermore, the
alleged online harassment cannot serve as the foundation for a claim of IIED against Rwanda
because Plaintiffs do not allege that the harassment occurred entirely within the United States
since it was allegedly committed in Rwanda and as part of a broader harassment campaign
purportedly designed and ordered by the highest levels of the Rwandan Government. *Id*. ¶¶ 12,
19, 30-33, 39, 85-86, 105, 121-126, 221-222, 228, 261. Finally, as discussed below, Plaintiffs'
allegations of online and other purported harassment are insufficient to state a claim for IIED.
*Infra* at section D.6.

20

(quoting *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (citation omitted). Here, Plaintiffs' emotional harm and loss of consortium was caused by alleged tortious conduct that occurred entirely outside of the United States, namely, an alleged kidnapping in Dubai followed by an allegedly unlawful trial, detention and mistreatment of their father and husband in Rwanda. Am. Compl. ¶¶ 12, 166, 252. Thus, the entire torts (both conduct and injury) of solatium, IIED, and loss of consortium did not occur in the United States.

        **(ii)**        **Section 28 U.S.C. § 1605(a)(5)(A) Bars All of Plaintiffs' Claims.**

The FSIA's "non-commercial tort exception" also fails to establish subject matter jurisdiction over Rwanda because all of the claims against Rwanda seek damages for Rwanda's discretionary law enforcement conduct, specifically the investigation, arrest, detention, prosecution and conviction of Paul Rusesabagina. Section 28 U.S.C. § 1605(a)(5)(A), provides that the FSIA does not confer jurisdiction for "a claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." *Id*. Analogizing to the Federal Tort Claims Act, which closely parallels the language in the FSIA, the United States Court of Appeals for the D.C. Circuit has held that "the [non-commercial tort] exception should be narrowly construed so as not to encompass the farthest reaches of common law. . . . Accordingly, 'acts or omissions of a fundamentally governmental nature' are discretionary functions for purposes of subsection A." *MacArthur Area Citizens Ass'n*, 809 F.2d at 921 (internal citations omitted). The decision "to allocate limited governmental resources to investigate a reported crime, like the decision to allocate limited resources to prosecute a crime, is a discretionary function." *Martinez v. United States*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008); *Hilsenrath*, 2007 WL 3119833, at *5 (Swiss government's issuance of warrant and freezing of plaintiffs' assets during criminal investigation fell within

discretionary function exception; Swiss officials "had discretion in deciding whether they would conduct the investigation and whether or not to effect the freeze"); *see, e.g., Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho 2016) (decisions on how to investigate, who to investigate, and how to present evidence are considered discretionary conduct).

Here, all of Plaintiffs' claims against Rwanda are based on discretionary acts of law enforcement personnel. Counts I and II are based on alleged misrepresentations made as part of an RIB conceived and executed law enforcement operation, conducted pursuant to the RIB's authorized investigative powers (Am. Compl. ¶¶ 31-32), to entice Rusesabagina, a wanted criminal suspect, to travel to Rwanda so that he could be arrested and prosecuted. Am. Compl. ¶¶ 133-136, 140-43, 260. Counts IX and X similarly allege participation in that operation by purported Rwandan agents in and outside of the United States acting on behalf of Rwandan law enforcement. Am. Compl. ¶¶ 228-229, 259-261, 265-266. Counts IV, V and VI are based on allegations that Rusesabagina was subjected to unlawful physical contact and bodily detention during his arrest and imprisonment both before and after his prosecution. Am. Compl. ¶¶ 12, 166, 239, 244, 249, 252, 270. Finally, Counts III, VII, and VIII allege that Plaintiffs have suffered emotional harm in the United States based on allegations that Rwanda's "subjected [Paul Rusesabagina] to an internationally-covered sham trial, convicted him of false charges, and sentenced him to life in prison for these false charges" "under the color of law" and as part of a government planned and orchestrated law enforcement operation. Am. Compl. ¶¶ 1, 7, 236, 252, 257. The Amended Complaint therefore admits that all of the conduct on which Plaintiffs' claims are based is discretionary law enforcement activity, which is not actionable under the FSIA's non-commercial tort exception.

(iii)     **Section 28 U.S.C. § 1605(a)(5)(B) Bars All of Plaintiffs' Claims.**

Finally, Plaintiffs' claims are barred because they arise out of conduct that is specifically excluded from the non-commercial tort exception under Section 1605(a)(5)(B), which precludes claims against a sovereign state that arise out of misrepresentation, deceit, abuse of process or malicious prosecution. 28 U.S.C. § 1605(a)(5)(B). When determining whether a claim is barred under that subsection, a court "look[s] beyond [the complaint's] characterization to the conduct on which the claim is based." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003). If the conduct on which a plaintiff's claim is based derives from allegations of misrepresentation, deceit, abuse of process or malicious prosecution, it is barred under 28 U.S.C. § 1605(a)(5)(B). *Khochinsky*, 1 F.4th at 11; *Blaxland*, 323 F.3d at 1203 (allegations of IIED barred where they derived from abuse of process).

Counts I and II are barred because they arise directly out of Rwanda's alleged deceit and misrepresentations. Count I alleges a claim for fraud, which necessarily requires Plaintiffs to plead, *inter alia*, that Rwanda made a misrepresentation. *Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F. Supp. 2d 131, 145 (D.D.C. 2010) (listing elements of fraud). The Amended Complaint alleges that Rwanda was part of a conspiracy to commit fraud and "lied" (Am. Compl. ¶ 1) to Paul Rusesabagina "by falsely offering him employment in Burundi, while actually intending to lure him from Texas to allow him to be kidnapped." Am. Compl. ¶¶ 1, 228. Both Counts I and II arise directly out of alleged deceit and misrepresentations by Rwanda and its agents and employees and are therefore expressly barred. *See Lambros v. Federative Republic of Brazil*, No. 19-cv-1929, 2021 WL 1820206, at *4 (D.D.C. May 6, 2021), *appeal filed*, No. 21-7121 (D.C. Cir. Oct. 28, 2021).

Moreover, all counts of the Amended Complaint are independently barred because they

fundamentally arise out of Rwanda's alleged abuse of process and malicious prosecution of Paul Rusesabagina. An "abuse of process" is defined as the "wrongful use of legal process" including misuse of legal procedures to detain someone, *Khochinsky*, 1 F.4th at 11, while "malicious prosecution" concerns a prosecution supported by malicious intent by the defendant and a lack of probable cause for the underlying suit. *Pitt v. District of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007).

Here, Plaintiffs allegations in support of their claims demonstrate that the predicate conduct for these torts is Rwanda's alleged abuse of its legal process and malicious prosecution of Paul Rusesabagina. Plaintiffs allege that: they have suffered emotional and physical harm and loss of consortium because Rwanda, through the RIB, unlawfully exercised its recognized investigative authority and investigated and arrested Paul Rusesabagina, subjected him to an "internationally-covered sham trial, convicted him of false charges, and sentenced him to life in prison for these false charges" (Am. Compl. ¶¶ 1, 7, 236, 252, 257); they live in fear that "their father has been tortured and that he will be murdered" (*Id*. ¶ 236) in Rwanda where he is "illegally" imprisoned (*Id*. ¶ 21) following his conviction (*Id*. ¶ 252); and all of Rwanda's conduct has occurred "under the color of law" (*Id*. ¶ 7, 278). These allegations demonstrate that all of Plaintiffs' claims derive from Rwanda's alleged abuse of the legal process to investigate, surveille, arrest, prosecute and imprison Paul Rusesabagina. As a result, Plaintiffs' claims are excluded from the non-commercial tort claims exception and do not confer subject matter jurisdiction on the Court. *Khochinsky*, 1 F.4th at 11 (affirming dismissal of claim for First Amendment retaliation where claim arose out of allegedly unlawful extradition); *Blaxland*, 323 F.3d at 1203 (false imprisonment, emotional distress and loss of consortium claims barred, where they arouse out of abuse of process); *Leffer v. Fed. Republic of Germany*, No. 19-cv-03529, 2021

WL 1773355, at *2 (D.D.C. Mar. 26, 2021) (dismissing claims where they amounted to claims for abuse of process and malicious prosecution); *Lambros*, 2021 WL 1820206, at *4 (dismissing claims of fraud, misrepresentation, false arrest and false imprisonment that arose out of allegedly unlawful extradition).[12]

### B.      The Amended Complaint Must be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction.

Under the FSIA, personal jurisdiction over a sovereign state depends on the presence of an applicable exception to sovereign immunity. 28 U.S.C. § 1330(b); *Weltover, Inc.,* 504 U.S. at 611. Here, as explained above, no exception to Rwanda's sovereign immunity applies in this case. Accordingly, there is no personal jurisdiction over Rwanda.

### C.      The Act of State Doctrine Bars Plaintiffs' Claims.

The Amended Complaint must also be dismissed because ruling on Plaintiff's claims would require this Court "to declare invalid the official act[s] of [Rwanda] performed within [its] own territory." *W. S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990). The claims are thus barred by the act of state doctrine, under which courts in the United States must "refrain from deciding a case when the outcome turns upon the legality or illegality … of official action by a foreign sovereign performed within its own territory." *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 55 (D.D.C. 2000) (quoting *Riggs Nat'l Corp. & Subsidiaries v. Comm'r*, 163 F.3d 1363, 1367 (D.C. Cir. 1999)); *World Wide Mins. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165 (D.C. Cir. 2002) (quoting *W. S. Kirkpatrick & Co*, 493 U.S. at 405, 409).

---

[12] Indeed, even the materials relied on by the Amended Complaint recognize that Plaintiffs are fundamentally complaining about abuses of process. According to the Amended Complaint, trial monitors from the American Bar Association issued reports took issue with the fairness of the trial processes employed to convict Paul Rusesabagina, but "took no position on the merits of the charges against Mr. Rusesabagina." Am. Compl. ¶¶ 205-206; https://cfj.org/wp-content/uploads/2022/04/Paul-Rusesabagina-_Fairness-Report-April-2022.pdf (last accessed June 14, 2022) ("This report is not concerned with whether Mr. Rusesabagina is innocent or guilty.").

Plaintiffs allege that Rwandan law enforcement officials, prosecutors, and courts illegally arrested, imprisoned, and mistreated Paul Rusesabagina. *See, e.g.*, Am. Compl. ¶¶ 21, 31-32, 140-143, 224, 252, 270, 305. These are all undeniably acts of state. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 706 (1976) (acts of state are "done . . . in the exercise of [g]overnmental authority"); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 445 n.3 (1964) (White, J., dissenting), superseded by statute (an act of state is "any governmental act in which the sovereign's interest qua sovereign is involved. The expression 'act of State' usually denotes an executive or administrative exercise of sovereign power by an independent State or potentate, or by its or his duly authorized agents or officers") (internal quotation marks omitted); *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012) (an act of state is "conduct that is by nature distinctly sovereign").

Specifically, the acts of law enforcement authorities within their country's own territory are acts of state on which a court in the United States will not sit in judgment. *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 32 (D.D.C. 2017) (criminal investigation is act of state), aff'd, 756 F. App'x 16 (D.C. Cir. 2019); *Herbage v. Meese*, 747 F. Supp. 60, 67 (D.D.C. 1990) *cf. Heath v. Alabama*, 474 U.S. 82, 93 (1985) ("Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code.").

The act of state doctrine is also a function of the "domestic separation of powers, reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *W.S. Kirkpatrick & Co.*, 493 U.S. at 404 (internal quotation marks omitted). "The doctrine directs United States courts to refrain from deciding a case when the outcome turns upon the legality or illegality ... of official action by a foreign sovereign performed within its own territory." *Riggs Nat'l Corp. &*

*Subsidiaries v. Comm'r*, 163 F.3d 1363, 1367 (D.C. Cir. 1999) (*citing W.S. Kirkpatrick*, 493 U.S. at 406).

In order to adjudicate Plaintiffs' claims, this Court would need to determine whether Rwanda's official actions that form the basis for the Amended Complaint—allegedly investigating, arresting, imprisoning, prosecuting, and convicting Plaintiff Paul Rusesabagina, all of which indisputably are official, law enforcement acts were invalid. Am. Compl. ¶¶ 1, 21, 140-143, 151, 224, 228, 252, 257. Such an adjudication is prohibited under the act of state doctrine, and accordingly, Plaintiff's Amended Complaint must be dismissed.

Moreover, the Amended Complaint's allegations demonstrate that the act of state doctrine applies here. Plaintiffs specifically allege that the State Department of the United States of America has concluded pursuant to 22 U.S.C. § 1741 that "the government of Rwanda has wrongfully detained U.S. Lawful Permanent Resident Paul Rusesabagina" and that one of the factors considered by the State Department in reaching this conclusion is whether "United States diplomatic engagement is likely necessary to secure the release of the detained individual." Am. Compl. ¶¶ 211-214. Importantly, while Section 1741 permits a finding that an individual is *unlawfully* detained, the State Department did not conclude that Rwanda's detention of Paul Rusesabagina is unlawful. 22 U.S.C. § 1741(b); Am. Compl. ¶¶ 2, 214. Further, although the Amended Complaint admits that the criteria for determining a violation of 22 U.S.C. § 1741 includes whether "the individual is being detained in inhumane conditions" (Am. Comp. ¶ 214), the Amended Complaint does not allege that the State Department has determined that Paul Rusesabagina was kidnapped, tortured or mistreated while in Rwandan custody. Nor does the Amended Complaint allege that the State Department determined that he is actually innocent of the crimes for which he was convicted. In fact, as has been publicly reported, the State

Department expressly stated that its determination was focused on the trial procedures used to convict Paul Rusesabagina rather than the merits of the charges against him and "does not imply any position on his innocence or guilt."[13]

The State Department's conclusion requires the Secretary of State to "transfer responsibility for such case from the Bureau of Consular Affairs of the Department of State to the Special Envoy for Hostage Affairs created pursuant to section 1741a." 22 U.S.C. § 1741(b). The Special Envoy has "the rank and status of ambassador" and is statutorily mandated to "lead diplomatic engagement" pursuant to Section 1741. 22 U.S.C. § 1741a(b)-(c). Thus, according to the Amended Complaint, Paul Rusesabagina is indisputably detained pursuant to the lawful acts of the sovereign government of Rwanda, and the Department of State of the United States of America has assigned the matter to a State Department official for diplomatic engagement. As a result, a decision from this Court addressing "the validity of foreign acts of state may hinder the conduct of foreign affairs" as it could impact ongoing State Department diplomatic efforts. *W.S. Kirkpatrick & Co.*, 493 U.S. at 404. Accordingly, this Court should dismiss the Amended Complaint based on the act of state doctrine.

### D. The Amended Complaint Must Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim.

Even if this Court concludes it may exercise subject matter jurisdiction over Rwanda, the Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Shive-Ayala v. Pacelle*, Civ. No. 21-704 (RJL), 2022 WL 782412, at *2 (D.D.C. Mar. 15, 2022) (citations omitted). The allegations must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[13] https://www.reuters.com/article/us-rwanda-politics-usa-idCAKCN2N51TS (last accessed June 14, 2022).

*Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* To state a cause of action, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Here, Plaintiffs' factual allegations are legally insufficient to state any claim for relief against Rwanda.

### 1.    The Plaintiffs Have Failed to State a Viable Fraud Claim.

"The essential elements of a common law fraud claim are: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) action taken in reliance upon the representation." *Doe v. Roman Cath. Diocese*, Civ. A. No. 20-1750, 2022 WL 203455, at *20 (D.D.C. Jan. 24, 2022) (citing *Frese v. City Segway Tours of Wash., D.C., LLC*, 249 F. Supp. 3d 230, 236 (D.D.C. 2017)). Federal Rule of Civil Procedure 9 imposes heightened pleading standards for fraud claims. Fed. R. Civ. P. 9(b). "To satisfy this [heightened] pleading standard in a fraud claim, a plaintiff must identify 'who precisely was involved in the fraudulent activity,' the 'time, place, and content of the false misrepresentations,' the 'fact misrepresented,' and 'what was retained or given up as a consequence of the fraud.'" *Frese*, 249 F. Supp. 3d at 236–37 (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256-59 (D.C. Cir. 2004)).

Plaintiffs allege that "[d]efendants made false statements during phone calls with Paul Rusesabagina describing non-existent speaking opportunities with false promises of pay and employment in Burundi." Am. Compl. ¶ 224. Despite alleging multiple statements by multiple defendants, Plaintiffs identify only one individual, Constantin Niyomwungere, who made one

alleged misrepresentation, which the Amended Complaint does not allege occurred entirely within the United States. *Id.* ¶¶ 133-136, 140-143. As discussed above, this sole representation on which Plaintiffs rely for their fraud claim is not actionable since there is no allegation that it occurred in the United States and it is barred by 28 U.S.C. § 1605(a)(5)(B); *Lambros*, 2021 WL 1820206, at *4. Plaintiffs' remaining conclusory allegations that other unspecified defendants made unspecified misrepresentations to Paul Rusesabagina at unspecified times fail to meet Federal Rules of Civil Procedure 9(b)'s heightened pleading requirements for fraud claims.

### 2.    The Plaintiffs Have Failed to State a Viable Civil Conspiracy Claim.

To state a claim for civil conspiracy, Plaintiffs must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) which overt act was done pursuant to and in furtherance of the common scheme." *Al-Tamimi v. Adelson*, 916 F.3d 1, 9 (D.C. Cir. 2019) (citation omitted). Thus, a pleading for civil conspiracy will be deficient without an allegation that there was "a wrongful act done in furtherance of the common design." *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *20 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021). "Plaintiff's bare assertions of the existence of an agreement among the conspirators cannot sustain a conspiracy claim." *Mensah-Yawson v. Raden*, 170 F. Supp. 3d 222, 230 (D.D.C. 2016) (citing *McCreary v. Heath*, No. Civ. A. 04–0623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005)). Here, the only agreement the Amended Complaint specifically alleges is the agreement to commit fraud between Niyomwungere and the RIB, which is not actionable. While the Amended Complaint alleges in conclusory fashion that other agents of the Government, including Michelle Martin and members of the Rwandan diaspora purportedly operating in the

United States participated in the conspiracy to entice Paul Rusesabagina to travel back to Rwanda, the Amended Complaint provides no specific allegations that those individuals even agreed to participate in the conspiracy or of how they participated with the RIB or Niyomwungere. Am. Compl. ¶¶ 85-90, 119-126, 229. As such, these threadbare allegations cannot support a claim for civil conspiracy.

Furthermore, Rwanda's sovereign exercise of its police powers is not "unlawful" or an otherwise "wrongful act" sufficient to support a civil conspiracy claim. *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 98 (D.D.C. 2015) (civil conspiracy claim failed where police officer's underlying conduct was not tortious). Accordingly, the Plaintiffs' civil conspiracy claim fails and must be dismissed as a matter of law.

### 3.   The Plaintiffs Have Failed to State a Viable Loss of Consortium Claim.

For loss of consortium, the District of Columbia applies the law of the state where the marriage is domiciled. *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 339 (D.D.C. 2010) (citing *Long v. Sears Roebuck & Co*., 877 F. Supp. 8, 13 (D.D.C. 1995). Under Texas law, a loss of consortium claim is derivative of the tortfeasor's liability to the physically injured spouse; thus, when a wife asserts a loss of consortium claim, she must establish that the tortfeasor was liable for the tort claim of her physically injured partner. *Barker v. Halliburton Co*., 645 F.3d 297, 299 (5th Cir. 2011). Here, plaintiff Taciana Mukangamije's claim for loss of consortium fails as a matter of law because, as addressed above in discussing the FSIA's tort exception, the various tort claims brought against Rwanda cannot proceed, as Rwanda is immune and no exception to the FSIA applies. Thus, without a successful tort claim, the loss of consortium claim likewise fails and must be dismissed.

31

### 4.   The Plaintiffs Have Failed to State a Viable False Imprisonment Claim.

To state a claim for false imprisonment, a plaintiff must plead facts to establish: "(1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *Cooper v. District of Columbia*, 548 F. Supp. 3d 170, 183 (D.D.C. 2021) (quoting *Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 911–12 (D.C. Cir. 2015)). Probable cause is an affirmative defense to a claim of false arrest or imprisonment. *Id.* (citing *Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009)); *see also Briscoe v. United States*, 268 F. Supp. 3d 1, 17 (D.D.C. 2017) ("Generally, a detention's lawfulness depends on whether it was supported by probable cause. . . . Similarly, a valid indictment 'conclusively determines the existence of probable cause.'") (citation omitted); *Harris*, 776 F.3d at 912 ("The existence of probable cause for arrest defeats claims for false arrest and imprisonment.").

Plaintiffs fail to allege facts in support of the unlawfulness of Plaintiff Paul Rusesabagina's arrest and detention. The Amended Complaint does not allege a lack of probable cause for his arrest or that he was imprisoned without process of law. To the contrary: Plaintiffs allege that he was arrested pursuant to a warrant, prosecuted, convicted of crimes under Rwandan law, and subsequently sentenced to a term of imprisonment. Am. Compl. ¶¶ 155, 252. As reflected in the Warrant and subsequent indictment, Plaintiff Paul Rusesabagina's association and support of terrorist organizations created probable cause to effect an arrest. Exh. B at 4-10. Accordingly, Plaintiff Paul Rusesabagina has failed to state a claim for false imprisonment.

### 5.   The Plaintiffs Have Failed to State a Viable Assault or Battery Claim.

"'An assault is an intentional act and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim,' while '[a] battery is an intentional act that causes a

harmful or offensive bodily contact.'" *Zhi Chen v. District of Columbia*, 808 F. Supp. 2d 252, 258 (D.D.C. 2011) (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007)). In suits under the FSIA, district courts look to Restatements, among other sources, to find and apply what are generally considered to be the well-established standards of state common law. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 73 (D.D.C. 2010). "Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness." Restatement (Second) of Torts § 15 (1965).

As addressed above, foreign governments are immunized from lawsuits brought against them in the United States unless an exception under the FSIA applies. 28 U.S.C. § 1604; *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017). Here, as any physical harm or apprehension cannot be said to have taken place within the United States, Plaintiffs' claims for assault and battery necessarily fail as a matter of law and must be dismissed.

### 6. The Plaintiffs Have Failed to State a Viable Intentional Infliction of Emotional Distress or Solatium Claim.

To adequately plead a claim for IIED, Plaintiff must allege sufficient facts to show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016) (citation omitted). Solatium is "'the mental anguish, bereavement, and grief' experienced by those with a close relationship to the victim." *Borochov v. Islamic Republic. of Iran*, No. 19-cv-02855, 2022 WL 656168, at *11 (D.D.C. Mar. 4, 2022), *appeal filed*, No. 22-7058 (D.C. Cir. Apr. 29, 2022) (quoting *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018)). "Under the FSIA, a solatium claim is indistinguishable from an [IIED] claim." *Id.* (internal quotation marks omitted) *Id.* Courts apply the Restatement (Second) of Torts to these claims. *Id.*

(citing *Abedini v. Gov'v of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 133 (D.D.C. 2019)). The Restatement permits recovery by (1) members of the victim's immediate family (2) who were present at the time of the conduct. Restatement (Second) of Torts § 46(2); *Borochov*, 2022 WL 656168, at *11; *Est. of Hirshfeld*, 330 F. Supp. 3d at 141. In other words, a family member can only recover for IIED or solatium if they were "'present' when the extreme or outrageous conduct took place." *Pitt*, 491 F.3d at 507; *see Owens v. Republic of Sudan*, 924 F.3d 1256, 1259 (D.C. Cir. 2019). In *Pitt*, the Court of Appeals for the District of Columbia Circuit explained that, "[i]n common parlance, the word 'present' connotes physical proximity… [i.e.] 'being in one place and not elsewhere; being within reach, sight or call or within contemplated limits; being in view or at hand'"). *Pitt*, 491 F.3d at 507.

Here, Plaintiffs have not alleged that they were present with Paul Rusesabagina when Rwanda's alleged conduct took place. As such, Plaintiffs' claims for Solatium and IIED fail as a matter of law. Furthermore, although Plaintiffs also allege that they have been the target of "a barrage of taunts and insults via Twitter" by an alleged Rwandan Government spokesperson, Yolande Makolo, the Amended Complaint does not allege that she was located in the United States at the time she made her alleged comments or even explain the substance of those comments. Am. Compl. ¶¶ 221-222. Liability for IIED "'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;' it is imposed only when the conduct goes 'beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Bozgoz v. James*, Civ. A. No. 19-0239, 2020 WL 4732085, at *15 (D.D.C. Aug. 14, 2020) (quoting Restatement (Second) of Torts § 46, cmt. d (Am. Law Inst. 1975)). As such, these conclusory allegations of "taunts and insults" cannot amount to the "extreme and outrageous" conduct required to support a claim for IIED. And,

while the Amended Complaint alleges that Ms. Makolo's comments "encourage" others to threaten Plaintiffs online (Am. Compl. ¶¶ 221-222), the Amended Complaint simply does not allege that any employee, agent or representative of Rwanda has threatened Plaintiffs with any harm or actually encouraged any such threats. Accordingly, the Plaintiffs' claim for IIED based on allegations of online harassment is insufficient as a matter of law.

### 7. The Plaintiffs Have Failed to State a Claim for Intrusion Upon Seclusion or Violations of the Wiretap Act.

To state a claim for invasion of privacy by intrusion on seclusion, Plaintiff must allege facts sufficient to show the following two elements: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *see Kennedy v. Berkel & Co. Contractors*, No. 17-CV-1248 (DLF), 2020 WL 4903896, at *8 (D.D.C. Aug. 20, 2020) (listing elements). To plead a violation of the Wiretap Act, Plaintiffs must allege a defendant's intentional use or disclosure, or efforts to use or disclose, the contents of any wire, oral, or electronic communication, that defendant knows or has reason to know was obtained through the interception of a wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(c).

In support of their claims for intrusion upon seclusion and violations of the Wiretap Act, Plaintiffs allege that Rwanda intentionally "tracked and stalked Paul Rusesabagina and his family members while they resided in the United States through agents such as Michelle Martin or members of the Rwandan diaspora, coordinated through the Rwandan Embassy in Washington, D.C.," and "intentionally, and without authorization disclosed and otherwise used the contents of Plaintiff Paul Rusesabagina's and Carine Kanimba's wire, oral, and electronic

35

communications despite knowing or having reason to know the communications were intercepted in violation of 18 U.S.C. § 2511." Am. Compl. ¶¶ 261, 266.

These allegations fail to state a claim for violations of the Wiretap Act because the Amended Complaint admits that any alleged interception of communications or "phone-hacking" of Paul Rusesabagina's and Carine Kanimba's phone began in Belgium, not the United States and any intercepted communications were allegedly shared with Rwandan law enforcement in Rwanda. Am. Compl. ¶¶ 95, 103-104, 159, 165. As such, Plaintiffs' claim for Wiretap Act violations fails as a matter of law under the FSIA because those violations did not occur entirely within the United States. *Doe,* 851 F.3d at 10; *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 427. For these same reasons, plaintiffs' intrusion upon seclusion claim based on "phone-hacking" or electronic eavesdropping also fail.

Furthermore, any Wiretap Act claim based on interception of Paul Rusesabagina's electronic communications is barred by the statute of limitations applicable to that claim.[14] The Wiretap Act requires that a cause of action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Here, the Amended Complaint alleges that Paul Rusesabagina's phone was infected with spyware in 2018 and that "[i]n 2018 and 2019, Mr. Rusesabagina often told his daughter Anaïse Umubyeyi Kanimba that he thought the Rwandan authorities were listening to his calls." Am. Compl. ¶¶ 103-104. Because the Amended Complaint admits that Paul Rusesabagina was aware in 2018 that Rwanda was allegedly intercepting his phone calls, any

---

[14] Although limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense appear on the face of the complaint. *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C. 2006).

statute of limitations for a Wiretap Act violation based on interception of Paul Rusesabagina's communications ran in 2020.

Finally, Plaintiffs base their claim of intrusion upon seclusion on the allegation that Rwanda has "tracked and stalked Paul Rusesabagina and his family members while they resided in the United States through agents such as Michelle Martin or members of the Rwandan diaspora." Am. Compl. ¶ 261. However, the Amended Complaint fails to allege that Michelle Martin or "members of the Rwandan diaspora" have engaged in *any* conduct that invades Plaintiffs' privacy or seclusion. The Amended Complaint alleges that Martin worked for the Government of Rwanda as a researcher, was introduced to Paul Rusesabagina's organization by a mutual acquaintance, met with Rwandan Government officials, and testified at Paul Rusesabagina's trial. Am. Compl. ¶¶ 67, 71, 79-85. The Amended Complaint also alleges that members of the Rwandan diaspora, including Moses (Moise) Rudasunikwa, attended a speech by Paul Rusesabagina at public event in 2020, wrote letters describing their "opposition to Mr. Rusesabagina's" public appearance, and attended online lectures that were also attended by certain Plaintiffs. Am. Compl. ¶¶ 119-126. None of this conduct amounts to a tortious intrusion because Plaintiffs do not have a reasonable expectation of solitude or privacy with respect to either the information allegedly gathered by Ms. Martin or the public events alleged in the Amended Complaint. *Wolf v. Regardie*, 553 A.2d 1213, 1218 (D.C. 1989); *Wolfson v. Lewis*, 924 F. Supp. 1413, 1419–20 (E.D. Pa. 1996) (citing Restatement (Second) of Torts § 652B, cmt. c ("This tort generally does not apply to matters which occur in a public place or a place otherwise open to the public eye."). Thus, while the Amended Complaint alleges that Ms. Martin and others have been spying on Mr. Rusesabagina in the United States in coordination with the Rwandan embassy in Washington, D.C. (Am. Compl. ¶¶ 85-86, 126), these general allegations

are nothing more than threadbare conclusions unsupported by any specific allegations of tortious conduct and cannot support a claim for intrusion upon seclusion, or any other claim for relief. *See Shive-Ayala*, 2022 WL 782412, at *2.

## CONCLUSION

For the foregoing reasons, the Republic of Rwanda respectfully requests that the Court enter an order granting this Motion to Dismiss the Amended Complaint with prejudice for lack of jurisdiction and for failure to state any viable claim for relief.


Dated: June 14, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael S. Cryan
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendant the Republic of Rwanda*
