UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　-against-<br><br>THE REPUBLIC OF RWANDA, *et al.*,<br><br>　　　　　Defendants. | Civil Action No.: 22-00469 (RJL)<br><br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**MOTION OF HIS EXCELLENCY PRESIDENT PAUL KAGAME, PRESIDENT OF
THE REPUBLIC OF RWANDA, TO DISMISS THE AMENDED COMPLAINT**

His Excellency President Paul Kagame ("President Kagame"), President of the Republic of Rwanda ("Rwanda"), by and through his undersigned counsel, hereby moves this Court, before the Hon. Richard J. Leon, United States District Judge, to dismiss Plaintiffs' Amended Complaint with prejudice as to President Kagame.

President Kagame is the incumbent President and head of state of Rwanda, a foreign sovereign. President Kagame's status as President of Rwanda has been recognized by both the Executive and Judicial Branches of the United States, and this Court is requested to take judicial notice pursuant to Federal Rule of Evidence 201 of the fact that President Kagame is the head of state of Rwanda. As such, President Kagame is entitled to an immediate order of dismissal under Federal Rule of Civil Procedure 12(b)(6) on the grounds that President Kagame is immune from the jurisdiction of this Court under well-settled principles of head-of-state and diplomatic immunity.

Further, the summons was never properly served on President Kagame. For this additional reason, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) is warranted.

1

Additionally, President Kagame is not subject to either the general or specific jurisdiction of this Court. For this reason as well, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) is required.

Finally, Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and suffer from various other fundamental infirmities which require the dismissal of those claims with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), as set forth in the Motion to Dismiss [D.E. 18] filed by the Republic of Rwanda, in which Motion President Kagame hereby joins.

A memorandum in support of the instant motion and a proposed order are filed herewith.

Dated: July 22, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants*
*The Republic of Rwanda, &*
*His Excellency President Paul*
*Kagame, President of the Republic of*
*Rwanda*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*, | |
| Plaintiffs, | Civil Action No.: 22-00469 (RJL) |
| -against- | |
| THE REPUBLIC OF RWANDA, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**<u>HIS EXCELLENCY PRESIDENT PAUL KAGAME, PRESIDENT OF THE REPUBLIC OF RWANDA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

    A.    Factual Background Relevant to this Motion: President Kagame is the
Head of State of Rwanda. ..................................................................... 1

    B.    Procedural Background Relevant to this Motion.................................... 3

LEGAL STANDARDS ...................................................................................................... 4

    A.    Legal Standard Pursuant to Rule 12(b)(1). .......................................... 4

    B.    Legal Standard Pursuant to Rule 12(b)(2). .......................................... 5

    C.    Legal Standard Pursuant to Rule 12(b)(6). .......................................... 6

ARGUMENT ..................................................................................................................... 6

    A.    The Amended Complaint Must Be Dismissed as to President Kagame
Under the Doctrine of Head-of-State Immunity. ................................... 7

        1.    The Suggestion of Immunity Filed by the United States Should Be
Respected and an Order of Dismissal Entered.......................... 9

        2.    An Order of Dismissal Should Be Entered Because President
Kagame Is the Incumbent President of the Republic of Rwanda. ........... 10

    B.    The Amended Complaint Must Be Dismissed as to President Kagame Due
to the Lack of Personal Jurisdiction over President Kagame. ............................ 12

        1.    There Is No Basis For General Personal Jurisdiction Over
President Kagame. ................................................................... 13

        2.    There Is No Basis For Specific Personal Jurisdiction Over
President Kagame. ................................................................... 14

    C.    The Amended Complaint is Subject to Dismissal Due to the Lack of
Service of Process on President Kagame............................................ 18

    D.    Joinder in Pending Motion to Dismiss filed by the Republic of Rwanda............ 20

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A, B, C, D, E, F v. Zemin*,
  282 F.Supp.2d 875 (N.D. Ill. 2003), *aff'd sub nom. Ye v. Zemin*, 383 F.3d 620
  (7th Cir. 2004)................................................................................................14, 16

*Abiola v. Abubakar*,
  267 F.Supp.2d 907 (N.D. Ill. 2003), *aff'd*, 408 F.23d 877 (7th Cir. 2005) ........................8, 10

*Alicog v. Kingdom of Saudi Arabia*,
  860 F. Supp. 379 (S.D. Tex. 1994), *aff'd*, 79 F.3d 1145 (5th Cir. 1996) ............................7, 8

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987)...............................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................6

*Belhas v. Ya'alon*,
  515 F.3d 1279 (D.C. Cir. 2008) .............................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................6

*Blue v. District of Columbia*,
  811 F.3d 14 (D.C. Cir. 2015) .....................................................................................6

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002)....................................................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).......................................................................................14, 15, 16

*Calder v. Jones*,
  465 U.S. 783 (1984)................................................................................................13

*Cockrum v. Donald J. Trump for President, Inc.*,
  319 F.Supp.3d 158 (D.D.C. 2018) .............................................................................18

*Compania Espanola de Navegacion Maritima, S.A. v. The Navemar*,
  303 U.S. 68 (1938)..................................................................................................10

*Consol. Dev. Corp. v. Sherritt, Inc.*,
216 F.3d 1286 (11th Cir. 2000) ...................................................... 13-14

*Crane v. N.Y. Zoological Soc'y*,
894 F.2d 454 (D.C. Cir. 1990) ..............................................................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...........................................................................12

*\*Doe 1 v. Buratai*,
318 F.Supp.3d 218 (D.D.C. 2018), *aff'd*, 792 Fed. App'x 6 (D.C. Cir. 2019)...........4, 5, 6, 13

*Doe I v. Israel*,
400 F.Supp.2d 86 (D.D.C. 2005) .....................................................9, 10

*Duarte v. Nolan*,
190 F.Supp.3d 8 (D.D.C. 2016) ..................................................... 12-13

*Eades v. Clark Distrib. Co.*,
70 F.3d 441 (6th Cir. 1995) ...............................................................19

*First Am. Corp. v. Al-Nahyan*,
948 F.Supp. 1107 (D.D.C. 1996) .....................................................9, 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S.Ct. 1017 (2021).......................................................................15

*Freedom Watch, Inc. v. OPEC*,
766 F.3d 74 (D.C. Cir. 2014) .........................................................19, 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).....................................................................12, 15

*\*Habyarimana v. Kagame*,
821 F.Supp.2d 1244 (W.D. Okla. 2011), *aff'd*, 696 F.3d 1029 (10th Cir. 2012)
(Exh. 3), *cert. denied*, 568 U.S. 1232 (2013)............................2, 9, 10, 11

*\*Habyarimana v. Kagame*,
No. 4:12–cv–00191, 2013 WL 12284605 (S.D. Iowa Feb. 6, 2013), *appeal
dismissed*, No. 13-1517 (8th Cir. May 24, 2013)............................2, 10, 11

*Hashem v. Shabi*,
Civ. A. No. 17-1645, 2018 WL 3382913 (D.D.C. Apr. 26, 2018) .........................19

*United States ex rel. Head v. Kane Co.*,
798 F.Supp.2d 186 (D.D.C. 2011) ..............................................................6

*Heaney v. Gov't of Spain*,
    445 F.2d 501 (2d Cir. 1971).................................................................................................10

*Helicopteros Nacionales de Colombia, N.A. v. Hall*,
    466 U.S. 408 (1984).................................................................................................13, 15

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992)...............................................................................................5

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).................................................................................................13, 16

*Jeong Seon Han v. Lynch*,
    223 F.Supp.3d 95 (D.D.C. 2016)...........................................................................................4

*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005).............................................................................................5

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ...............................................................................................14

*Jungquist v. Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997)............................................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).............................................................................................................4

*Lafontant v. Aristide*,
    844 F.Supp. 128 (E.D.N.Y. 1994) ...............................................................................7, 9, 10

*Leutwvler v. Off. of Her Majesty Queen Rania Al–Abdullah*,
    184 F.Supp.2d 277 (S.D.N.Y. 2001)............................................................................9, 10

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ...........................................................................................18

*Mann v. Castiel*,
    681 F.3d 368 (D.C. Cir. 2012)............................................................................................19

*Manoharan v. Rajapaksa*,
    845 F.Supp.2d 260 (D.D.C. 2012), *aff'd*, 711 F.3d 178 (D.C. Cir. 2013).........................9, 10

*Matar v. Dichter*,
    500 F.Supp.2d 284 (S.D.N.Y. 2007), *aff'd*, 563 F.3d 9 (2d Cir. 2009) ...................................7

*Miley v. Hard Rock Hotel & Casino Punta Cana*,
    537 F.Supp.3d 1 (D.D.C. 2021) ...............................................................................15, 17, 18

iv

*Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*,
  461 F.Supp.2d 24 (D.D.C. 2006) ............................................................6

*Nibkin v. Islamic Republic of Iran*,
  471 F.Supp.2d 53 (D.D.C. 2007) ......................................................14, 16

*North v. Smarsh, Inc.*,
  265 F.Supp.3d 71 (D.D.C. 2017), *aff'd*, No. 17-7120, 2017 WL 6553385
  (D.C. Cir. Dec. 6, 2017) ...............................................................17, 18

*Republic of Mexico v. Hoffman*,
  324 U.S. 30 (1945) ........................................................................8

*Ex parte Republic of Peru*,
  318 U.S. 578 (1943) ....................................................................8, 10

*Rishikof v. Mortada*,
  70 F.Supp.3d 8 (D.D.C. 2014) ...............................................................4

*Saltany v. Reagan*,
  702 F.Supp. 319 (D.D.C. 1988), *aff'd in part, rev'd in part on other grounds*,
  886 F.2d 438 (D.C. Cir. 1989) ...........................................................9, 10

*\*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ............................................................... *passim*

*Schooner Exchange v. McFaddon*,
  11 U.S. (7 Cranch) 116 (1812) ..............................................................7

*Second Amend. Found. v. U.S. Conf. of Mayors*,
  274 F.3d 521 (D.C. Cir. 2001) ...........................................................5, 17

*Shibeshi v. United States*,
  932 F.Supp.2d 1 (D.D.C. 2013) ..............................................................5

*\*Spacil v. Crowe*,
  489 F.2d 614 (5th Cir. 1974) ...............................................................8

*Tachiona v. Mugabe*,
  169 F.Supp.2d 259 (S.D.N.Y. 2001), *aff'd in part, rev'd in part*, 386 F.3d 205
  (2d Cir. 2004) .......................................................................7, 9, 10

*Triple Up Ltd. v. Youku Tudou Inc.*,
  235 F.Supp.3d 15 (D.D.C. 2017), *aff'd*, No. 17-7033, 2018 WL 4440459
  (D.C. Cir. July 17, 2018) ................................................................5, 6

*Vasquez v. Whole Foods Mkt., Inc.,*
  302 F.Supp.3d 36 (D.D.C. 2018) ........................................................................... 12

*Walden v. Fiore,*
  571 U.S. 277 (2014) ............................................................................................... 13

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) .......................................................................................... 16-17

*Ye v. Zemin,*
  383 F.3d 620 (7th Cir. 2004) ....................................................................... 9, 10, 16

## Rules and Statutes

Fed. R. Civ. P. 4(f)(2)(C) ............................................................................................ 19

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 5, 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 7

Fed. R. Civ. P. 12(h)(3) ................................................................................................ 5

U.S. Const. art. III, § 2 ................................................................................................. 5

## Other Authorities

*The [CIA] World Factbook – Rwanda,* Executive Branch,
  https://www.cia.gov/the-world-factbook/countries/rwanda/summaries (last
  visited July 2, 2022) ............................................................................................ 1, 11

4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1083 (3d ed.
  2002 & Supp. 2012) ................................................................................................ 19

His Excellency President Paul Kagame ("President Kagame"), President of the Republic of Rwanda ("Rwanda"), by and through his undersigned counsel, submits this Memorandum of Points and Authorities in Support of his Motion to Dismiss Plaintiff's Amended Complaint (D.E. 17, "Am. Compl.") pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby states as follows:

## INTRODUCTION

Plaintiffs Paul Rusesabagina, Carine Izere Kanimba, Roger Rusesabagina, Taciana Mukangamije, Anaïse Umubyeyi Kanimba, Aimee-Lys Rusesabagina, Aimee-Diane Rusesabagina, and Trésor Rusesabagina (collectively, "Plaintiffs") commenced the present lawsuit against President Kagame, Rwanda, Johnston Busingye, Joseph Nzabamwita, and Jeannot Ruhunga.

### A.   Factual Background Relevant to this Motion: President Kagame is the Head of State of Rwanda.

It is undisputed – and beyond dispute – that President Kagame is the head of state of Rwanda. Plaintiffs in the Amended Complaint admitted that President Kagame is "the President of Rwanda" (Am. Compl. ¶ 12).

An authoritative source, *The [CIA] World Factbook – Rwanda*, provides in relevant part that the current "chief of state" of Rwanda is Paul Kagame, and that he has held that position since April 22, 2000. Exh. 1, *The [CIA] World Factbook – Rwanda*, § Executive Branch, https://www.cia.gov/the-world-factbook/countries/rwanda/summaries, (last visited July 2, 2022) ("World Factbook").

The United States District Court for the Western District of Oklahoma (the "Oklahoma Court") held that President Kagame is "the current president and head of state of the Republic of

1

Rwanda." Exh. 2, *Habyarimana v. Kagame*, 821 F.Supp.2d 1244, 1248 (W.D. Okla. 2011) ("*Kagame I*") ("The Court takes notice that the defendant [President Kagame] is recognized to be the current president and head of state of the Republic of Rwanda."), *aff'd*, 696 F.3d 1029 (10th Cir. 2012) ("*Kagame II*") (Exh. 3), *cert. denied*, 568 U.S. 1232 (2013) (Exh. 4).

The United States Court of Appeals for the Tenth Circuit expressly referred to President Kagame as "current Rwandan President Paul Kagame" and "President Kagame" throughout its opinion affirming the Oklahoma Court's decision in *Kagame I*. Exh. 3, *Kagame II*,  696 F.3d at 1030 ("current Rwandan President Paul Kagame"), 1031 ("President Kagame").

The United States District Court for the Southern District of Iowa held that President Kagame is "the current President of the Republic of Rwanda." Exh. 5, *Habyarimana v. Kagame*, No. 4:12–cv–00191, 2013 WL 12284605, at *3 (S.D. Iowa Feb. 6, 2013) ("*Kagame III*"), *appeal dismissed*, No. 13-1517 (8th Cir. May 24, 2013) (Exh. 6).

The United States filed a Suggestion of Immunity Submitted by the United States of America dated August 29, 2011 ("Suggestion of Immunity") (Exh. 7) in *Kagame I*. In its Suggestion of Immunity, the United States informed the Oklahoma Court of the United States Government's interest in that lawsuit (*Kagame I*) against "His Excellency Paul Kagame, the President and sitting head of state of the Republic of Rwanda." Exh. 7, at 1. The United States therefore "suggest[ed] to the Court the immunity of President Kagame from th[at] suit." *Id.*

(For a wider explanation of the factual setting of this pending lawsuit, see Rwanda's Memorandum in Support of its Motion to Dismiss Amended Complaint at 1-10 [D.E. 18].)

**B.**      **Procedural Background Relevant to this Motion.**

On February 22, 2022, Plaintiffs filed the Original Complaint.

On May 9, 2022, Rwanda filed its Motion to Dismiss the Original Complaint [D.E. 13].

On May 31, 2022, Plaintiffs filed the Amended Complaint [D.E. 17]. In Count I, Plaintiff Paul Rusesabagina alleged a purported claim for fraud. *Id.* ¶¶ 223-226. In Count II, Plaintiffs alleged a purported claim for civil conspiracy. *Id.* ¶¶ 227-233. In Count III, Plaintiffs Carine Izere Kanimba, Roger Rusesabagina, Taciana Mukangamije, Anaïse Umubyeyi Kanimba, Aimee-Lys Rusesabagina, Aimee-Diane Rusesabagina, and Trésor Rusesabagina alleged a purported claim for solatium. *Id.* ¶¶ 234-237. In Count IV, Plaintiff Paul Rusesabagina alleged a purported claim for false imprisonment. *Id.* ¶¶ 238-240. In Count V, Plaintiff Paul Rusesabagina alleged a purported claim for assault. *Id.* ¶¶ 241-245. In Count VI, Plaintiff Paul Rusesabagina alleged a purported claim for battery. *Id.* ¶¶ 246-250. In Count VII, Plaintiffs alleged a purported claim for intentional infliction of emotional distress. *Id.* ¶¶ 251-254. In Count VIII, Plaintiffs Paul Rusesabagina and Taciana Mukangamije alleged a purported claim for loss of consortium. *Id.* ¶¶ 255-258. In Count IX, Plaintiffs alleged a purported claim for intrusion upon seclusion. *Id.* ¶¶ 259-263. In Count X, Plaintiffs alleged purported interception of certain wire, oral, and electronic communications allegedly in violation of 18 U.S.C. § 2511. *Id.* ¶¶ 264-267. In Counts XI, XII and XIII, Plaintiffs alleged purported violations of international law allegedly cognizable under 28 U.S.C. § 1350. *Id.* ¶¶ 268-309.

On June 14, 2022, Rwanda filed a Motion to Dismiss the Amended Complaint [D.E. 18].

On June 29, 2022, Plaintiffs filed a request [D.E. 23] pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii) for the Clerk of this Court to effect service of the summons and complaint via FedEx upon President Kagame as well as Johnston Busingye, Joseph Nzabamwita,

and Jeannot Ruhunga. On June 29, 2022, the Certificate of Clerk [D.E. 24] was filed regarding the mailing, together with a copy of the waybill for each of President Kagame, Johnston Busingye, Joseph Nzabamwita, and Jeannot Ruhunga. This timely Motion to Dismiss by President Kagame followed.

## LEGAL STANDARDS

This Motion is filed under Rule 12(b)(1), (b)(2) and (b)(6) of the Federal Rules of Civil Procedure. The applicable legal standard differs depending on the specific subsection of Rule 12(b). Fed. R. Civ. P. 12(b)(1), (b)(2) & (b)(6).

### A.    Legal Standard Pursuant to Rule 12(b)(1).

Under Rule 12(b)(1), a party may move to dismiss an action when the court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and foreign-official immunity is a question of subject-matter jurisdiction, *see Doe 1 v. Buratai*, 318 F.Supp.3d 218, 226 (D.D.C. 2018), *aff'd*, 792 Fed. App'x 6 (D.C. Cir. 2019); *Rishikof v. Mortada*, 70 F.Supp.3d 8, 11, 16 n.4 (D.D.C. 2014); *see also Belhas v. Ya'alon*, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (evaluating foreign sovereign immunity as a question of subject-matter jurisdiction). Because it is "presumed that a cause lies outside [the] limited jurisdiction" of the federal courts, the party invoking federal jurisdiction bears the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Buratai*, 318 F.Supp.3d at 226.

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F.Supp.3d 95, 103 (D.D.C. 2016) (internal quotation marks and citation omitted); *see also Buratai*, 318 F.Supp.3d at 226. Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context, *id.*,

and particularly because immunity "provides protection from suit and not merely a defense to liability, ... the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case." *Jungquist v. Al Nahyan*, 115 F.3d 1020, 1027–28 (D.C. Cir. 1997) (internal quotation marks and alteration omitted); *Buratai*, 318 F.Supp.3d at 226. "[U]nlike when evaluating a Rule 12(b)(6) motion, a court may consider materials outside the pleadings to evaluate whether it has jurisdiction, such as the complaint supplemented by undisputed facts in the record." *Buratai*, 318 F.Supp.3d at 226 (*citing Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Belhas*, 515 F.3d at 1281). Without subject-matter jurisdiction, the court must dismiss the action. U.S. Const. art. III, § 2; Fed. R. Civ. P. 12(b)(1), 12(h)(3); *Doe 1 v. Buratai*, 318 F.Supp.3d at 226.

### B.    Legal Standard Pursuant to Rule 12(b)(2).

Under Rule 12(b)(2), a party may move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F.Supp.3d 15, 20–21 (D.D.C. 2017), *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)); *see also Buratai*, 318 F.Supp.3d at 225. "To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather must allege specific facts connecting the defendant with the forum." *Id.; see also Shibeshi v. United States*, 932 F.Supp.2d 1, 2–3 (D.D.C. 2013) (internal quotation marks omitted) (citing *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)); *see also Buratai*, 318 F.Supp.3d at 225–26. "When ruling on a 12(b)(2) motion, the court 'may receive and weigh affidavits and any

other relevant matter to assist it in determining the jurisdictional facts.'" *Buratai*, 318 F.Supp.2d at 226 (quoting *Triple Up Ltd.*, 235 F.Supp.3d at 20). "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit." *Id.* (citation omitted).

### C.   Legal Standard Pursuant to Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009) (alterations in original).  The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The court may consider "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F.Supp.2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record." *United States ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 193 (D.D.C. 2011).

### <u>ARGUMENT</u>

As to President Kagame, the Amended Complaint is subject to immediate dismissal for four separate and independent reasons. First, President Kagame is immune from the jurisdiction of this Court under well-settled principles of head-of-state immunity. Second, President Kagame

is not subject to the personal jurisdiction of this Court. Third, the Amended Complaint is subject to dismissal as it was never properly served on President Kagame. Finally, this action is subject to dismissal for the reasons explained in Rwanda's Motion to Dismiss [D.E. 18] concerning the Foreign Sovereign Immunities Act and the various fundamental infirmities which require the dismissal of Plaintiffs' claims.

    **A.**    **The Amended Complaint Must Be Dismissed as to President Kagame Under the Doctrine of Head-of-State Immunity.**

Head-of-state immunity mandates the immediate dismissal of the Amended Complaint as to President Kagame. *See* Fed. R. Civ. P. 12(b)(1) & (b)(6). The doctrine of head-of-state immunity was enshrined by the Supreme Court of the United States in 1812 in an opinion by Chief Justice John Marshall in *Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 131 (1812), and reaffirmed by the Supreme Court in June 2010. *Samantar v. Yousuf*, 560 U.S. 305, 312 n.6 (2010) (holding that the Foreign Sovereign Immunities Act of 1976 ("FSIA"), codified at 28 U.S.C. §§ 1330, 1332, 1391, 1441, and 1602–1611, which governs whether a foreign state is entitled to sovereign immunity, does not govern the determination of an individual official's immunity from suit; noting that "officials qualifying as the 'head of state' could claim immunity on that basis, see *Schooner Exchange*, [11 U.S.] 7 Cranch [at] 137 … (1812) (describing 'the exemption of the person of the sovereign' from 'a jurisdiction incompatible with his dignity'"); *Matar v. Dichter*, 500 F.Supp.2d 284, 290 (S.D.N.Y. 2007) ("'A head-of-state recognized by the United States Government is absolutely immune from personal jurisdiction in United States courts,' regardless of whether the claims arise from official or private acts."), *aff'd*, 563 F.3d 9 (2d Cir. 2009) (quoting *Lafontant v. Aristide*, 844 F.Supp. 128, 131–32 (E.D.N.Y. 1994)); *Tachiona v. Mugabe*, 169 F.Supp.2d 259, 267 (S.D.N.Y. 2001), *aff'd in part, rev'd in part*, 386 F.3d 205, 215, 222 (2d Cir. 2004); *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 382

(S.D. Tex. 1994), *aff'd*, 79 F.3d 1145 (5th Cir. 1996) ("Under long-standing international law, the head of a state as recognized by the Executive Branch of the United States government is immune from personal jurisdiction in United States courts unless that immunity has been waived by our statute or by the foreign government"); Exh. 7, Suggestion of Immunity ¶ 5.

Head-of-state immunity can be conferred in two ways. *Samantar*, 560 U.S. at 311. First, the Executive Branch may make a determination to grant immunity to a foreign official by filing a suggestion of immunity with the court. *See Spacil v. Crowe*, 489 F.2d 614, 615 n.2 (5th Cir. 1974) (describing the procedures by which the State Department makes this determination). "[O]nce the State Department has determined that immunity is warranted, and has submitted that [decision] to the court through a suggestion, the matter is for diplomatic rather than judicial resolution. The suit must be dismissed." *Spacil*, 489 F.2d at 617; *see also Ex parte Republic of Peru*, 318 U.S. 578, 588 (1943) (after a suggestion of immunity is filed, it is the "court's duty" to surrender jurisdiction); Exh. 7, Suggestion of Immunity ¶ 5.

Second, in the absence of a suggestion of immunity by the Executive Branch, courts may "decide for itself whether all the requisites for such immunity existed." *Samantar*, 560 U.S. at 311 (quoting *Ex parte Republic of Peru*, 318 U.S. at 587); *see also Republic of Mexico v. Hoffman*, 324 U.S. 30, 34–35 (1945). As set forth above, the "requisites of immunity" are whether the Executive Branch recognizes the defendant official as the head of a foreign government and whether immunity has been waived by statute or by the foreign government. *Alicog*, 860 F. Supp. at 382. Therefore, courts assessing a claim of head-of-state immunity in the absence of a suggestion of immunity will independently evaluate these questions. *See, e.g., Abiola v. Abubakar*, 267 F.Supp.2d 907, 915–16 (N.D. Ill. 2003), *aff'd*, 408 F.23d 877 (7th Cir. 2005) (determining that former Nigerian head of state entitled to head-of-state immunity).

President Kagame is entitled to recognition of his status as a foreign head of state and concomitant immunity from suit under both methods articulated by the Supreme Court in *Samantar*, 560 U.S. at 311.

> **1.    The Suggestion of Immunity Filed by the United States Should Be Respected and an Order of Dismissal Entered.**

The United States has already filed a Suggestion of Immunity recognizing President Kagame as a foreign head of state entitled to immunity in *Kagame I*. *See* Exh. 7, Suggestion of Immunity at 1; Exh. 2, *Kagame I*, 821 F.Supp.2d at 1263–64 (recognizing Suggestion of Immunity filed by the United States that President Kagame is immune from the plaintiffs' suit). Accordingly, this Court should recognize and grant immunity to President Kagame as a sitting head of state from the jurisdiction of this Court. No reported decision exists in which a court has subjected a sitting head of state to suit after the State Department has determined that the head of state is immune. *See id*. at 1264 (President Kagame is immune from suit); *accord Ye v. Zemin*, 383 F.3d 620, 626–27 (7th Cir. 2004) (President of China); *Manoharan v. Rajapaksa*, 845 F.Supp.2d 260, 263 (D.D.C. 2012) (President of Sri Lanka), *aff'd*, 711 F.3d 178 (D.C. Cir. 2013); *Doe I v. Israel*, 400 F.Supp.2d 86, 110–11 (D.D.C. 2005) (Prime Minister of Israel); *Leutwvler v. Off. of Her Majesty Queen Rania Al–Abdullah*, 184 F.Supp.2d 277, 280, 286 (S.D.N.Y. 2001) (Queen of Jordan); *Tachiona*, 169 F.Supp.2d at 265, 267 (President of Zimbabwe); *First Am. Corp. v. Al-Nahyan*, 948 F.Supp. 1107, 1119 (D.D.C. 1996) (President of the United Arab Emirates & Ruler of the Emirate of Abu Dhabi); *Lafontant*, 844 F.Supp. at 131-32 (President of Haiti); *Saltany v. Reagan*, 702 F.Supp. 319, 320 (D.D.C. 1988) (Prime Minister of United Kingdom), *aff'd in part, rev'd in part on other grounds*, 886 F.2d 438 (D.C. Cir. 1989); Exh. 7, Suggestion of Immunity ¶ 6.

Where, as here, the United States' Executive Branch has concluded that a foreign head of state is immune from suit, and has filed a suggestion of immunity as to that foreign official, the entry of dismissal is warranted. *See* Exh. 7, Suggestion of Immunity at 1; Exh. 2, *Kagame I*, 821 F.Supp.2d at 1264; Exh. 3, *Kagame II*, 696 F.3d at 1030–31; Exh. 5, *Kagame III*, 2013 WL 12284605, at *3; *accord Ye v. Zemin*, 383 F.3d at 626–27; *Manoharan v. Rajapaksa*, 845 F.Supp.2d at 263; *Doe I v. Israel*, 400 F.Supp.2d at 110–11; *Leutwvler*, 184 F.Supp.2d at 280, 286; *Tachiona*, 169 F.Supp.2d at 265, 267; *First Am. Corp. v. Al-Nahyan*, 948 F.Supp. at 1119; *Lafontant*, 844 F.Supp. at 131–32; *Saltany v. Reagan*, 702 F.Supp. at 320.

### 2. An Order of Dismissal Should Be Entered Because President Kagame Is the Incumbent President of the Republic of Rwanda.

Even "'in the absence of recognition of the immunity by the Department of State,' a district court 'had authority to decide for itself whether all the requisites for such immunity existed.'" *Samantar*, 560 U.S. 311 (quoting *Ex parte Republic of Peru*, 318 U.S. at 587; *see also Compania Espanola de Navegacion Maritima, S.A. v. The Navemar*, 303 U.S. 68, 74–75 (1938) (approving judicial inquiry into sovereign immunity when the Department of State declines to act); *Heaney v. Gov't of Spain*, 445 F.2d 501, 503 n.2 (2d Cir. 1971) (evaluating sovereign immunity when the State Department had not responded to a request for its views); Exh. 2, *Kagame I*, 821 F.Supp.2d at 1258, 1260 n.2.

Here, this Court may independently and properly determine that President Kagame is entitled to dismissal of this suit pursuant to the doctrine of head-of-state immunity. *See Samantar*, 560 U.S. at 311; *Abiola*, 267 F.Supp.2d at 915. Accordingly, President Kagame respectfully requests that the Court take judicial notice that he is the President of the Republic of Rwanda. Exh. 2, *Kagame I*, 821 F.Supp.2d at 1248. President Kagame is recognized as the President of the Republic of Rwanda by the United States Department of State, and by the

authoritative CIA World Factbook. Exh. 1, *World Factbook – Rwanda*, § Executive Branch. Moreover, President Kagame's head-of-state immunity has not been waived by either the State Department or the Republic of Rwanda.

Further, the Oklahoma Court granted President Kagame's request for judicial notice, holding:  "The Court takes notice that the defendant [President Kagame] is recognized to be the current president and head of state of the Republic of Rwanda." Exh. 2, *Kagame I*, 821 F.Supp.2d at 1248. Similarly, the Iowa Court granted President Kagame's request for judicial notice, reasoning:

> The Court takes judicial notice of the State Department's Suggestion of Immunity concerning Kagame issued in *Kagame I*. See Defs.' Mot. at 3–4 (requesting that the Court take judicial notice that "Kagame is the current head of state and duly-elected President of the ... Republic of Rwanda"); Ex. 38 (containing the State Department's Suggestion of Immunity filed in *Kagame I*); *see also* Fed. R. Evid. 201(c)(2) ("The court must take judicial notice if a party requests it and the court is supplied with the necessary information."). Accordingly, the Clerk of Court shall change the caption of this lawsuit to reflect that Kagame is the Republic of Rwanda's current President.

Exh. 5, *Kagame III*, 2013 WL 12284605, at *3 n.5.

Not only was President Kagame's immunity as head of state recognized by two other federal courts – the Oklahoma and Iowa Courts – each of those judgments were affirmed (or appeals dismissed) by the relevant Court of Appeals, the Tenth Circuit and Eighth Circuit, respectively. Exh. 3, *Kagame II*, 696 F.3d 1029 (10th Cir. 2012), *aff'g Kagame I*, 821 F.Supp.2d 1244; Exh. 6, *Habyarimana v. Kagame*, No. 13-1517 (8th Cir. May 24, 2013), *dismissing appeal from Kagame III*, 2013 WL 12284605. A petition for writ of certiorari was denied by the United States Supreme Court as to the Tenth Circuit's judgment in *Kagame II*. Exhibit 4, *Habyarimana v. Kagame*, 568 U.S. 1232.

Accordingly, President Kagame, having supplied this Court with support for the fact that he is the head of state of Rwanda, which fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, respectfully requests that this Court take judicial notice pursuant to Federal Rule of Evidence 201(c)(2) that he is President and head of state of Rwanda, and enter dismissal under the doctrine of head-of-state immunity.

**B.    The Amended Complaint Must Be Dismissed as to President Kagame Due to the Lack of Personal Jurisdiction over President Kagame.**

Even assuming President Kagame were not protected by head-of-state immunity (which he is), he would nevertheless be entitled to dismissal from this action because this Court cannot properly exercise personal jurisdiction over him consistent with the requirements of due process and thus dismissal under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) is warranted. *See Samantar*, 560 U.S. at 324 n.20 ("a plaintiff seeking to sue a foreign official will not be able to rely on the [FSIA's] . . . jurisdictional provisions. Thus, a plaintiff will have to establish that the district court has personal jurisdiction over an official without the benefit of the FSIA provision that makes personal jurisdiction over a foreign state automatic when an exception to immunity applies").

Personal jurisdiction "takes two forms: (1) general or all-purpose jurisdiction, or (2) specific or case-linked jurisdiction." *Vasquez v. Whole Foods Mkt., Inc.*, 302 F.Supp.3d 36, 45 (D.D.C. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). General jurisdiction exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant is "essentially at home" in the forum. *Goodyear*, 564 U.S. at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "[S]pecific jurisdiction exists over a non-resident defendant where plaintiff's claim arises 'out of or [is] related to the defendant's contacts with the forum.'" *Duarte v. Nolan*, 190

F.Supp.3d 8, 12 (D.D.C. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,  414 n.8 (1984)).

Personal jurisdiction over a nonresident defendant is only appropriate if the defendant has sufficient minimum contacts with the forum, and if the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff bears the burden of proving that the Court may exercise personal jurisdiction over the defendants consistent with the Constitution personal jurisdiction." *Buratai*, 318 F.Supp.3d at 230 ("the plaintiffs have not carried their burden of showing that the Court may exercise personal jurisdiction over the defendants consistent with the Constitution"), *aff'd*, 792 Fed. App'x 6 (D.C. Cir. 2019). Determination of the requisite "minimum contacts" depends on whether the type of personal jurisdiction being asserted is general or specific. *See id.*, 792 F. App'x at 9.

For tort claims, the Court's analysis will often focus on whether the defendant's conduct was intentional, was aimed at the forum state, and the defendant knew it would cause harm to the plaintiff in the forum state. *See Walden v. Fiore*, 571 U.S. 277, 286–87 (2014); *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).

Here, Plaintiffs have not alleged facts in the Amended Complaint to satisfy the requirements of either general or specific personal jurisdiction over President Kagame.

### 1.    There Is No Basis For General Personal Jurisdiction Over President Kagame.

General jurisdiction requires "continuous and systematic" contacts between the defendant and the forum state. *See Helicopteros Nacionales de Colombia, N.A. v. Hall*, 466 U.S. at 408.

A nonresident's contacts with the forum that are unrelated to the litigation "must be *substantial* in order to warrant the exercise of personal jurisdiction."  *Consol. Dev. Corp. v.*

*Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) (emphasis added); *A, B, C, D, E, F v. Zemin*, 282 F.Supp.2d 875, 887  (N.D. Ill. 2003), *aff'd sub nom. Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004) ("to be considered 'continuous and systematic,' [contacts] must be so extensive to be tantamount to [the defendant's] being constructively present in the state"). It is a high standard because once a forum may assert general jurisdiction over an individual, the individual is subject to suit in any cause of action in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985).

Here, there is plainly no basis for the exercise of general personal jurisdiction over President Kagame. Far from carrying their burden on this point, there are no contacts Plaintiffs have alleged between President Kagame and the United States. Thus there is a complete absence of the types of "continuous and systematic" contacts that courts require to exercise general personal jurisdiction.

For instance, in *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), the Eighth Circuit held that a defendant did not have continuous and systematic contacts, as required for general jurisdiction, even though the defendant visited the forum state twice, advertised on a website hosted in the forum state, made purchases in the forum state, and engaged in numerous e-mail and phone conversations with the plaintiffs in the forum state for over four years. *Id.* at 795; *see also Nibkin v. Islamic Republic of Iran*, 471 F.Supp.2d 53, 71–73 (D.D.C. 2007) (finding that former Iranian president's contacts with the United States—which amounted to numerous visits and the exploration of business opportunities—were not "continuous and systematic").

2. **There Is No Basis For Specific Personal Jurisdiction Over President Kagame.**

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes

jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks and citation omitted). Specific jurisdiction therefore "covers defendants less intimately connected with a [forum], but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021). The "'essential foundation' of specific jurisdiction" is the "relationship among the defendant, the forum, and the litigation." *Id.* at 1028 (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414). The plaintiff must meet three requirements to establish a basis for the court's exercise of specific personal jurisdiction: (1) minimum contacts demonstrating that the defendant purposefully availed itself of the forum; (2) relatedness between the contacts and the claim; and (3) compliance with "fair play and substantial justice." *See Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F.Supp.3d 1, 6–7 (D.D.C. 2021) (plaintiff failed to establish specific jurisdiction over defendant).

Here, there can be no specific personal jurisdiction as to President Kagame under any of the three required elements. First, Plaintiffs failed even to allege, much less establish, any contacts by President Kagame with the United States. Second, Plaintiffs failed to establish any conduct of President Kagame in the United States related to Plaintiffs' alleged claims. Plaintiffs do not even bother to pretend that President Kagame ever traveled to the United States with any connection to their claims. Accordingly, as a matter of elementary logic and chronology, Plaintiffs' claims do not relate to or arise from President Kagame's contacts with the United States. *Burger King*, 471 U.S. at 471–72; *Miley*, 537 F.Supp.3d at 7 (plaintiff failed to show any connection between defendant's purported forum contacts and the dispute in the case).

Plaintiffs' inability to show a nexus between any contacts of President Kagame with the United States, on one hand, and the alleged acts of which they complain, on the other hand, defeats the exercise of specific personal jurisdiction over President Kagame.

In an analogous case, the plaintiffs sued the former head of state of the People's Republic of China in Illinois under the Alien Tort Statute for alleged human rights abuses. *Zemin*, 282 F.Supp.2d at 877, 887. There, the plaintiffs alleged certain conduct within the United States had occurred, including "suppress[ing] [the plaintiffs'] demonstrations in Illinois through the assault of demonstrators, intimidation [at] Chicago hotels, and the destruction of leaflets and signs." *Id.* at 888. Even though the defendant allegedly engaged in wrongful conduct in the United States, the court found that the defendant's contacts with the United States were not sufficiently related to the claims in the litigation because plaintiffs' claims were based on atrocities ultimately inflicted in China, not within the United States. *Id.* at 888–89.

Similarly, in *Nibkin*, the plaintiff sued, among others, the former president of Iran, in the District of Columbia, regarding alleged torture that the plaintiff had suffered. *Nibkin*, 471 F.Supp.2d at 73. The *Nibkin* Court found that the defendant's visits to the forum and exploration of business opportunities there—which had nothing to do with the torture in Iran—did not support the contacts requisite for specific jurisdiction. *Id.*

Here, as in *Zemin* and *Nibkin*, the foreign leader's contacts with the forum state are completely unrelated to the supposed human rights violations alleged in the suit. Thus, as in those cases, this Court should find that it lacks personal jurisdiction over President Kagame.

Finally, the exercise jurisdiction over President Kagame in this action would offend traditional notions of fair play and substantial justice. *See Burger King Corp.*, 471 U.S. at 476 (*quoting Int'l Shoe*, 326 U.S. at 320). To determine whether it does, the court considers a range of factors, including the burden on the defendant, the forum's interests in adjudicating the case, the plaintiff's interests in "convenient and effective relief," and the judicial system's interest in the efficient resolution of the controversy. *Id.* at 477 (*quoting World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 292 (1980)); *Miley*, 537 F.Supp.3d at 7 (plaintiff failed to show exercise of jurisdiction over defendant would comport with due process). Here, these factors weigh against exercising personal jurisdiction over President Kagame.

First, defending this lawsuit in this Judicial District would place a substantial burden on President Kagame, even if he were merely a private citizen. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). Consequently, "[g]reat care and reserve should be exercised" before personal jurisdiction is exercised over the defendant in such a situation. *Id.* at 115. Here, that factor is magnified exponentially, because President Kagame is the head of state of a sovereign nation, and in that capacity is charged with heavy political, administrative, diplomatic, and national security responsibilities.

Second, this Judicial District has little interest in allocating responsibility to acts that have little or no connection to this Judicial District or to the United States. Plaintiffs' allegations concerning President Kagame relate to conduct that occurred entirely abroad with the only jurisdictional contacts alleged being legal conclusions regarding a purported conspiracy to kidnap plaintiff Paul Rusesabagina. Plaintiffs' conspiracy allegations consist of mere speculation and barren conclusions without factual support to demonstrate communications between the alleged conspirators or facts to show any conspiracy whatsoever. Both the existence of the conspiracy and the overt action taken within the forum must be plead with particularity, *North v. Smarsh, Inc.*, 265 F.Supp.3d 71, 77 (D.D.C. 2017), *aff'd*, No. 17-7120, 2017 WL 6553385 (D.C. Cir. Dec. 6, 2017), which Plaintiffs failed to do. *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d at 524 ("bare allegation of conspiracy or agency is insufficient to establish personal

17

jurisdiction[,]" "a plaintiff must allege specific acts connecting [the] defendant with the forum [.]") (citation omitted). Subjecting President Kagame to personal jurisdiction based on unspecified acts by unidentified third parties would offend traditional notions of fair play and substantial justice. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 187 (D.D.C. 2018) ("subjecting defendants to personal jurisdiction based on unspecified acts by unidentified third parties would offend traditional notions of fair play and substantial justice"); *North*, 265 F.Supp.3d at 77–78.

Third, Plaintiffs' interest in obtaining "convenient and effective" relief from this forum is weak because no Plaintiff lives in this Judicial District, or has any connection to this Judicial District at all. *See Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990) (finding that Florida did not provide convenient and effective relief for plaintiff because he did not reside there). Given the need to travel and the potential language barrier, as well as the inevitable difficulties in obtaining testimony and documents from relevant witnesses who are all located outside the United States, it can hardly be maintained that this Judicial District is "convenient."

Fourth, the judicial system's interest in the efficient resolution of the controversy is minimal in that Plaintiffs are for the most part foreign nationals complaining about alleged conduct occurring elsewhere. Thus, no factor supports the exercise of personal jurisdiction over President Kagame here. *See Miley*, 537 F.Supp.3d at 7 (plaintiff failed to show exercise of personal jurisdiction over defendant would comport with due process).

### C.   The Amended Complaint is Subject to Dismissal Due to the Lack of Service of Process on President Kagame.

Even if President Kagame were not immune from suit (which he is), and President Kagame were subject to personal jurisdiction in this Judicial District (which he is not), this Court

nonetheless lacks jurisdiction over President Kagame because there was insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5).

A federal court may assert personal jurisdiction over a defendant only if 'the procedural requirements of effective service of process are satisfied." *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 78 (D.C. Cir. 2014) (quoting *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (internal quotation marks omitted)). "Service of process 'notif[ies] a defendant of the commencement of an action against him' and 'marks the court's assertion of jurisdiction over the lawsuit.'" *Id.* "Federal Rule of Civil Procedure 4 generally 'governs the form, issuance, and service of summons in federal civil actions.'" *Id.* (*quoting Eades v. Clark Distrib. Co.*, 70 F.3d 441, 442 n.1 (6th Cir. 1995)). "If a defendant challenges the validity of service of process, the plaintiff bears the burden to  'demonstrate that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4.'" *Id.* (quoting *Mann*, 681 F.3d at 372 (quoting 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1083 (3d ed. 2002 & Supp. 2012))).

Plaintiffs' request [D.E. 23] was premised upon Federal Rule of Civil Procedure 4(f)(2)(C)(ii). By its terms, Rule 4(f)(2)(C) is inapplicable if "prohibited by the foreign country's law." Rule 4(f)(2)(C)(ii) provides for the use of "any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." No receipt signed by President Kagame was provided by Plaintiffs, and Plaintiffs failed to establish mailing was not prohibited by Rwandan law. *See Hashem v. Shabi*, Civ. A. No. 17-1645, 2018 WL 3382913, at *3-4 (D.D.C. Apr. 26, 2018) (plaintiff failed to effect service of process pursuant to Rule 4(f)(2)(C)(ii) where plaintiff failed to provide a signed receipt and failed to establish mailing was not

prohibited by foreign law); *Freedom Watch, Inc. v. OPEC*, 766 F.3d at 80 (plaintiff failed to provide a signed receipt and failed to establish mailing was not prohibited by foreign law).

Accordingly, Plaintiffs failed to satisfy Rule 4(f)(2)(C)(ii) with respect to the purported service upon President Kagame.

**D.      Joinder in Pending Motion to Dismiss filed by the Republic of Rwanda.**

Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and suffer from various other fundamental infirmities which require the dismissal of those claims with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), as set forth in the Motion to Dismiss [D.E. 18] filed by Rwanda. President Kagame joins in that Motion to Dismiss.

## <u>CONCLUSION</u>

For the foregoing reasons, President Kagame respectfully requests that the Court enter an order granting this Motion to Dismiss the Amended Complaint with prejudice, and dismissing this action as to President Kagame.

Dated: July 22, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael S. Cryan
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants*
*The Republic of Rwanda, &*
*His   Excellency   President   Paul*
*Kagame, President of the Republic of*
*Rwanda*