UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al*., | |
| Plaintiffs, | Civil Action No.: 22-00469 (RJL) |
| -against- | |
| THE REPUBLIC OF RWANDA, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE REPUBLIC OF RWANDA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    A.    The Amended Complaint's allegations do not satisfy any of the clauses of the commercial activity exception. ............................................................... 3

        1.    Plaintiffs' fraud and civil conspiracy claims do not satisfy Clause 1 of the commercial activity exception. ............................................... 3

            a.    Plaintiffs' claims are not based upon any commercial activity by or of Rwanda. ................................................. 4

            b.    The alleged commercial activity does not have substantial contact with the United States. ....................................... 8

        2.    The Amended Complaint does not satisfy Clause 2 of the commercial torts exception. ...................................................... 9

        3.    The Amended Complaint does not satisfy Clause 3 of the commercial torts exception. .................................................. 12

    B.    Plaintiffs' claims are barred by 28 U.S.C. § 1605(a)(5)(B). ............................... 13

    C.    Plaintiffs' admit that their claims do not satisfy the non-commercial torts exception. ...................................................................................... 14

        1.    Counts I and II allege tortious conduct that did not occur entirely within the United States. ......................................................... 14

        2.    Count IV alleges tortious conduct that did not occur entirely within the United States. ......................................................... 15

        3.    Counts III, VII, and VIII allege tortious conduct that did not occur entirely within the United States. ..................................... 15

        4.    Counts IX and X allege tortious conduct that did not occur entirely within the United States. ......................................................... 16

    D.    Plaintiffs fail to state a claim for violations of the Wiretap Act, intrusion upon seclusion, IIED, and civil conspiracy based on conduct that allegedly occurred entirely within the United States. ....................................... 16

        1.    The Amended Complaint fails to state a claim for violations of the Wiretap Act against Rwanda. ................................................ 17

        2.    The Amended Complaint fails to state a claim for intrusion upon seclusion based on Rwanda's alleged conduct within the United States. ............................................................................ 17

        3.    The Amended Complaint fails to state a claim for IIED based on Rwanda's alleged conduct within the United States. ............................... 20

## TABLE OF CONTENTS
(continued)

**Page**

4.      The Amended Complaint fails to state a claim for civil conspiracy based on Rwanda's alleged conduct within the United States.................. 21

E.      Rwanda's law enforcement conduct is a discretionary function for which Rwanda is afforded sovereign immunity. ............................................................. 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arteaga-Ruiz v. United States*,
  164 F.Supp.3d 1198 (D. Idaho 2016), *aff'd*, 705 F. App'x 597 (9th Cir. 2017)....................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................20

*Barnet as Tr. of 2012 Saretta Barnet Revocable Tr. v. Ministry of Culture &*
  *Sports of the Hellenic Republic*,
  961 F.3d 193 (2d Cir. 2020)...............................................................................11, 12

*Berkovitz v. United States*,
  486 U.S. 531 (1988).................................................................................................23

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*,
  323 F.3d 1198 (9th Cir. 2003) ................................................................................13

*Bozgoz v. James*,
  Civ. A. No. 19-0239, 2020 WL 4732085 (D.D.C. Aug. 14, 2020) ........................21

*Broidy Cap. Mgmt., LLC v. State of Qatar*,
  982 F.3d 582 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2704 (2021)...................9, 24

*Chicago Bridge & Iron Co. v. Islamic Republic of Iran*,
  506 F.Supp. 981 (N.D. Ill. 1980) .............................................................................8

*Chisum v. Colvin*,
  276 F.Supp.2d 1 (D.D.C. 2003) ..............................................................................22

*Cicippio v. Islamic Republic of Iran*,
  30 F.3d 164 (D.C. Cir. 1994) ................................................................................6, 7

*De La Fuente v. DNC Servs. Corp.*, No. CV 18-336 (RC),
  2019 WL 1778948, at *9 (D.D.C. Apr. 23, 2019) .............................................22, 23

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F.Supp.3d 410 (S.D.N.Y. 2019).............................................................9, 18, 20

*Doe v. Fed. Democratic Republic of Ethiopia ("Doe I")*,
  189 F.Supp.3d 6 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017) ............17, 18, 24

*Doe v. Fed. Democratic Republic of Ethiopia,
   851 F.3d 7 (D.C. Cir. 2017) ..................................................................14, 15, 16, 17

Filus v. LOT Polish Airlines,
   939 F.Supp.199 (E.D. N.Y. 1996), aff'd, 133 F.3d 169 (2d Cir. 1997).....................................8

Guevara v. Republic of Peru,
   468 F.3d 1289 (11th Cir. 2006) ......................................................................7

Halberstam v. Welch,
   705 F.2d 472 (D.C. Cir. 1983) ....................................................................22

Heroth v. Kingdom of Saudi Arabia,
   565 F.Supp.2d 59 (D.D.C. 2008), aff'd, 331 F. App'x 1 (D.C. Cir. 2009)............................11

Hilsenrath v. Swiss Confederation,
   No. C 07-2782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007), aff'd, 402 F.
   App'x 314 (9th Cir. 2010) .........................................................................24

Hyewoong Yoon v. Seyeon Lee,
   433 F.Supp.3d 18 (D. Mass. 2019) .................................................................17

Jam v. Int'l Fin. Corp.,
   3 F.4th 405 (D.C. Cir. 2021), cert. denied, 142 S. Ct. 2668 (2022) ........................4, 6, 10

Kennedy v. Berkel & Co. Contractors,
   No. 17-CV-1248, 2020 WL 4903896 (D.D.C. Aug. 20, 2020) .............................................18

Lempert v. Republic of Kazakstan,
   223 F.Supp.2d 200 (D.D.C. 2002), aff'd, 62 F. App'x 355 (D.C. Cir. 2003)............................8

Loumiet v. United States,
   828 F.3d 935 (D.C. Cir. 2016) ....................................................................25

Martinez v. United States,
   587 F.Supp.2d 245 (D.D.C. 2008) ..................................................................24

Mwani v. bin Laden,
   417 F.3d 1, 17 (D.C. Cir. 2005) .................................................................5, 7

Nnaka v. Federal Republic of Nigeria,
   756 F. App'x 16 (D.C. Cir. 2019).................................................................7

*OBB Personenverkehr AG v. Sachs,
   577 U.S. 27 (2015).................................................................................4

Odhiambo v. Republic of Kenya,
   764 F.3d 31 (D.C. Cir. 2014) ................................................................4, 10, 11

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992).................................................................................................12

*Rodriguez v. Pan Am. Health Org.*,
    29 F.4th 706 (D.C. Cir. 2022)....................................................................................5

*Rong v. Liaoning Province Gov't*,
    452 F.3d 883 (D.C. Cir. 2006)............................................................................10, 12

*Rosenkrantz v. Inter-Am. Dev. Bank*,
    35 F.4th 854 (D.C. Cir. 2022)..................................................................................4, 5

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012)............................................................................22, 23

*Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*,
    Civ. A. No. H-15-2372, 2016 WL 3568114 (S.D. Tex. June 23, 2016).....................8

*\*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)......................................................................................4, 5, 7, 9

*Smith v. United States*,
    121 F.Supp.3d 112 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016).............21

*Universal Trading & Investment Co. v. Bureau for Representing Ukrainian
    Interests in International & Foreign Courts*,
    727 F.3d 10 (1st Cir. 2013).........................................................................................7

*Usoyan v. Republic of Turkey*,
    6 F.4th 31 (D.C. Cir. 2021), *pet. for cert. filed* (U.S. Jan. 18, 2022)..........23, 24, 25

*Valenzuela v. Aquino*,
    853 S.W.2d 512 (Tex. 1993).....................................................................................17

*Wolf v. Regardie*,
    553 A.2d 1213 (D.C. 1989) ......................................................................................20

*Wolfson v. Lewis*,
    924 F.Supp.1413 (E.D. Pa. 1996).............................................................................20

*\*Wye Oak Tech., Inc. v. Republic of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022)..........................................................................4, 7, 10, 12

*Zedan v. Kingdom of Saudi Arabia*,
    849 F.2d 1511 (D.C. Cir. 1988)...............................................................................8, 11

v

**Statutes**

18 U.S.C. § 2510, *et seq*..................................................................................................17

28 U.S.C. § 1603(d) ...........................................................................................................5

28 U.S.C. § 1603(e) ............................................................................................................3

28 U.S.C. § 1605(a)(2)................................................................................................*passim*

28 U.S.C. 1605(a)(5)(B) ...................................................................................................13

**Other Authorities**

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 17 (1976), *reprinted in* 1976
    U.S.C.C.A.N. 6604 .......................................................................................................8

*Paul Rusesabagina Case Outcome*, U.S. Dep't of State (Sept. 20, 2021),
    https://www.state.gov/paul-rusesabagina-case-outcome/ .........................................2

Restatement (Second) of Torts § 46, cmt. d (Am. Law Inst. 1975).................................21

Restatement (Second) of Torts § 652B, cmt. c ...............................................................20

Tracy Wilkinson, *Jailed for terrorism, onetime hero Rusesabagina is a point of
    U.S. contention with Rwanda* ....................................................................................2

Defendant, Republic of Rwanda ("Rwanda"), by and through its undersigned counsel, submits this Reply Memorandum of Points and Authorities in further Support of its Motion to Dismiss Plaintiff's Amended Complaint (D.E. 17, "Am. Compl.") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure ("Moving Brief"), and hereby states as follows:

## INTRODUCTION

Plaintiffs' opposition brief ("Opp. Br." or "Opposition Brief") (D.E. 31) attempts to recast the Amended Complaint's allegations of allegedly tortious conduct by Rwandan government officials in Rwanda into commercial activity in the United States in order to satisfy the Foreign Sovereign Immunity Act's ("FSIA") commercial tort exception. This attempt fails because Plaintiffs' allegations do not concern any commercial activity by or of Rwanda, let alone commercial activity with the necessary nexus to the United States to qualify for that exception to the FSIA. An insufficient nexus to the United States equally dooms Plaintiffs' arguments that their tort claims qualify for the FSIA's non-commercial torts exception: Plaintiffs' claims depend on allegedly tortious conduct or injury that occurred in Rwanda, and Plaintiffs' scant allegations of allegedly tortious conduct that occurred entirely within the United States are insufficient as a matter of law to withstand Rwanda's motion to dismiss for failure to state a claim under Rule 12(b)(6). As Plaintiffs' claims do not meet either of their asserted exceptions to sovereign immunity pursuant to which this Court may exercise subject matter jurisdiction over Rwanda, the Amended Complaint must be dismissed as to Rwanda. In addition, Rwanda's law enforcement conduct clearly qualifies as discretionary activity, which is afforded sovereign immunity under the FSIA.

1

Contrary to Plaintiffs' repeated suggestion otherwise, Rwanda neither concedes nor agrees with the utterly false and implausible mischaracterizations of fact and law stated in their pleading and brief.

The implausible and improper nature of Plaintiffs' lawsuit is also shown by the fact that the United States Department of State has undertaken diplomatic action with respect to one aspect of this situation, namely, the trial of Paul Rusesabagina. The United States Secretary of State, Antony J. Blinken, stated that the United States' "concerns related to Paul Rusesabagina's trial and conviction [were] the lack of fair-trial guarantees." Tracy Wilkinson, *Jailed for terrorism, onetime hero Rusesabagina is a point of U.S. contention with Rwanda*, LA TIMES, 2022 WLNR 25892273 (Aug. 17, 2022). Elaborating on this point, Secretary Blinken remarked that the United States "continue[s] to urge the [Rwandan] government to address concerns about the legal protections afforded to [Rusesabagina] and his case and [to] establish safeguards to prevent similar outcomes in the future." *Id.* In other words, the United States' concern does not lie with the arrest, detention, specific charges, subsequent verdict, or sentence, but in ensuring that Rwanda does not allow its understandable sensibilities over possible threats to government stability, due in large part to "Rwanda's incredibly difficult history," to override fair trial guarantees. *Id.* Consistent with this, the United States has "urge[d] the Government of Rwanda to take steps to examine these shortcomings in Mr. Rusesabagina's case and establish safeguards to prevent similar outcomes in the future." Ned Price, *Paul Rusesabagina Case Outcome*, U.S. Dep't of State (Sept. 20, 2021), https://www.state.gov/paul-rusesabagina-case-outcome/. Notably, neither the State Department or any other United States entity has called for the overturning of Mr. Rusesabagina's conviction, even in Mr. Blinken's latest meeting with President Kagame, a party to this action. Having undertaken diplomatic discussions with

Rwanda, the United States Department of State therefore demonstrated that it is an issue properly committed to foreign affairs, conducted by the Executive Branch, and not oversight by a United States District Court.

## ARGUMENT

### A.   The Amended Complaint's allegations do not satisfy any of the clauses of the commercial activity exception.

Plaintiffs argue that this Court has subject matter jurisdiction over their "fraud, civil conspiracy, solatium, false imprisonment, loss of consortium, IIED, intrusion upon seclusion, and Wiretap Act claims against Rwanda because each falls within at least one of the three alternative prongs of the  FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2)." Opp. Br. 10. But Plaintiffs' allegations do not satisfy any clauses of the commercial activity exception for the principal reason that the Amended Complaint is entirely devoid of allegations of commercial activity, or actions in connection with commercial activity, by or of Rwanda with a nexus to the United States sufficient to support the application of this exception to Rwanda's sovereign immunity.

### 1.   Plaintiffs' fraud and civil conspiracy claims do not satisfy Clause 1 of the commercial activity exception.

Plaintiffs argue that their fraud (Count I) and civil conspiracy (Count II) claims satisfy Clause 1 of the commercial activity exception, which permits a suit against a foreign sovereign only if the Plaintiffs' "action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). The FSIA in turn defines the phrase "commercial activity carried on in the United States by a foreign state" to mean "commercial activity carried on by such state and having substantial contact with the United States." *Id*. § 1603(e). Thus, to invoke this Court's jurisdiction under Clause 1, Plaintiffs' claims must be (1) "'based upon some

commercial activity by' the foreign state that [(2)] 'had substantial contact with the United States." *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014), *quoting Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993) (internal quotation marks omitted) ("*Nelson*"). Here, Plaintiffs' argue that Plaintiff Paul Rusesabagina's fraud claim and Plaintiffs' civil conspiracy claim satisfy Clause 1 of the commercial tort exception because they are based on Constantin Niyomwungere's alleged misrepresentations to Paul Rusesabagina. Opp. Br. 24. Plaintiffs' fraud and civil conspiracy claims do not satisfy Clause 1 for two reasons.

### a. Plaintiffs' claims are not based upon any commercial activity by or of Rwanda.

First, Plaintiffs' claims are not "based upon" any "commercial activity" by or of Rwanda as required by 28 U.S.C. § 1605(a)(2). To determine whether a plaintiff's action is based upon commercial activity, the Court must engage in a two-step inquiry: the Court must first identify the particular wrongful conduct that caused Plaintiffs' harm, or, phrased differently, identify the particular wrongful conduct that is "the core" of their claims. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015), *citing Nelson*, 507 U.S. at 356, 357 ), "zero[ing] in on the core of [the plaintiff's] suit," that is, the "wrongful conduct" that "led to [the] injuries suffered"); *see also Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 2668 (2022). The manner in which Plaintiffs' have styled their claims is irrelevant to the analysis: a court must review the substance of Plaintiffs' claims to determine the wrongful conduct alleged. *Rosenkrantz v. Inter-Am. Dev. Bank*, 35 F.4th 854, 863 (D.C. Cir. 2022) ("The fact that the Plaintiffs nevertheless styled their causes of action as contract or contract-related claims is of no consequence in light of the substance of their complaint."). Once the Court identifies the conduct that forms the core of Plaintiffs' claims, it must determine whether that conduct is commercial activity by or of the foreign sovereign. *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686,

4

700–01 (D.C. Cir. 2022) ("[I]t is the foreign state that has to have engaged in activity that took place in the United States, or that has to have engaged in acts elsewhere that have an effect inside the United States.").[1]

Here, each of Plaintiffs' claims alleges that they were harmed by Rwanda's allegedly tortious conduct that occurred in Rwanda. Every claim asserted by Plaintiffs alleges that Plaintiffs were harmed by Rwandan law enforcement agents' official actions, including the alleged unlawful arrest, detention, prosecution, and/or conviction of Plaintiff Paul Rusesabagina in Rwanda. None of this alleged conduct is commercial activity in the United States, as defined under the FSIA. Am. Compl. ¶¶ 133-136, 140-143, 260, 228-229, 259-261, 265-266; Opp. Br. at 6-7.

Under the FSIA, "[a] 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id*. "The key inquiry in determining whether particular conduct constitutes commercial activity is not to ask whether its purpose is to obtain money, but rather whether it is 'the sort of action by which private parties can engage in commerce.'" *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005), *quoting*

---

[1] Plaintiffs argue that the Court must examine the gravamen of each of their claims rather than the gravamen of Plaintiffs' entire lawsuit. Opp. Br. 10. The United States Court of Appeals for the District of Columbia Circuit has engaged in both approaches in recent cases. *Compare Rosenkrantz*, 35 F.4th at 862 ("the Plaintiffs' complaint, as the district court correctly recognized, makes clear that the wrongful conduct that in fact injured them centers around how the IDB carried out the Sanctions Procedures"), *with Rodriguez v. Pan Am. Health Org*., 29 F.4th 706, 714 (D.C. Cir. 2022) (approving considering the "'gravamen' on a claim-by-claim basis"). Here, however, regardless of whether the Court considers the gravamen of Plaintiffs' entire lawsuit or each individual claim, the outcome is the same: the particular conduct at issue in each of Plaintiffs' claims is Rwanda's alleged unlawful law enforcement conduct, not any commercial activity that occurred within the United States.

*Nelson*, 507 U.S. at 362. Critical to this inquiry, which Plaintiffs ignore, is the context in which the alleged commercial activity occurs: "[u]nless an act takes place in a commercial context it would be impossible to determine whether it is conducted in the manner of a private player in the market. Otherwise, any act directed by a foreign government and carried out by irregular operatives in whatever circumstances could be thought commercial including isolated acts of assassination, extortion, blackmail, [deportation] and kidnapping." *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 168 (D.C. Cir. 1994) (holding that hostage taking for ransom not commercial activity). Ultimately, "[i]f the 'gravamen' of [Plaintiffs'] lawsuit is tortious activity abroad, the suit is not 'based upon' commercial activity within the meaning of the FSIA's commercial activity exception." *Jam*, 3 F.4th at 408 (citation omitted).

Here, the only purported commercial activity alleged in the Amended Complaint is itself not even a commercial activity, but rather an alleged invitation by Constantin Niyomwungere to Paul Rusesabagina to give a speech in Burundi (Am. Compl. ¶¶ 133-151)—and most certainly is not a commercial activity by or of Rwanda because Rwanda was not acting as a "private player" within the market. The Amended Complaint does not allege that Niyomwungere was acting on Rwanda's behalf in any commercial capacity and Rwanda did not offer or intend to hire Paul Rusesabagina to perform any service, act as its employee, or otherwise engage him or any Plaintiffs in any commercial transaction. Am. Compl. ¶¶ 133-151; Declaration of Emmanuel Ugirashebuja in Support of Rwanda's Motion to Dismiss ("Ugirashebuja Decl.") ¶¶ 20-22. Instead, the Amended Complaint alleges that Niyomwungere purportedly made a false invitation in a private capacity while he had separately agreed to assist Rwandan law enforcement to apprehend Rusesabagina in Rwanda so that Rusesabagina could be prosecuted there. Am. Compl. ¶¶ 133-37, 140-142. This total lack of commercial activity by Rwanda is dispositive

6

under Clause 1 because "it is the foreign state that has to have engaged in [commercial] activity that took place in the United States" in order for Clause 1 to apply. *Wye Oak Tech., Inc.*, 24 F.4th at 700–01[2] Thus, the Amended Complaint admits that Rwanda did not act as a private player in any market, only as a sovereign seeking to arrest and prosecute a wanted fugitive. It is well-settled that the "[e]xercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce." *Nelson*, 507 U.S. at 362. Acts such as legislation, the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own capacity; such acts can be performed only by the state acting as such. *Id.*; *Mwani*, 417 F.3d at 16; *Cicippio*, 30 F.3d at 168.

The cases relied on by Plaintiffs for the proposition that Rwanda's law enforcement activity is commercial are inapposite and easily distinguished from the facts here. All of the cases relied on by Plaintiffs involve sovereign governments actually contracting with private parties to provide a service in exchange for compensation. In *Guevara v. Republic of Peru*, 468 F.3d 1289, 1298-99 (11th Cir. 2006), the government of Peru solicited information concerning a wanted fugitive and offered a $5 million reward for the information. Similarly, in *Nnaka v. Federal Republic of Nigeria*, 756 F. App'x 16, 17-18 (D.C. Cir. 2019) and *Universal Trading & Investment Co. v. Bureau for Representing Ukrainian Interests in International & Foreign Courts*, 727 F.3d 10, 20 (1st Cir. 2013), the governments of Nigeria and Ukraine, respectively, allegedly engaged private parties to provide asset recovery services in exchange for money.

---

[2] Importantly, Plaintiffs' fraud (Count I) and civil conspiracy (Count II) claims based on Niyomwungere's alleged misrepresentation actually depend on the absence of any commercial activity because the Amended Complaint alleges in support of those claims that the existence of the purported speaking invitation in Burundi was the *present* fact that was misrepresented to Paul Rusesabagina; that alleged fact was neither a commercial activity nor an activity by Rwanda. Am. Compl. ¶¶ 224, 228.

Here, Rwanda did not engage in any commercial transaction or activity with anyone, which precludes Clause 1's application. Ugirashebuja Decl. ¶¶ 20-22.

> **b.      The alleged commercial activity does not have substantial contact with the United States.**

Even if Niyomwungere's communications with Plaintiff Paul Rusesabagina could somehow be construed as commercial activity by or of Rwanda, that activity does not satisfy Clause 1 because an offer of speaking opportunities in Burundi does not have "substantial contact" with the United States as required by 28 U.S.C. § 1605(a)(2).

This FSIA's definition of "substantial contact" "is intended to reflect a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff." *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988), quoting H.R. Rep. No. 1487, 94th Cong., 2d Sess. 17 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615, 6616.). Plaintiffs argue that "Rwanda's agent engaged an extensive campaign of phone calls and text messages to convince Paul to leave Texas" and accept an alleged invitation to give a speech in Burundi. Opp. Br. 25. But calls and text messages in connection with alleged commercial activity that is performed abroad are insufficient to satisfy the "substantial contact" requirement where the contract is performed outside the United States. *Zedan*, 849 F.2d at 1513 (recruitment phone call was not "substantial contact" with United States under Clause 1); *Lempert v. Republic of Kazakstan*, 223 F.Supp.2d 200, 203 (D.D.C. 2002), *aff'd,* , 62 F. App'x 355 (D.C. Cir. 2003) ("no significant availment of resources in this country to persuade Lempert to enter into the contract"); *Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*, Civ. A. No. H-15-2372, 2016 WL 3568114, at *11–12 (S.D. Tex. June 23, 2016); *Filus v. LOT Polish Airlines*, 939 F.Supp.199, 203 (E.D. N.Y. 1996), *aff'd*, 133 F.3d 169 (2d Cir. 1997) (electronic communications with engineers located in the United States and working for another entity

would not give rise to sufficient U.S. activity to fall within a U.S. commercial acts exception); *Chicago Bridge & Iron Co. v. Islamic Republic of Iran*, 506 F.Supp. 981, 989 (N.D. Ill. 1980) ("The commercial activity providing the jurisdictional basis must involve more than the mere transmission of telex messages between a foreign state and the United States.").

Plaintiffs also argue in their Opposition Brief that Rwanda's alleged surveillance of them in the United States creates a substantial connection to the United States. Opp. Br. 25. But Clause 1 requires that the alleged *commercial activity* have a substantial connection to the United States and the surveillance alleged in the Amended Complaint is plainly not commercial activity because it is not conduct in which commercial actors typically engage. *Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 594 (9th Cir. 2020) ("a foreign government's conduct of clandestine surveillance and espionage against a national of another nation in that other nation is not 'one in which commercial actors typically engage.'"), *cert. denied*, 141 S. Ct. 2704 (2021) (citation omitted); *see also, e.g., Democratic Nat'l Comm. v. Russian Fed'n*, 392 F.Supp.3d 410, 429 (S.D.N.Y. 2019) ("Transnational cyberattacks are not the 'type of actions by which a private party engages in trade and traffic or commerce.'" (citation omitted).). A foreign government engaged in such conduct is not exercising "powers that can also be exercised by private citizens," but rather is employing powers that—however controversial their status may be in international law—are "peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (citations and internal quotation marks omitted). Thus, neither Niyomwungere's alleged communications nor Plaintiffs' alleged surveillance provide the substantial nexus with the United States required to satisfy Clause 1.

### 2. The Amended Complaint does not satisfy Clause 2 of the commercial torts exception.

Clause 2 of the commercial activity exception allows a suit against a foreign sovereign only when the plaintiff's claim is based "upon an act performed in the United States in

connection with a commercial activity of the foreign state *elsewhere*." 28 U.S.C. § 1605(a)(2) (emphasis added). Plaintiffs' claims do not satisfy Clause 2 of the commercial activity exception for three reasons.

First, Plaintiffs' claims are not based upon acts performed "in connection" with Rwanda's commercial activity because no commercial activity is alleged in the Amended Complaint. As with Clause 1, a Court analyzing whether Plaintiffs' claims satisfy Clause 2 must determine the gravamen of Plaintiffs' claims and whether the particular conduct that caused the alleged harm was performed in connection with commercial activity by or of the foreign state. *Jam*, 3 F.4th at 408 ("[I]f the 'gravamen' of a lawsuit is tortious activity abroad, the suit is not 'based upon' commercial activity within the meaning of the FSIA's commercial activity exception.") (citation omitted).[3] Here, because the Amended Complaint does not allege any commercial activity by or of Rwanda, Clause 2 is not satisfied. Ugirashebuja Decl. ¶¶ 20-22.

Second, Clause 2 of the commercial activity exception allows a suit against a foreign sovereign only when the plaintiff's claim is based "upon an act performed in the United States in

---

[3] Plaintiffs allege that the gravamen analysis used to determine whether a claim or lawsuit is "based upon" commercial activity by or of the foreign sovereign applies only to Clause 1. Opp. Br. 10-11. This is wrong. The Court of Appeals for the District of Columbia Circuit has applied a gravamen analysis to all clauses of the commercial activity exception. *Wye Oak Tech., Inc.*, 24 F.4th at 702–03 (The "based upon" language that appears in section 1605(a)(2) relates to all three clauses of that section, and it is, incidentally, yet another reason why Wye Oak's clause two argument fails."). Clauses 2 and 3 require the Court to examine a complaint's allegations to determine whether the particular conduct alleged occurred "in connection with" a sovereign's commercial activity. *Odhiambo*, 764 F.3d at 37 ("the virtually identical statutory text and structure of clauses one and two lead us to conclude that "based upon" means the same thing in both clauses); *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888–89 (D.C. Cir. 2006) (analyzing whether the conduct that "forms the basis of the complaint" was performed in connection with commercial activity and whether it "can be performed only by a state as sovereign" to determine applicability of Clause 3). Accordingly, all three clauses of the commercial tort exception require the Court to analyze whether the particular conduct on which Plaintiffs' claims are based qualifies as commercial activity or an act performed in connection with commercial activity.

connection with a commercial activity of the foreign state *elsewhere*." 28 U.S.C. § 1605(a)(2) (emphasis added). *Odhiambo*, 764 F.3d at 37. Here, Plaintiffs allege only one instance of commercial activity—the purported invitation for Paul Rusesabagina to deliver a speech. Plaintiffs do not allege any commercial activity by or of Rwanda "elsewhere" as required by the FSIA. Opp. Br. at 24-25; Am. Compl. ¶¶ 133-151. In their Opposition Brief, Plaintiffs do not even attempt to explain how the only alleged acts that purportedly occurred in the United States—surveillance and an invitation to give a speech from a private citizen—relate to Rwanda's commercial activity elsewhere. To the extent Plaintiffs allege that the commercial activity elsewhere is also the alleged invitation to speak in Burundi, this is insufficient as a matter of law because the predicate "act" cannot also be the related "commercial activity" itself, as "a single act cannot be undertaken in connection with itself." *Barnet as Tr. of 2012 Saretta Barnet Revocable Tr. v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193, 200 (2d Cir. 2020).

Finally, "[t]o qualify as an act performed in the United States in connection with a commercial activity elsewhere, 'the acts (or omissions) ... are limited to those which *in and of themselves* are sufficient to form the basis of a cause of action.'" *Heroth v. Kingdom of Saudi Arabia*, 565 F.Supp.2d 59, 67 (D.D.C. 2008) (emphasis in original), *aff'd*, 331 F. App'x 1 (D.C. Cir. 2009), *quoting Zedan*, 849 F.2d at 1514. Here, Plaintiffs' alleged acts in the United States are not in and of themselves sufficient to form the bases of a cause of action because Plaintiffs' claims all arose following Rwanda's allegedly unlawful conduct that occurred in Rwanda. *Id*. at 68 ("Plaintiffs' cause of action, to the extent one exists, only arose following the bombing in Saudi Arabia.").

3.    **The Amended Complaint does not satisfy Clause 3 of the commercial torts exception.**

Finally, to have subject matter jurisdiction under Clause 3, the Court must find that the Plaintiffs' lawsuit is (1) based upon an act outside the territory of the United States, (2) that was taken in connection with a commercial activity of the defendants outside of this country, and (3) that caused a direct effect in the United States. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992); 28 U.S.C. § 1605(a)(2). Plaintiffs' claims do not satisfy Clause 3 for three reasons.

First, as argued above, Plaintiffs do not allege *any* commercial activity by or of Rwanda. This is as dispositive with respect to Clause 3 as it is with Clauses 1 and 2. *Rong,* 452 F.3d at 888–89; *Wye Oak Tech., Inc.*, 24 F.4th at 700–01 ("[I]t is the foreign state that has to have engaged in activity that took place in the United States, or that has to have engaged in acts elsewhere that have an effect inside the United States."); Ugirashebuja Decl. ¶¶ 20-22.

Second, as with Clause 2, Plaintiffs fail to cite any commercial activity by or of Rwanda that occurred "outside the country." To the extent Plaintiffs allege that the commercial activity "outside the country" is also Niyomwungere's alleged invitation for Paul Rusesabagina to speak in Burundi, this is insufficient as a matter of law because the predicate "act" cannot also be the related "commercial activity" itself, as "a single act cannot be undertaken in connection with itself." *Barnet as Tr. of 2012 Saretta Barnet Revocable Tr.*, 961 F.3d at 200; Ugirashebuja Decl. ¶¶ 20-28.

Finally, Plaintiffs argue that the purported commercial activity occurred *within the United States*. Opp. Br. 24-25. Accordingly, the alleged commercial activity did not take place outside the United States as required by Clause 3.

**B.      Plaintiffs' claims are barred by 28 U.S.C. 1605(a)(5)(B).**

Plaintiffs argue that Rwanda's alleged stalking, harassment, and surveillance of Paul Rusesabagina does not qualify for the § 1605(a)(5)(B) exception because "[i]ntentional infliction of emotional distress, intrusion upon seclusion, and digital espionage are not among the exempted torts listed in § 1605(a)(5)(B)." Opp. Br. 32.[4] Plaintiffs' argument is meritless because the manner in which Plaintiffs have styled their claims does not determine whether Section 1605(a)(5)(B) applies. Instead, the relevant inquiry is whether the *conduct* on which a plaintiff's claims are based derives from allegations of misrepresentation, deceit, abuse of process or malicious prosecution. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003). That Plaintiffs have characterized Rwanda's alleged conduct here as an "unlawful campaign to stalk, harass, and illegally surveil Plaintiffs" (Opp. Br. 32) in order to evade Section 1605(a)(5)(B)'s application is does not control the analysis. Critically, Plaintiffs' own allegations show that the conduct alleged in support of their intentional infliction of emotional distress, intrusion upon seclusion and digital espionage claims arises out of Rwanda's alleged abuse of its legal process to arrest, prosecute, and incarcerate Paul Rusesabagina, a wanted terrorist. Am. Compl. ¶¶ 1, 7, 21, 236, 252, 257, 260. As such, these claims are barred by Section 1605(a)(5)(B). Mov. Br. at 25-26.

---

[4] Notably, Plaintiffs do not even attempt to argue that Section 1605(a)(5)(B) does not categorically bar their claims to the extent they arise out of Constantin Niyomwungere's alleged fraud. Here, all of Plaintiffs' claims arise out of their allegations that Niyomwungere fraudulently induced Paul Rusesabagina to travel to Rwanda, which ultimately resulted in Paul Rusesabagina's eventual arrest, prosecution and incarceration. As these claims all arise out of the alleged fraud, Section 1605(a)(5)(B) precludes the assertion of these claims against Rwanda. Moving Br. 25-26, D.E. 18.

### C.   Plaintiffs' admit that their claims do not satisfy the non-commercial torts exception.

Plaintiffs concede that in order for the non-commercial tort exception to apply, the entire tort – "including not only the injury but also the act precipitating that injury—must occur in the United States." *Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017); Opp. Br. 25–26 & n.9. Plaintiffs' concession that the non-commercial tort exception applies only where the entire tort occurs in the United States is fatal to all of the claims asserted in the Amended Complaint because they are all based on tortious conduct or injury that did not occur entirely within the United States. Indeed, Plaintiff Paul Rusesabagina has abandoned his assault and battery claims by explicitly admitting that this Court does not have subject matter jurisdiction over them, plainly because they are based on tortious conduct and injury that allegedly occurred outside the United States. Opp. Br. 10 n.3; Am. Compl. ¶¶ 241-250. For the same reason, *Doe* dooms Plaintiffs' remaining claims that are based on conduct that occurred abroad.

### 1.   Counts I and II allege tortious conduct that did not occur entirely within the United States.

First, and as argued more fully in Rwanda's Moving Brief (D.E. 18), Plaintiff Paul Rusesabagina's claim for  fraud (Count I) and Plaintiffs' claim for civil conspiracy to lure Paul Rusesabagina to Rwanda based on that fraud (Count II), involve precisely the type of "transnational" conduct that the Court of Appeals held does not occur entirely within the United States. Plaintiffs' fraud and civil conspiracy claims are based on allegedly tortious conduct that occurred *in Rwanda*—an alleged conspiracy to fraudulently invite Paul Rusesabagina to speak in Burundi in order to arrest, prosecute, convict and incarcerate Plaintiff, Paul Rusesabagina, *in Rwanda*. Am. Compl. ¶¶ 133-151; Ugirashebuja Decl. ¶ 19. This conduct did not occur in the

United States and therefore does not qualify for the non-commercial torts exception under *Doe*. *Doe*, 851 F.3d at 10.

> ### 2.  Count IV alleges tortious conduct that did not occur entirely within the United States.

As with their abandoned claims for assault (Count V) and battery (Count VI), Plaintiff Paul Rusesabagina's claim for false imprisonment (Count IV) is based entirely on tortious conduct and injury that occurred outside the United States (specifically, in Rwanda and Dubai – not in the United States), and likewise does not meet the non-commercial tort exception on this basis. Am. Compl. ¶¶ 12, 151, 166, 239, 247; *Doe*, 851 F.3d at 10; Ugirashebuja Decl. ¶ 19.

> ### 3.  Counts III, VII, and VIII allege tortious conduct that did not occur entirely within the United States.

Plaintiffs' claims for solatium (Count III), intentional infliction of emotional distress ("IIED") (Count VII), and loss of consortium (Count VIII) also fail to satisfy the non-commercial tort exception because those claims allege that Plaintiffs have suffered emotional harm in the United States based on tortious conduct that allegedly occurred entirely in Rwanda. The Amended Complaint alleges that Rwanda "kidnapped, attacked, tortured, and slandered Paul Rusesabagina, subjected him to an internationally-covered sham trial, convicted him of false charges, and sentenced him to life in prison for these false charges" (Am. Compl. ¶ 252); caused Plaintiffs to fear that "their father has been tortured and that he will be murdered" in Rwanda where he is imprisoned (*Id*. ¶ 236); and caused Paul Rusesabagina's wife, Taciana Mukangamije, to suffer "loss of consortium, loss of society, affection, assistance, and conjugal fellowship" as a result of Paul Rusesabagina's detention in Rwanda. *Id*. ¶¶ 257-258. None of this alleged tortious conduct occurred in the United States, and therefore Plaintiffs claims for solatium and loss of consortium cannot satisfy the non-commercial torts exception. *Doe*, 851 F.3d at 10.

Plaintiffs also allege that Rwandan officials have harassed them online. Opp. Br. 44. But the alleged online harassment cannot serve as the foundation for a claim of IIED against Rwanda because Plaintiffs do not allege that the harassment occurred entirely within the United States since it was allegedly committed by Rwandan officials *in Rwanda*. Am. Compl. ¶¶ 221-222. *Doe*, 851 F.3d at 10. Moreover, Plaintiffs' allegations that they were harassed online by Rwandan officials within the United States are insufficient to state a claim for IIED as a matter of law, as argued *infra* at Section D.3; Opp. Br. 44.

> ### 4. Counts IX and X allege tortious conduct that did not occur entirely within the United States.

Plaintiffs Paul Rusesabagina and Carine Kanimba's claims for violations of the Wiretap Act (Count X) and intrusion upon seclusion based upon those alleged violations (Count IX) also fail under *Doe* because the Amended Complaint admits that any electronic surveillance allegedly began with the infection of those Plaintiffs' electronic devices occurred in Belgium, not the United States. Am. Compl. ¶¶ 95, 102-104, 159, 165. *Doe* v, 851 F.3d at 10 ("Ethiopia's placement of the FinSpy virus on Kidane's computer, although completed in the United States when Kidane opened the infected e-mail attachment, began outside the United States. It thus cannot be said that the entire tort occurred in the United States."). Therefore, Plaintiffs' own factual allegations prove that the alleged violations of the Wiretap Act and any related subsequent intrusion upon seclusion based upon those violations did not occur entirely within the United States.

> ### D. Plaintiffs fail to state a claim for violations of the Wiretap Act, intrusion upon seclusion, IIED, and civil conspiracy based on conduct that allegedly occurred entirely within the United States.

In an effort to escape *Doe*'s preclusive effect on their claims, Plaintiffs argue that the Amended Complaint sufficiently alleges the claims of violations of the Wiretap Act, intrusion

upon seclusion, IIED, civil conspiracy based only on Rwanda's conduct that allegedly occurred entirely within the United States "without reference to any action undertaken abroad." Opp. Br. 27. But Plaintiffs' factual allegations in support of these claims are entirely conclusory and insufficient as a matter of law to meet Fed. R. Civ. P. 8's pleading requirements or to withstand Rwanda's motion to dismiss under Rule 12(b)(6) for failure to state a claim. As such, these claims must be dismissed.

**1.     The Amended Complaint fails to state a claim for violations of the Wiretap Act against Rwanda.**

The Amended Complaint fails to state a claim for violations of the Wiretap Act in the United States or elsewhere because the Wiretap Act (18 U.S.C. § 2510, *et seq.*) "does not create a civil cause of action against a foreign state for interceptions of wire, oral, or electronic communications in violation of section 2511(1)." *Doe v. Fed. Democratic Republic of Ethiopia ("Doe I")*, 189 F.Supp.3d 6, 15 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017).[5] As a result, Plaintiffs' allegations that Rwanda violated the Wiretap Act entirely within the United States or anywhere fail to state a claim upon which relief may be granted.

**2.     The Amended Complaint fails to state a claim for intrusion upon seclusion based on Rwanda's alleged conduct within the United States.**

Plaintiffs' Amended Complaint fails to state a claim for intrusion upon seclusion based on Rwanda's alleged conduct that purportedly occurred entirely within the United States because the Amended Complaint lacks any plausible factual allegations that Rwanda violated Plaintiffs' privacy in the United States in a manner that would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (claim for intrusion upon seclusion

---

[5] *Hyewoong Yoon v. Seyeon Lee*, 433 F.Supp.3d 18, 24-25 (D. Mass. 2019) on which Plaintiffs rely for the proposition that a wiretap claim satisfies the commercial activities exception concerned violations of a Massachusetts statute that is not at issue in this case.

requires "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."); *see Kennedy v. Berkel & Co. Contractors*, No. 17-CV-1248, 2020 WL 4903896, at *8 (D.D.C. Aug. 20, 2020) (listing elements). Plaintiffs allege that the entire tort of intrusion upon seclusion occurred in the United States because "Rwanda has tracked and stalked Paul Rusesabagina and his family members while they resided in the United States through agents such as Michelle Martin or members of the Rwandan diaspora," including Moses Rudasunikwa. Am. Compl. ¶ 261; *see also, e.g.,* Opp. Br. 28, 43.[6] However, the Amended Complaint is devoid of factual allegations to support these claims, rendering them facially implausible. *Democratic Nat'l Comm.*, 392 F.Supp.3d at 419 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted). And no matter how many times Plaintiffs allege that Rwanda has conceded these inadequate allegations, Rwanda does not concede any alleged fact or argument set forth by Plaintiffs.

Plaintiffs base their intrusion upon seclusion claim against Rwanda on the allegations that Michelle Martin allegedly:

- was introduced to Paul Rusesabagina's Hotel Rwanda Rusesabagina Foundation by a mutual acquaintance and subsequently volunteered at the Foundation in 2010 (Am. Compl. ¶¶ 67-68);

- "rarely interacted" and "did not spend much time" with Paul Rusesabagina (Am. Compl. ¶¶ 82-83);

---

[6] Plaintiffs argue that the Rwandan embassy electronically surveilled Paul Rusesabagina in the United States. Opp. Br. 27, 29. But the Amended Complaint admits that this alleged electronic surveillance did not occur entirely within the United States under *Doe* because Plaintiff Paul Rusesabagina and Carine Kanimba's devices were allegedly infected with spyware abroad in Belgium. Am. Compl. ¶¶ 102-104. Moreover, the Wiretap Act does not provide a private cause of action against a foreign state. *Doe I*, 189 F.Supp.3d at 15.

- accessed non-party Providence Rubingisa's email without his permission (Am. Compl. ¶ 72);

- worked for the Government of Rwanda as a researcher (Am. Compl. ¶¶ 79-81);

- met with Rwandan Government officials as well as members of the Rwandan diaspora (Am. Compl. ¶ 74);

- Spoke to the Federal Bureau of Investigation regarding Paul Rusesabagina (Am. Compl. ¶ 89);

- Coordinated her activities with the Rwandan Embassy in Washington, D.C. (Am. Compl. ¶ 85); and

- testified at Paul Rusesabagina's public trial. Am. Compl. ¶¶ 83, 91.

Plaintiffs also base their intrusion upon seclusion claim against Rwanda on the allegations that Moses Rudasunikwa allegedly:

- "has a community-wide reputation of strong pro-Kagame support" (Am. Compl. ¶ 110);

- Met Plaintiff, Paul Rusesabagina in 2007 (Am. Compl. ¶ 113);[7]

- Discussed Plaintiff Paul Rusesabagina with the Rwandan Embassy (Am. Compl. ¶ 114);

- Met with the Rwandan ambassador to the United States and enabled his friends to sit next to the ambassador at a public event (Am. Compl. ¶¶ 114-115);

- attended a public speech by Paul Rusesabagina in 2020 (Am. Compl. ¶ 119);

- Coordinated his activities with the Rwandan Embassy in Washington, D.C. (Am. Compl. ¶ 114); and

- wrote letters to the organizers of public event opposing a planned 2020 speech by Paul Rusesabagina (Am. Compl. ¶¶ 119-120).

---

[7] Plaintiffs argue in their Opposition Brief that Moses Rudasunikwa has "stalked" Paul Rusesabagina since 2007. Opp. Br. 28; Am. Compl. ¶¶ 111, 113. However, the video interview in the Amended Complaint on which Plaintiffs rely in support of this allegation does not provide any factual basis for the allegation that Rudasunikwa stalked or harassed Paul Rusesabagina or otherwise intruded upon his or Plaintiffs' privacy or seclusion in any way.

None of Ms. Martin or Mr. Rudasunikwa's alleged conduct amounts to an intrusion of Paul Rusesabagina or any Plaintiffs' privacy as a matter of law because, even if Plaintiffs' allegations are accepted as true, none of this conduct is unlawful and Plaintiffs do not have a reasonable expectation of solitude or privacy with respect to the information allegedly gathered by Ms. Martin, the public events attended by Mr. Rudasunikwa, or meetings and interactions that are totally unrelated to Plaintiffs. *Wolf v. Regardie*, 553 A.2d 1213, 1218 (D.C. 1989); *Wolfson v. Lewis*, 924 F.Supp.1413, 1419–20 (E.D. Pa. 1996) (citing Restatement (Second) of Torts § 652B, cmt. c ("This tort generally does not apply to matters which occur in a public place or a place otherwise open to the public eye."). Absent factual allegations to support their claims of unlawful stalking, harassment, and spying by Rwanda in the United States, Plaintiffs' allegations are nothing more than bare legal conclusions that are insufficient to state a claim. *Democratic Nat'l Comm.*, 392 F.Supp.3d at 419, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("While courts should construe the factual allegations in the light most favorable to the plaintiff, 'the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.'").[8]

### 3. The Amended Complaint fails to state a claim for IIED based on Rwanda's alleged conduct within the United States.

The Amended Complaint fails to state a claim for IIED based on conduct that occurred entirely within the United States because Plaintiffs fail to allege any extreme or reckless conduct

---

[8] To the extent that Plaintiffs rely on the Amended Complaint's allegation that Rwanda has "tracked and stalked Paul Rusesabagina and his family while they resided in the United States" through unnamed "members of the Rwanda diaspora" and the "Rwandan Community Abroad" (Am. Compl. ¶¶111-112, 261), such allegations are insufficient as a matter of law to plead a claim for intrusion upon seclusion because they do not provide Rwanda with sufficient notice of the alleged conduct at issue, or even the persons involved, and are nothing more than bare legal conclusions that should not be credited. *Democratic Nat'l Comm.*, 392 F.Supp.3d at 419, *quoting Ashcroft v. Iqbal*, 556 U.S. at 678 .

by or of Rwanda. To adequately plead a claim for IIED, Plaintiff must allege sufficient facts to show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Smith v. United States*, 121 F.Supp.3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016) (citation omitted). Here, Plaintiffs argue that Rwanda harassed and stalked Plaintiffs Anaïse Kanimba and Taciana Mukangamije when, according to the Amended Complaint, a Rwandan official from Rwanda's U.S. Embassy allegedly joined an online Zoom lecture about Paul Rusesabagina's prosecution held by St. Mary's School of Law without permission. Am. Compl. ¶¶ 121-125. The official allegedly said nothing and eventually left the Zoom lecture. *Id*. These allegations fail to state a claim for IIED because they do not contain any facts to support the allegation that Rwanda did anything extreme or outrageous. Liability for IIED "'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;' it is imposed only when the conduct goes 'beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Bozgoz v. James*, Civ. A. No. 19-0239, 2020 WL 4732085, at *15 (D.D.C. Aug. 14, 2020) (quoting Restatement (Second) of Torts § 46, cmt. d (Am. Law Inst. 1975)). Here, Plaintiffs do not even allege that the Rwandan official even spoke to anyone on the Zoom forum. Merely joining a Zoom forum attended by members of the public without more is not extreme or outrageous conduct.

### 4.    The Amended Complaint fails to state a claim for civil conspiracy based on Rwanda's alleged conduct within the United States.

Plaintiffs argue that there are two "conspiracies for which Rwanda bears liability: the conspiracy to harass, stalk, illegally surveil, and invade Paul's privacy in the United States and the conspiracy to offer a fake [speech invitation] in Burundi to kidnap him." Opp. Br. 40. The second conspiracy alleged does not satisfy the non-commercial tort exception because it

allegedly occurred abroad, in Rwanda. *Supra* at C.1. The first conspiracy fails to state a claim as a matter of law because Plaintiffs fail to allege facts to support any plausible inference that Rwanda was part of a civil conspiracy to unlawfully harass, track or stalk Paul Rusesabagina in the United States.

> A conspiracy claim requires Plaintiffs to allege:
>
> (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (citation omitted). Plaintiffs must sufficiently allege facts to support an agreement to engage in an unlawful activity: bald assertions of a conspiracy based on nothing more than allegations of lawful conduct should be dismissed. *Chisum v. Colvin*, 276 F.Supp.2d 1, 4 (D.D.C. 2003) ("the amended complaint largely alleges conduct that on its face appears entirely lawful"). "[D]ismissal is proper when a conspiracy allegation 'd[oes] not plausibly suggest an illicit accord because it [i]s not only compatible with, but indeed [i]s more likely explained by, lawful, unchoreographed free-market behavior.'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012) (citation omitted); *De La Fuente v. DNC Servs. Corp.*, No. CV 18-336 (RC), 2019 WL 1778948, at *9 (D.D.C. Apr. 23, 2019)) ("a plaintiff must 'set forth more than just conclusory allegations of an agreement'") (citation omitted).

Here, Plaintiffs allege that Rwanda conspired to unlawfully track, stalk and harass Paul Rusesabagina through its agents Michelle Martin, Moses Rudasunikwa, and other unnamed members of the "Rwandan diaspora." Am. Compl. ¶ 261. But none of the facts alleged in support of this purported conspiracy support the inference that Rwanda or its purported agents agreed to or ever engaged in any unlawful conduct. None of Martin or Rudasunikwa's alleged conduct is

22

even tortious, and Plaintiffs fail to adequately allege any specific unlawful conduct by members of "the Rwandan Community Abroad" in the United States. Nor do Plaintiffs sufficiently allege an agreement to engage in any unlawful activity because Plaintiffs conclusory allegations are more likely explained by "unchoreographed free-market behavior." *RSM Prod. Corp.*, 682 F.3d at 1052; *De La Fuente,* 2019 WL 1778948, at \*9. Plaintiffs allege that Ms. Martin was hired to lawfully conduct research for Rwanda in the United States and fail to allege any facts to even support an agreement or any agency relationship between Rwanda Mr. Rudasunikwa. Am. Compl. ¶¶ 109-120; Ugirashebuja Decl. ¶ 19. As such, the Amended Complaint fails to state a claim for conspiracy based on Rwanda's alleged conduct through its purported agents in the United States.

### E.    Rwanda's law enforcement conduct is a discretionary function for which Rwanda is afforded sovereign immunity.

Plaintiffs argue that Rwanda's law enforcement conduct does not qualify for immunity under the discretionary function exception because Rwanda had no authority to exercise surveillance functions within the United States and its surveillance activities are not those that the discretionary function exception was designed to shield. Opp. Br. 31. This argument is meritless for three reasons.

First, the FSIA's discretionary function exception applies—and sovereign immunity is preserved—if two conditions are met: (1) "there must be no 'federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow'"; and (2) "the employee's exercise of discretion must be "the kind that the discretionary function exception was designed to shield"—that is, "based on considerations of public policy." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 38 (D.C. Cir. 2021), *pet. for cert. filed* (U.S. Jan. 18, 2022), *quoting Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). A foreign state's violation of a local

law is insufficient to strip the state of immunity under the discretionary function exception. *Usoyan*, 6 F.4th at 43 ("We conclude that Turkey's immunity is not removed by the plaintiffs' allegations that it violated local law."). Instead, the exception is only defeated where "a *specific* directive exists" in the local law in question that prescribes a course of conduct which eliminates the exercise of discretion—laws that merely restrict certain conduct (in *Usoyan*, a criminal statute prohibiting assault) are insufficiently specific to strip a sovereign of immunity under the discretionary function exception. *Id.* (emphasis in original).

Plaintiffs argue here that with respect to Rwanda's law enforcement's alleged surveillance of Paul Rusesabagina in the United States, this conduct does not satisfy the first *Berkovitz* condition because that surveillance is unlawful. Opp. Br. 30-31. But even assuming such surveillance is unlawful, the mere fact that a foreign state acted in violation of local law is insufficient to strip sovereign immunity under the discretionary function exception, and U.S. law does not specifically prescribe a particular course of conduct regarding the alleged surveillance of a foreign national by a foreign sovereign. *See Broidy Cap. Mgmt., LLC*, 982 F.3d at 592. In fact, the Wiretap Act, on which Plaintiffs rely and which prohibits intercepting electronic communications does not even apply to foreign states. *Doe I*, 189 F.Supp.3d at 15.

Second, and as argued more fully in Rwanda's Moving Brief, the alleged surveillance satisfies the second prong of the discretionary function exception because decisions regarding how to investigate and whom to investigate are considered discretionary conduct and are precisely the kind of decisions the exception was designed to shield. *Arteaga-Ruiz v. United States*, 164 F.Supp.3d 1198, 1203 (D. Idaho 2016), *aff'd*, 705 F. App'x 597 (9th Cir. 2017); *Martinez v. United States*, 587 F.Supp.2d 245, 248 (D.D.C. 2008); *Hilsenrath v. Swiss Confederation*, No. C 07-2782, 2007 WL 3119833, at *5 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F.

App'x 314 (9th Cir. 2010). Indeed, the decision to utilize surveillance to assist in the capture and prosecution of a wanted terrorist is a core example of the type of conduct that falls within the discretionary function exception.

Finally, a plaintiff's allegations that a defendant has engaged in conduct that vitiates discretionary function immunity must be "plausible" in order to defeat that immunity. *Usoyan*, 6 F.4th at 43 (citing *Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016)). Here, unlike the plaintiffs' "plausible" allegations in *Usoyan* that Turkish security operatives had violated D.C. law by attacking peaceful protestors in Washington, D.C., Plaintiffs' allegations that Rwanda has unlawfully stalked or harassed Paul Rusesabagina in the United States are implausible because they are bereft of any facts to support the allegations that Rwandan law enforcement personnel engaged in *any* conduct in the United States, let alone the unlawful conduct of stalking and harassment within the United States. *Supra* at D.2.-4.; *Usoyan*, 6 F.4th at 43 (citing *Loumiet*, 828 F.3d at 946 (plaintiffs must "plausibly allege[]" government violated legal mandate)).

## CONCLUSION

For the foregoing reasons, and those stated in its Moving Brief, Rwanda respectfully requests that the Court enter an order granting this Motion to Dismiss the Amended Complaint with prejudice, and dismissing this action as to Rwanda.

Dated: August 29, 2022

ARENTFOX SCHIFF LLP

By: */s/ Michael S. Cryan*
Michael S. Cryan
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000

25

Facsimile: (202) 857-6395

*Attorneys for Defendant*
*The Republic of Rwanda*