UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*, <br><br> Plaintiffs, <br><br> -against- <br><br> THE REPUBLIC OF RWANDA, *et al.*, <br><br> Defendants. | Civil Action No.: 22-00469 (RJL) <br><br><br> **ORAL ARGUMENT REQUESTED** |

**HIS EXCELLENCY PRESIDENT PAUL KAGAME, PRESIDENT OF THE REPUBLIC OF RWANDA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................... 1

    A.    The Amended Complaint Must Be Dismissed as to President Kagame Under the Doctrine of Head-of-State Immunity ....................................................... 1

    B.    The Amended Complaint Must Be Dismissed Due to the Lack of Personal Jurisdiction over President Kagame ........................................................................ 4

    C.    Plaintiffs' Own Return of Service Proves They Never Effectuated Service of Process on President Kagame .............................................................................. 6

    D.    Joinder in Reply filed by the Republic of Rwanda .................................................. 7

    E.    Plaintiffs' Improper, Incorrect and Unsupported Reference to Amending the Complaint Further Should Be Disregarded and Rejected ................................. 7

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abiola v. Abubakar*,
 267 F.Supp.2d 907 (N.D. Ill. 2003), *aff'd*, 408 F.23d 877 (7th Cir. 2005) ..............................2

*Ali v. Mid-Atlantic Settlement Servs., Inc.*,
 233 F.R.D. 32 (D.D.C. 2006)..........................................................................................6

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
 813 F.3d 98 (2d Cir. 2016)..............................................................................................5

*AutoOpt Networks, Inc. v. GTL, USA Inc.*,
 No. 3:14–CV–1252–D, 2015 WL 407894 (N.D. Tex. Jan. 30, 2015) .......................................7

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
 168 F.Supp.3d 1 (D.D.C. 2016) .....................................................................................5

*Cabrera v. Black & Veatch Special Projects Corporations*,
 No. 19-cv-3833, 2021 WL 3508091 (D.D.C. July 30, 2021) .......................................5

*Cerner Middle E. Ltd. v. Al-Dhaheri*,
 No. 16-11984, 2017 WL 776409 (Feb. 28, 2017) .......................................................7

*Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*,
 640 F.3d 3692 (D.C. Cir. 2011) ....................................................................................4

*Day v. Cornèr Bank (Overseas) Ltd.*,
 789 F.Supp.2d 136 (D.D.C. 2011) ...............................................................................7

*Dyson v. Dutko Ragen Homes & Invs.*, No. 21-cv-02280 (APM), 2022 WL
 1294484 (D.D.C. Apr. 27, 2022) ..................................................................................4

*El-Hadad v. Embassy of United Arab Emirates*,
 69 F.Supp.2d 69 (D.D.C. 1999), *rev'd in part on other grounds*, 216 F.3d 29
 (D.C. Cir. 2000) ............................................................................................................2

*Habyarimana v. Kagame*,
 821 F.Supp.2d 1244 (W.D. Okla. 2011), *aff'd*, 696 F.3d 1029 (10th Cir. 2012)
 (Exh. 3), *cert. denied*, 568 U.S. 1232 (2013) (Exh. 4 to Motion)..............................2

*Habyarimana v. Kagame*,
 No. 4:12–cv–00191, 2013 WL 12284605 (S.D. Iowa Feb. 6, 2013), *appeal
 dismissed*, No. 13-1517 (8th Cir. May 24, 2013) (Exh. 6 to Motion) .....................2

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F.Supp.2d 119 (D.D.C. 2004) ............................................................................. 5

*Jungquist v. Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997) ................................................................................. 4

*Martinez v. White*,
    Nos. C 06-1595, C 06-2322, 2006 WL 2792874 (N.D. Cal. Sept. 28, 2006) ......... 6, 7

*Nikwei v. Ross School of Aviation, Inc.*,
    822 F.2d 939 (10th Cir. 1987) ................................................................................... 6

*Republic of Mexico v. Hoffman*,
    324 U.S. 30 (1945) ..................................................................................................... 1

*Ex parte Republic of Peru*,
    318 U.S. 578 (1943) ................................................................................................... 1

*\*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ................................................................................................... 1

*Stafford v. Grifols Int'l S.A.*,
    No. 1:18-CV-321, 2019 WL 3521957 (N.D. Ga. Feb. 25, 2019) .............................. 7

*United States v. Noriega*,
    117 F.3d 1206 (11th Cir. 1997) ................................................................................. 1

*In re Vitamins Antitrust Litig.*,
    270 F.Supp.2d 15 (D.D.C. 2003) ............................................................................... 5

**Other Authorities**

Executive Branch, https://www.cia.gov/the-world-
    factbook/countries/rwanda/summaries (last visited September 29, 2022) ................ 2

https://www.state.gov/secretary-antony-j-blinken-and-rwandan-foreign-minister-
    vincent-biruta-at-a-joint-press-availability/ (last accessed Sept. 20, 2022) ............... 3

https://www.state.gov/the-united-states-and-rwanda-strategic-partners/ (last
    accessed Sept. 20, 2022) ........................................................................................... 3

His Excellency President Paul Kagame ("President Kagame"), President of the Republic of Rwanda ("Rwanda"), by and through his undersigned counsel, submits this Reply Memorandum of Points and Authorities in Further Support of His Motion to Dismiss Plaintiff's Amended Complaint [D.E. 17, "Am. Compl."] pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby states as follows:

## ARGUMENT

### A. The Amended Complaint Must Be Dismissed as to President Kagame Under the Doctrine of Head-of-State Immunity.

There is no actual dispute that President Kagame is the sitting head of state of Rwanda, which Plaintiffs have repeatedly acknowledged. *See* Pls.' Resp. to Def. President Paul Kagame's Mot. to Dismiss the Am. Compl. [D.E. 35] (the "Response") at 1; Am. Compl. ¶ 30 ("Defendant Paul Kagame is the President of Rwanda."). As he has not waived that immunity, he is therefore absolutely immune from suit under the head of state doctrine.

Plaintiffs argued that this Court should not decide for itself whether the requisites for head of state immunity exist with respect to President Kagame. *See* Response at 10. Plaintiffs' argument is directly contradicted by the binding holding of the United States Supreme Court in *Samantar v. Yousuf*, 560 U.S. 305, 311 (2010). The Supreme Court stated that in the absence of a suggestion of immunity by the Executive Branch, a court may "decide for itself whether all the requisites for such immunity existed." *Id.* (quoting *Ex parte Republic of Peru*, 318 U.S. 578, 587 (1943)); *see also Republic of Mexico v. Hoffman*, 324 U.S. 30, 34–35 (1945).

The cases Plaintiffs cited in making their faulty argument undermine, rather than support, their position. The defendant (Manuel Noriega) at issue in *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997), was never recognized as Panama's legitimate, constitutional ruler by the United States government; indeed, by pursuing Noriega's capture and criminal

1

prosecution, the Executive Branch manifested its clear sentiment that Noriega should be denied head-of-state immunity. The subsequently-reversed decision in *El-Hadad v. Embassy of United Arab Emirates*, 69 F.Supp.2d 69, 71 (D.D.C. 1999), *rev'd in part on other grounds*, 216 F.3d 29 (D.C. Cir. 2000), did not involve any alleged head of state.

In decisions such as one from the Northern District of Illinois in *Abiola v. Abubakar*, 267 F.Supp.2d 907, 915–16 (N.D. Ill. 2003), *aff'd*, 408 F.3d 877 (7th Cir. 2005), the Court applied this rule and decided the issue of head of state immunity even though a suggestion of immunity had not been filed in that case. Likewise, in a decision involving President Kagame, the Southern District of Iowa decided the issue of head of state immunity and recognized President Kagame as the head of state of Rwanda, even though a suggestion of immunity had not been filed by the United States Department of State in that case. *See* Exh. 5 to Motion, *Habyarimana v. Kagame*, No. 12–cv–00191, 2013 WL 12284605, at *3 (S.D. Iowa Feb. 6, 2013) ("*Kagame III*"), *appeal dismissed*, No. 13-1517 (8th Cir. May 24, 2013) (Exh. 6 to Motion).

Moreover, the United States Department of State has filed a formal suggestion of immunity as to President Kagame. *See* Exh. 7 to Motion, Suggestion of Immunity filed in Exh. 2 to Motion, *Habyarimana v. Kagame*, 821 F.Supp.2d 1244, 1248 (W.D. Okla. 2011) ("*Kagame I*") ("The Court takes notice that the defendant [President Kagame] is recognized to be the current president and head of state of the Republic of Rwanda."), *aff'd*, 696 F.3d 1029 (10th Cir. 2012) ("*Kagame II*") (Exh. 3), *cert. denied*, 568 U.S. 1232 (2013) (Exh. 4 to Motion). The requisites of immunity are indisputably satisfied here, and this Court should take judicial notice of the fact that President Kagame is the incumbent head of state of Rwanda and is therefore entitled to immunity. *See* Exh. 1 to Motion, The [CIA] World Factbook – Rwanda, § Executive Branch, https://www.cia.gov/the-world-factbook/countries/rwanda/summaries, (last visited

2

September 29, 2022) ("World Factbook") (recognizing President Kagame as the current "chief of state" of Rwanda).

Indeed, the Executive Branch plainly recognizes President Kagame as the official head of state of Rwanda. For example, on August 11, 2022 (after the current Motion was filed but before Plaintiffs filed their Response), Secretary of State Anthony Blinken and his delegation traveled to Rwanda and personally met with His Excellency President Kagame in Rwanda.[1] President Kagame welcomed Secretary Blinken for their discussions on a "wide range of issues,"[2] including holding "productive discussions"[3] on the strategic "partnership" between the United States and Rwanda.[4] In fact, further accentuating the fundamentally diplomatic nature of this case, Secretary Blinken stated in his public remarks that he had "raised the case of Paul Rusesabagina, who is a lawful permanent resident of the United States, and underscored our concerns about the lack of fair trial guarantees provided to him."[5] Notably, Secretary Blinken reiterated that the United States' concerns were with "fair trial guarantees," not with the legitimacy of Paul Rusesabagina's arrest on the underlying charges against him or his ultimate conviction.[6] In light of the direct recognition of President Kagame as the head of state, there is no legitimate dispute that this requisite is met.

As Plaintiffs do not allege that President Kagame has waived head of state immunity, both prerequisites for that immunity are satisfied.

---

[1] https://www.state.gov/secretary-antony-j-blinken-and-rwandan-foreign-minister-vincent-biruta-at-a-joint-press-availability/ (last accessed Sept. 20, 2022).
[2] Id.
[3] Id.
[4] https://www.state.gov/the-united-states-and-rwanda-strategic-partners/ (last accessed Sept. 20, 2022).
[5] https://www.state.gov/secretary-antony-j-blinken-and-rwandan-foreign-minister-vincent-biruta-at-a-joint-press-availability/ (last accessed Sept. 20, 2022).
[6] Id.

Finally, Plaintiffs argued that their allegations that President Kagame conspired to kidnap a U.S. permanent resident compel this Court to disregard President Kagame's immunity. But if a plaintiff's unproven and unsupported allegations at the pleading stage of a lawsuit could overcome head of state immunity, it would destroy that immunity altogether. Head of state immunity exists to prevent foreign heads of state from being drawn into litigation in United States courts. As explained in the Motion (at 5), immunity "provides protection from suit and not merely a defense to liability." *Jungquist v. Al Nahyan*, 115 F.3d 1020, 1027–28 (D.C. Cir. 1997). This action must not proceed as against President Kagame.

### B. The Amended Complaint Must Be Dismissed Due to the Lack of Personal Jurisdiction over President Kagame.

Plaintiffs' entire case for personal jurisdiction rests on allegations about nonparties – not any contact attributable to President Kagame. On this record, neither general nor specific jurisdiction exists as to President Kagame.

Plaintiffs' bare allegations of a purported conspiracy do not satisfy the heightened pleading requirements necessary to plead conspiracy jurisdiction under well-settled precedent. *Dyson v. Dutko Ragen Homes & Invs.*, No. 21-cv-02280 (APM), 2022 WL 1294484, at *5 (D.D.C. Apr. 27, 2022) (quoting *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) ("A plaintiff must 'plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy' in order to establish conspiracy jurisdiction over a defendant.")). Here, Plaintiffs do not plead any particular unlawful actions by President Kagame—or even any unlawful actions taken at his direction—in the United States in connection with the alleged plot to track and lure Paul Rusesabagina to Rwanda. Indeed, as argued more fully in Rwanda's reply brief in support of its motion to dismiss, none of the specific conduct alleged in connection with the purported

4

conspiracy to track, harass, and monitor Paul Rusesabagina and his family in the United States by Rwanda's purported agents, Michelle Martin and Moses Rudisinkwa, is even unlawful (D.E. 32 at 22-23).

Furthermore, Plaintiffs cited utterly distinguishable cases on the issue of personal jurisdiction. The facts at issue in *Bazarian International Financial Associates, L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F.Supp.3d 1, 12 (D.D.C. 2016), involved a forum selection clause applicable as to the defendant contracting party and its alter ego affiliates. The jurisdictional facts in *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98 (2d Cir. 2016), were not ruled on in that decision, as the Second Circuit dismissed the appeal and declined to exercise appellate jurisdiction over the issue of personal jurisdiction (notwithstanding Plaintiffs' implication (Response at 32) to the contrary). The facts in *Jung v. Ass'n of American Medical Colleges*, 300 F.Supp.2d 119, 134 (D.D.C. 2004), failed to demonstrate that certain organizations (e.g., ABMS and the CMSS) participated in the price fixing conspiracy and thus their motions to dismiss for lack of personal jurisdiction were granted.[7] The facts in *In re Vitamins Antitrust Litigation*, 270 F.Supp.2d 15, 32–33 (D.D.C. 2003), showed the defendants directed price fixing conduct at the forum. The facts in *Cabrera v. Black & Veatch Special Projects Corporations*, No. 19-cv-3833, 2021 WL 3508091, at *13–14 (D.D.C. July 30, 2021), supported a finding of personal jurisdiction over a parent company on the basis of its U.S.-based subsidiary's contacts, where the subsidiary was a shell company set up

---

[7] Although the Court in *Jung* denied certain defendants' motions to dismiss for lack of personal jurisdiction, it did so because those defendants *actually admitted* their participation in the alleged conspiracy at issue. *Jung*, 300 F. Supp. 2d at 142–43 ("The Court therefore concludes that the fifteen moving institutional defendants who themselves acknowledge that they took part in the Match Program are subject to the jurisdiction of this Court under the conspiracy theory of jurisdiction."). Here, no defendant has admitted participation in Plaintiffs' purported conspiracy. In fact, the record contradicts Plaintiffs' allegations of conspiracy. Reply Decl. ¶¶ 8, 13, 18-23.

5

by the parent to bid for and obtain U.S. contracts that could only be awarded to American companies, the subsidiary acted as the parent's agent, and the parent reasonably should have expected to be sued in the United States over contracts in the subsidiary's name. None of these decisions remotely support the exercise of personal jurisdiction over a sitting foreign head of state concerning the arrest, prosecution, and punishment of a criminal under that foreign state's laws.

      C.      **Plaintiffs' Own Return of Service Proves They Never Effectuated Service of Process on President Kagame.**

Plaintiffs' alleged "proof" of service to President Kagame's "office" [D.E. 26-1] and not to any specific person authorized to accept service on his behalf—and certainly not to President Kagame himself—fails to evidence service of process upon President Kagame.

In an attempting to justify their plainly insufficient attempt at service of process upon President Kagame, Plaintiffs cited inapplicable cases. In *Ali v. Mid-Atlantic Settlement Services, Inc.*, 233 F.R.D. 32, 34 (D.D.C. 2006), service was effective where the process server personally delivered the process to the defendant's mother at the home in which the defendant lived; left the process with the doorman of building where the defendant resided; and left the process in the door of another apartment occupied by defendant, at defendant's express instruction – none of which circumstance is present in the case at bar. Here, process was purportedly received by an individual identified only as "Lenathe," not by President Kagame personally. D.E 26-1. In *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987), the defendant (or his wife) actually refused service – that circumstance is not present in the case at bar. In *Martinez v. White*, Nos. C 06-1595, C 06-2322, 2006 WL 2792874, at *1 (N.D. Cal. Sept. 28, 2006), the plaintiff attempted to make service by mail, by sending the summons to the Mexican jail where the defendant was incarcerated – that circumstance is not present in the case at bar, and in any

6

event the *Martinez* Court actually ordered the plaintiffs to make further service attempts via the defendant's counsel. *Id.* at *3. In *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F.Supp.2d 136, 146 (D.D.C. 2011), the service of process was proper, so the language Plaintiffs cited was dicta. In *Stafford v. Grifols Int'l S.A.*, No. 18-CV-321, 2019 WL 3521957, at *5, *9 (N.D. Ga. Feb. 25, 2019), the Court quashed the service of process and dismissed the action for lack of personal jurisdiction. In *Cerner Middle East Ltd. v. Al-Dhaheri*, Civ. A. No. 16-11984, 2017 WL 776409, at *1 n.1 (Feb. 28, 2017), the defendants agreed to hold in abeyance their motion to dismiss for lack of service of process. In *AutoOpt Networks, Inc. v. GTL USA, Inc.*, No. 14–CV–1252–D, 2015 WL 407894, at *4 (N.D. Tex. Jan. 30, 2015), the plaintiff was re-serving the defendants under the Hague Convention and thus the motion to dismiss was premature. In sum, Plaintiffs failed to establish service of process upon President Kagame.

### D.  Joinder in Reply filed by the Republic of Rwanda.

President Kagame, having previously joined in the Motion to Dismiss [D.E. 18] filed by Rwanda, also joins in the Reply Memorandum and Reply Declaration [D.E. 32] filed by Rwanda.

### E.  Plaintiffs' Improper, Incorrect and Unsupported Reference to Amending the Complaint Further Should Be Disregarded and Rejected.

Without filing a motion or offering any support for the request, Plaintiffs in their Response stated that if "the Court finds any of Plaintiffs' allegations insufficient, Plaintiffs request leave to amend . . . ." Response at 31. As an initial matter, Plaintiffs *already* amended [D.E. 17]. More fundamentally, it is dispositive that President Kagame is the incumbent President of Rwanda. No changes to any allegations in Plaintiffs' pleading can alter that fact. Leave to amend should be denied and this action should be dismissed as to President Kagame.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, President Kagame respectfully requests that the Court enter an order granting this Motion to Dismiss the Amended Complaint with prejudice, and dismissing this action as to President Kagame.

Dated: September 30, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael S. Cryan
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants
The Republic of Rwanda, &
His Excellency President Paul Kagame, President of the Republic of Rwanda*
