UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RUSESABAGINA, *et al.*,<br><br>　　　　Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF RWANDA, *et al.*,<br><br>　　　　Defendants. | Civil Action No.: 22-00469 (RJL)<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHNSTON BUSINGYE, JOSEPH NZABAMWITA AND JEANNOT RUHUNGA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1
    A.    Ambassador Busingye ................................................................................. 2
    B.    Major General Nzabamwita .......................................................................... 2
    C.    Colonel Ruhunga ........................................................................................ 3
ARGUMENT ........................................................................................................................ 3
    A.    The Amended Complaint Must Be Dismissed as to the Officials Under the Doctrine of Foreign Official Sovereign Immunity. ............................................... 3
    B.    The Amended Complaint Must Be Dismissed Due to the Lack of Personal Jurisdiction over the Officials. ...................................................................... 6
        1.    Plaintiffs Conceded There Is No Basis For General Personal Jurisdiction. ...................................................................................... 6
        2.    Plaintiffs Failed To Establish Jurisdictional Facts Constituting Specific Jurisdiction over Any of the Officials. ........................................... 6
    C.    Plaintiffs' Own Submissions Prove They Never Effectuated Service of Process on Any of the Officials. ..................................................................... 10
    D.    Joinder in Reply filed by the Republic of Rwanda. ............................................ 12
    E.    Plaintiffs' Improper, Incorrect and Unsupported Reference to Amending the Complaint Further Should Be Disregarded and Rejected. .............................. 12
CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. Mid-Atlantic Settlement Services, Inc.*,
   233 F.R.D. 32 (D.D.C. 2006) ............................................................................................... 11

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
   813 F.3d 98 (2d Cir. 2016) ..................................................................................................... 8

*AutoOpt Networks, Inc. v. GTL USA, Inc.*,
   No. 14–CV–1252–D, 2015 WL 407894 (N.D. Tex. Jan. 30, 2015) ...................................... 12

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
   168 F.Supp.3d 1 (D.D.C. 2016) .............................................................................................. 8

*Belhas v. Ya'alon*,
   515 F.3d 1279 (D.C. Cir. 2008) .............................................................................................. 4

*Cabrera v. Black & Veatch Special Projects Corporations*,
   No. 19-cv-3833, 2021 WL 3508091 (D.D.C. July 30, 2021) .................................................. 8

*Candido v. District of Columbia*,
   242 F.R.D. 151 (D.D.C. 2007) .............................................................................................. 12

*Cerner Middle East Ltd. v. Al-Dhaheri*,
   Civ. A. No. 16-11984, 2017 WL 776409 (Feb. 28, 2017) .................................................... 12

\**Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*,
   640 F.3d 369 (D.C. Cir. 2011) ................................................................................................ 7

*Crane v. N.Y. Zoological Soc'y*,
   894 F.2d 454 (D.C. Cir. 1990) ................................................................................................ 6

*Day v. Cornèr Bank (Overseas) Ltd.*,
   789 F.Supp.2d 136 (D.D.C. 2011) ........................................................................................ 12

\**Doe 1 v. Buratai*,
   318 F.Supp.3d 218 (D.D.C. 2018), *aff'd*, 792 F. App'x 6 (D.C. Cir. 2019) ...................... 4, 6

\**Dyson v. Dutko Ragen Homes & Invs.*,
   No. 21-cv-02280, 2022 WL 1294484 (D.D.C. Apr. 27, 2022) ............................................... 7

*Jung v. Ass'n of American Medical Colleges*,
   300 F.Supp.2d 119 (D.D.C. 2004) .......................................................................................... 8

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ............................................................................................................. 5

*Lewis v. Mutond*,
    918 F.3d 142 (D.C. Cir. 2019) ............................................................................................ 4

*Martinez v. White*,
    Nos. C 06-1595, C 06-2322, 2006 WL 2792874 (N.D. Cal. Sept. 28, 2006) .............. 11, 12

*Miley v. Hard Rock Hotel & Casino Punta Cana*,
    537 F.Supp.3d 1 (D.D.C. 2021) ........................................................................................... 7

*Nikwei v. Ross School of Aviation, Inc.*,
    822 F.2d 939 (10th Cir. 1987) ........................................................................................... 11

*Rishikof v. Mortada*,
    70 F.Supp.3d 8 (D.D.C. 2014) ............................................................................................ 4

*\*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ............................................................................................................ 5

*\*Second Amend. Found. v. U.S. Conf. of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ............................................................................................ 6

*Shibeshi v. United States*,
    932 F.Supp.2d 1 (D.D.C. 2013) ........................................................................................... 6

*Stafford v. Grifols Int'l S.A.*,
    No. 18-CV-321, 2019 WL 3521957 (N.D. Ga. Feb. 25, 2019) ......................................... 12

*Triple Up Ltd. v. Youku Tudou Inc.*,
    235 F.Supp.3d 15 (D.D.C. 2017), *aff'd*, No. 17-7033, 2018 WL 4440459
    (D.C. Cir. July 17, 2018) .................................................................................................... 6

*In re Vitamins Antitrust Litigation*,
    270 F.Supp.2d 15 (D.D.C. 2003) ......................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................. 6

Defendants Johnston Busingye, Joseph Nzabamwita and Jeannot Ruhunga, high government officials (collectively, the "Officials") of the Republic of Rwanda ("Rwanda"), by and through their undersigned counsel, submit this Reply Memorandum of Points and Authorities in Further Support of Their Motion to Dismiss Plaintiff's Amended Complaint [D.E. 17, "Am. Compl."] pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby state as follows:

## INTRODUCTION

The jurisdictional facts set forth in the Motion[1] and Reply Declaration of Emmanuel Ugirashebuja [D.E. 32-1] (the "Reply Decl.") are undisputed. Plaintiffs did not undertake any jurisdictional discovery.

---

[1] As set forth in the Motion [D.E. 29]:

> Plaintiffs in their Amended Complaint seek to impose liability upon Officials of Rwanda "acting within the scope of their office or employment" (Am. Compl. ¶¶ 269, 281 & 297).
> Plaintiffs alleged that the Officials exercised supervisory, decision-making or operational authority and control over the law enforcement, penal, intelligence and investigative functions at issue (Am. Compl. ¶¶ 31-33, 239, 243, 247, 269, 278, 291, 292, 297, 300).
> Plaintiffs also asserted their allegations against Rwanda, which Plaintiffs admit is a foreign state subject to the Foreign Sovereign Immunities Act ("FSIA"). *See* Am. Compl. ¶¶ 1; 6 ("The Rwandan government tracked, harassed, and ultimately kidnapped Paul Rusesabagina"); 12 ("This action arises from the deliberate and intentional campaign by agents, employees, and officials of the Rwandan government, acting at the direction of the Rwandan government."); 16 ("Rwanda is not immune for the series of torts committed against Mr. Rusesabagina"); 34 ("Rwanda is a 'foreign state' within the meaning of the FSIA. *See* 28 U.S.C. § 1603"); 93 ("the Rwandan government has used Pegasus to track and pursue targets"); 139 ("the Rwandan government kidnapped Mr. Rusesabagina and stole his phone"); 190 ("the Rwandan prison authorities have confiscated any documents brought by [Mr. Rusesabagina's] lawyers to prison"); & 192 ("[t]he Rwandan authorities have refused proper and consistent medical care for Mr. Rusesabagina").

Mot. at 3.

### A.    Ambassador Busingye

Ambassador Busingye lived and worked in Rwanda at the relevant time. (Reply Decl. ¶¶ 7–8.) He served as the Minister of Justice and Attorney General of Rwanda. (*Id.*) He performed his official duties within the borders of Rwanda and never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. (Reply Decl. ¶¶ 8, 19–23.) If Ambassador Busingye were to travel to the United States in connection with any allegations in this action – which he did not – he would travel pursuant to a duly-issued diplomatic passport. (Reply Decl. ¶ 30.) He had oversight over the Ministry of Justice and RIB. (Reply Decl. ¶¶ 5, 7.) The Ministry of Justice and RIB never performed any action in the United States concerning or related to Mr. Rusesabagina. (Reply Decl. ¶¶ 19–23.) The Ministry of Justice and RIB performed all their functions within the borders of Rwanda. (*Id.*)

### B.    Major General Nzabamwita

Major General Nzabamwita lived and worked in Rwanda at the relevant time. (Reply Decl. ¶¶ 14–18.) He served as Secretary General of the National Intelligence and Security Services ("NISS") of Rwanda. (*Id.*) He performed his official duties within the borders of Rwanda and never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. (Reply Decl. ¶¶ 18–23.) If Major General Nzabamwita were to travel to the United States in connection with any allegations in this action – which he did not – he would travel pursuant to a duly-issued diplomatic passport. (Reply Decl. ¶ 30.) He had oversight over the NISS. (Reply Decl. ¶¶ 14, 15.) The NISS never performed any action in the United States concerning or related to Mr. Rusesabagina. (Reply Decl. ¶¶ 19–23.) The NISS performed all its functions within the borders of Rwanda. (*Id.*)

### C. Colonel Ruhunga

Colonel Ruhunga lived and worked in Rwanda at the relevant time. (Reply Decl. ¶¶ 9–13.) He served as Secretary General of the Rwandan Investigation Bureau ("RIB"). (*Id.*) He performed his official duties within the borders of Rwanda and never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. (Reply Decl. ¶¶ 18–23.) If Colonel Ruhunga were to travel to the United States in connection with any allegations in this action – which he did not – he would travel pursuant to a duly-issued diplomatic passport. (Reply Decl. ¶ 30.) He had oversight over the RIB. (Reply Decl. ¶¶ 14, 15.) The RIB never performed any action in the United States concerning or related to Mr. Rusesabagina. (Reply Decl. ¶¶ 19–23.) The RIB performed all its functions within the borders of Rwanda. (*Id.*)

### ARGUMENT

Plaintiffs in their Response were unable to counter any of the three points supporting dismissal as to the Officials: (1) the Officials are immune from the jurisdiction of this Court under well-settled principles of foreign official sovereign immunity; (2) the Officials are not subject to the personal jurisdiction of this Court; and (3) the Amended Complaint was never properly served on any of the Officials.

### A. The Amended Complaint Must Be Dismissed as to the Officials Under the Doctrine of Foreign Official Sovereign Immunity.

Labeling the arrest, trial, conviction and incarceration of a convicted criminal as *jus cojens* violations does not transform quintessential law enforcement functions of a foreign state into torture, kidnapping and false imprisonment. On this Motion, the Court accepts facts as alleged – not legal conclusions. As shown in the Motion, all of the elements of foreign official sovereign immunity are satisfied here: the Amended Complaint alleges conduct by the Officials undertaken in their official capacities and exercising jurisdiction here would plainly enforce a

3

rule of law against Rwanda. *See* Motion at 9–14 (citing Am. Compl. ¶¶ 31-33, 239, 243, 269, 278, 281, 292, 297, 300, 305, 306).

Citing a host of academic writings (*see* Pls. Resp. to Defs.' Mot. to Dismiss Am. Compl. ("Response"), at 1, 10–22 [D.E. 34]), Plaintiffs argued that foreign sovereign immunity is not a question of subject-matter jurisdiction. But Congress legislates against the backdrop of federal common law, so the notion that Congress abrogated foreign official sovereign immunity *sub silentio* lacks merit. Well-settled D.C. Circuit authority holds that foreign sovereign immunity is a question of subject-matter jurisdiction. *See* Mot. at 4–5 (citing *Doe 1 v. Buratai*, 318 F.Supp.3d 218, 226 (D.D.C. 2018), *aff'd*, 792 F. App'x 6 (D.C. Cir. 2019); *Rishikof v. Mortada*, 70 F.Supp.3d 8, 11, 16 n.4 (D.D.C. 2014); *see also Belhas v. Ya'alon*, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (evaluating foreign sovereign immunity as a question of subject-matter jurisdiction).

Plaintiffs staked virtually their entire opposition on the inapposite decision in *Lewis v. Mutond*, 918 F.3d 142 (D.C. Cir. 2019). Plaintiffs cited that decision dozens of times. *See* Response at 1, 10–18, 21, 22. As the Officials explained in the Motion, the facts at issue in *Lewis* make that decision completely distinguishable from the case at bar. *See* Mot. at 16–17. In the present case, Plaintiffs actually named the foreign state (Rwanda) as a defendant, and despite their characterizations now, Plaintiffs clearly asserted claims against the Officials performing their duties in their official capacity on behalf of Rwanda. *See supra* at 1 n.1. By contrast, the plaintiffs in *Lewis* did not seek to enforce a rule of law against the foreign state (Congo). *Lewis v. Mutond*, 918 F.3d at 147. Further, the plaintiffs there asserted claims against the individuals in their personal, not official, capacity. *Id. Lewis* had nothing whatsoever to do with an arrest, trial, conviction and incarceration under the foreign state's laws.

4

Nor do the concurring opinions in *Lewis* purporting to abrogate foreign official immunity under the Torture Victims Protection Act have any impact on this case where Plaintiffs obviously seek to enforce a rule of law against Rwanda and Rwanda is the real party in interest. In *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010), the Supreme Court held that where the allegations of a lawsuit against an individual indicate that the real party in interest is a foreign state, then the FSIA should apply to preserve the state's immunity to the extent the foreign state is immune under the FSIA. *Id*. Indeed, absent such a rule, plaintiffs could simply name a state employee or officer as a defendant and sue her in her official capacity to bypass the immunity afforded to foreign sovereigns by the FSIA. *Id*. *Cf. Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity" (internal citation omitted)). Here, there is no doubt that Rwanda is immune under the FSIA and is the real party in interest: Plaintiffs have *named Rwanda as a defendant*, seek no less than $40 million in damages *from Rwanda* and have sued the remaining defendants for conduct they undertook on Rwanda's behalf in their official capacities. Am. Compl. ¶¶ 29 ("At all times relevant herein, Rwanda acted through and is responsible for the tortious acts or omissions of its employees, officials, and agents acting at the direction of the Rwandan Government."), 223-226 (WHEREFORE). In light of Plaintiffs' allegations in their Amended Complaint, their arguments that they seek only to recover from the Officials in their personal capacity is not credible.

This Court should not permit Plaintiffs to cobble together academic commentary and inapplicable case law to abrogate the Officials' foreign official sovereign immunity or to circumvent the FSIA as outlined in *Samantar*, especially where the Amended Complaint's legal

conclusions – not facts – place this Court in the untenable position of entertaining a collateral attack on the arrest, prosecution and conviction of a criminal pursuant to Rwanda law.

**B.     The Amended Complaint Must Be Dismissed Due to the Lack of Personal Jurisdiction over the Officials.**

Plaintiffs failed to satisfy their burden of establishing a factual basis for the exercise of personal jurisdiction over the three Officials. *See* Fed. R. Civ. P. 12(b)(2); *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F.Supp.3d 15, 20 (D.D.C. 2017), *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018); *see also Buratai*, 318 F.Supp.3d at 225. Plaintiffs relied exclusively on conclusory allegations, failing to allege – much less establish – any specific facts connecting any of the Officials with the forum. *See Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Crane*, 894 F.2d at 456; *Buratai*, 318 F.Supp.3d at 225–26; *Triple Up Ltd.*, 235 F.Supp.3d at 20; *Shibeshi v. United States*, 932 F.Supp.2d 1, 2–3 (D.D.C. 2013). In ruling on a 12(b)(2) motion, the Court considers "affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Buratai,* 318 F.Supp.3d at 226 (quoting *Triple Up Ltd.*, 235 F.Supp.3d at 20). Neither general nor specific jurisdiction exists on the undisputed record.

**1.     Plaintiffs Conceded There Is No Basis For General Personal Jurisdiction.**

In their Response, Plaintiffs do not contest the absence of general jurisdiction over the Officials.

**2.     Plaintiffs Failed To Establish Jurisdictional Facts Constituting Specific Jurisdiction over Any of the Officials.**

Plaintiffs failed to meet the three requirements to establish a basis for this Court's exercise of specific personal jurisdiction here: (1) showing minimum contacts – or any contacts whatsoever – demonstrating that any of the Officials purposefully availed himself of the forum;

6

(2) as there are no contacts, there are no contacts relating to any claim alleged in the Amended Complaint; and (3) in any event, it would offend traditional notions of "fair play and substantial justice" to exercise jurisdiction in this Court over these Officials. *See Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F.Supp.3d 1, 6–7 (D.D.C. 2021) (plaintiff failed to establish specific jurisdiction over defendant).

As noted, it is undisputed that Mr. Rusesabagina was arrested, tried, convicted and sentenced in Rwanda. Apart from allegations about the conduct of non-parties or bare conclusory assertions (*see* Response at 6, 7, 27, 32), there are no facts alleged as to the three Officials sufficient to establish minimum contacts with the United States. It is undisputed that the three Officials at issue on this Motion have absolutely no connection whatsoever to the United States, and calling Mr. Rusesabagina's arrest, trial, sentencing and confinement a "conspiracy" does not alter the calculus as to any of these Officials.

Furthermore, the bare allegations of a purported conspiracy do not satisfy the heightened pleading requirements necessary to plead conspiracy jurisdiction under well-settled precedent. *Dyson v. Dutko Ragen Homes & Invs.*, No. 21-cv-02280, 2022 WL 1294484, at *5 (D.D.C. Apr. 27, 2022) (quoting *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) ("A plaintiff must 'plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy" in order to establish conspiracy jurisdiction over a defendant.")). Conclusory allegations that defendants "coordinated" their efforts with certain non-parties through Rwanda's U.S. Embassy and embassy personnel are insufficient to meet this heightened pleading requirement. *Companhia Brasileira Carbureto de Calicio*, 640 F.3d at 372; Am. Compl. ¶¶ 126, 261. In addition, and as argued more fully in Rwanda's reply brief in support of its motion to dismiss,

7

none of the alleged actions in the United States by Michelle Martin and Moses Rudisinkwa with respect to Paul Rusesabagina and his family are even unlawful (D.E. 32 at 22-23), Plaintiffs do not allege any specific acts taken by any of the Officials in furtherance of the alleged conspiracy, or any facts from which their agreement to participate in unlawful activity could be inferred. As such, Plaintiffs fail to satisfy the heightened pleading requirements of conspiracy jurisdiction.

The cases Plaintiffs cited do not remotely support the exercise of personal jurisdiction over the Officials here. The facts at issue in *Bazarian International Financial Associates, L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F.Supp.3d 1, 12 (D.D.C. 2016), involved a forum selection clause applicable as to the defendant contracting party and its alter ego affiliates. The jurisdictional facts in *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98 (2d Cir. 2016), were not ruled on in that decision, as the Second Circuit dismissed the appeal and declined to exercise appellate jurisdiction over the issue of personal jurisdiction (notwithstanding Plaintiffs' implication (Response at 32) to the contrary). The facts in *Jung v. Ass'n of American Medical Colleges*, 300 F.Supp.2d 119, 134 (D.D.C. 2004), failed to demonstrate that certain organizations (e.g., ABMS and the CMSS) participated in the price fixing conspiracy and thus their motions to dismiss for lack of personal jurisdiction were granted.[2] The facts in *In re Vitamins Antitrust Litigation*, 270 F.Supp.2d 15, 32–33 (D.D.C. 2003), showed the defendants directed price fixing conduct at the forum. The facts in *Cabrera v. Black & Veatch Special Projects Corporations*, No. 19-cv-3833, 2021 WL 3508091, at *13–14

---

[2] Although the Court in *Jung* denied certain defendants' motions to dismiss for lack of personal jurisdiction, it did so because those defendants *actually admitted* their participation in the alleged conspiracy at issue. *Jung*, 300 F. Supp. 2d at 142–43 ("The Court therefore concludes that the fifteen moving institutional defendants who themselves acknowledge that they took part in the Match Program are subject to the jurisdiction of this Court under the conspiracy theory of jurisdiction."). Here, none of the Officials has admitted their participation in Plaintiffs' purported conspiracy. In fact, the record contradicts Plaintiffs' allegations of conspiracy. Reply Decl. ¶¶ 8, 13, 18-23.

(D.D.C. July 30, 2021), supported a finding of personal jurisdiction over a parent company on the basis of its U.S.-based subsidiary's contacts, where the subsidiary was a shell company set up by the parent to bid for and obtain U.S. contracts that could only be awarded to American companies, the subsidiary acted as the parent's agent, and the parent reasonably should have expected to be sued in the United States over contracts in the subsidiary's name. Plaintiffs were unable to distinguish adequately the many cases holding foreign officials performing their duties within the foreign state are not amenable to personal jurisdiction in the United States. *See* Mot. at 27–31.

As to Ambassador Busingye, it is undisputed that at the relevant time he lived and worked in Rwanda, and served as the Minister of Justice and Attorney General of Rwanda. *See supra* at 2. Ambassador Busingye performed his official duties within the borders of Rwanda and never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. *Id*. Even if Ambassador Busingye were to travel to the United States in connection with any allegations in this action – it is undisputed he did not – he would travel pursuant to a duly-issued diplomatic passport. *Id*. While it is true that, as the Minister of Justice and Attorney General of Rwanda, Ambassador Busingye had oversight over the Ministry of Justice and RIB, that fact alone cannot justify the exercise of specific personal jurisdiction over him in the United States, particularly where, as here, neither he nor the Ministry of Justice and RIB performed any action in the United States concerning or related to Mr. Rusesabagina and instead they performed all their functions within the borders of Rwanda. *Id.*

As to Major General Nzabamwita, it is undisputed that at the relevant time he lived and worked in Rwanda, and served as the Secretary General of the NISS of Rwanda. *See supra* at 2. Major General Nzabamwita performed his official duties within the borders of Rwanda and

never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. *Id.* Even if Major General Nzabamwita were to travel to the United States in connection with any allegations in this action – it is undisputed he did not – he would travel pursuant to a duly-issued diplomatic passport. *Id.* While it is true that, as the Secretary General of the NISS of Rwanda, Major General Nzabamwita had oversight over the NISS, that fact alone cannot justify the exercise of specific personal jurisdiction over him in the United States, particularly where, as here, neither he nor the NISS performed any action in the United States concerning or related to Mr. Rusesabagina and instead they performed all their functions within the borders of Rwanda. *Id.*

As to Colonel Ruhunga, it is undisputed that at the relevant time he lived and worked in Rwanda, and served as the Secretary General of the RIB. *See supra* at 3. Colonel Ruhunga performed his official duties within the borders of Rwanda and never performed any action in the United States concerning or related in any way to Mr. Rusesabagina. *Id.* Even if Colonel Ruhunga were to travel to the United States in connection with any allegations in this action – it is undisputed he did not – he would travel pursuant to a duly-issued diplomatic passport. *Id*. While it is true that, as the Secretary General of the RIB, Colonel Ruhunga had oversight over the RIB, that fact alone cannot justify the exercise of specific personal jurisdiction over him in the United States, particularly where, as here, neither he nor the RIB performed any action in the United States concerning or related to Mr. Rusesabagina and instead they performed all their functions within the borders of Rwanda. *Id*.

   **C.** **Plaintiffs' Own Submissions Prove They Never Effectuated Service of Process on Any of the Officials.**

It is a matter of record – based on Plaintiff's own filings – that the Amended Complaint is subject to dismissal due to the lack of service of process.

As to Ambassador Busingye, Plaintiffs' alleged "proof" of service makes abundantly clear that process was never served upon Ambassador Busingye [D.E. 33 ¶¶ 7, 9, 11]. Plaintiffs' alleged service attempts were never successful based upon Plaintiffs' own affidavit of attempted service [D.E. 33].

As to Major General Nzabamwita, Plaintiffs' alleged "proof" of service is based upon unsupported conjecture and speculation that the name "Joseph" allegedly listed on a waybill relates to Major General Nzabamwita, and thus Plaintiffs failed to support their alleged service attempt with valid evidence [D.E. 27].

As to Colonel Ruhunga, Plaintiffs filed alleged "proof" of service to an "office" [D.E. 28 ¶¶ 4, 6] and not to any person – certainly not to Colonel Ruhunga [D.E. 28]. Accordingly, Plaintiffs' own return of service fails to evidence service of process upon any of the Officials.

Furthermore, the cases Plaintiffs relied upon are inapposite. In *Ali v. Mid-Atlantic Settlement Services, Inc.*, 233 F.R.D. 32, 34 (D.D.C. 2006), service was effective where the process server personally delivered the process to the defendant's mother at the home in which the defendant lived; left the process with the doorman of building where the defendant resided; and left the process in the door of another apartment occupied by defendant, at defendant's express instruction – none of which circumstance is present in the case at bar. In *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987), the defendant (or his wife) actually refused service – that circumstance is not present in the case at bar. In *Martinez v. White*, Nos. C 06-1595, C 06-2322, 2006 WL 2792874, at *1 (N.D. Cal. Sept. 28, 2006), the plaintiff attempted to make service by mail, by sending the summons to the Mexican jail where the defendant was incarcerated – that circumstance is not present in the case at bar, and in any event the *Martinez* Court actually ordered the plaintiffs to make further service attempts via the defendant's counsel.

*Id.* at *3. In *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F.Supp.2d 136, 146 (D.D.C. 2011), the service of process was proper, so the language Plaintiffs cited was dicta. In *Stafford v. Grifols Int'l S.A.*, No. 18-CV-321, 2019 WL 3521957, at *5, *9 (N.D. Ga. Feb. 25, 2019), the Court quashed the service of process and dismissed the action for lack of personal jurisdiction. In *Cerner Middle East Ltd. v. Al-Dhaheri*, Civ. A. No. 16-11984, 2017 WL 776409, at *1 n.1 (Feb. 28, 2017), the defendants agreed to hold in abeyance their motion to dismiss for lack of service of process. In *AutoOpt Networks, Inc. v. GTL USA, Inc.*, No. 14–CV–1252–D, 2015 WL 407894, at *4 (N.D. Tex. Jan. 30, 2015), the plaintiff was re-serving the defendants under the Hague Convention and thus the motion to dismiss was premature. In sum, Plaintiffs in the present case failed to support their unauthorized, insufficient service of process with any valid legal authority.

This Court should reject Plaintiffs' argument (Response at 37) attempting to use to Plaintiffs' benefit the filing of this Motion by the Officials. *See Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) ("This Court therefore cannot accept the plaintiff's argument that the District waived its Rule 12(b)(5) defense simply by appearing to contest the claim. Indeed, if a defendant's mere appearance waived its Rule 12(b)(5) defense, it effectively could never contest the sufficiency of the service of process upon it.") (internal quotation marks omitted).

### D. Joinder in Reply filed by the Republic of Rwanda.

The Officials, having previously joined in the Motion to Dismiss [D.E. 18] filed by Rwanda, also join in the Reply Memorandum and Reply Declaration [D.E. 32] filed by Rwanda.

### E. Plaintiffs' Improper, Incorrect and Unsupported Reference to Amending the Complaint Further Should Be Disregarded and Rejected.

Without filing a motion or offering any support for the request, Plaintiffs in their response brief asked for leave to amend further their pleading. Plaintiffs incorrectly asserted that

this case is in its initial stage, ignoring the inconvenient fact that they *already* amended – by filing the pleading at issue on this Motion, the Amended Complaint [D.E. 17]. Plaintiffs' request is as futile as it is improper. No amount of argument or artful pleading can change the fact that service of process was never effectuated on any of the Officials; that none of the Officials are subject to personal jurisdiction in this Court; and that, no matter how Plaintiffs characterize events now, the Officials acted at all times in their official capacities in apprehending, prosecuting and incarcerating Mr. Rusesabagina in Rwanda pursuant to the laws of Rwanda.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Defendants Johnston Busingye, Joseph Nzabamwita and Jeannot Ruhunga respectfully request that the Court enter an order granting this Motion to Dismiss the Amended Complaint with prejudice, and dismissing them from this action.

Dated: September 30, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Michael S. Cryan*
Michael S. Cryan
Michael.Cryan@afslaw.com
1717 K Street, NW
Washington, DC 200006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants
The Republic of Rwanda,
His Excellency President Paul Kagame,
President of the Republic of Rwanda,
Ambassador Johnston Busingye, Major
General Joseph Nzabamwita, & Colonel
Jeannot Ruhunga*